IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(DALLAS DIVISION)

| | |
|---|---|
| MAGNACROSS LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>OKI DATA AMERICAS INC.,<br><br>    Defendant. | Case No. 3:20-cv-01959-M |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM
<u>UPON WHICH RELIEF CAN BE GRANTED</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. LEGAL STANDARD......................................................................................1

    A. Legal Standard for Motions to Dismiss .........................................1

    B. Patent Ineligibility is a Threshold Question of Law .....................2

    C. The Two-Part *Alice* Test ................................................................2

III. CLAIM 1 OF THE PATENT-IN-SUIT IS *NOT* PATENT-ELIGIBLE...................4

    A. Claim 1 of the '304 Patent ..............................................................4

    B. *Alice* Step 1 – Claim 1 is Drawn to an Abstract Concept .............4

    C. *Alice* Step 2 - Claim 1 of the '304 Patent Lacks Any Inventive Concept That Transforms the Abstract Concept into Patent-Eligible Subject Matter ...........................................................................................................7

IV. CONCLUSION.............................................................................................10

# TABLE OF CONTENTS

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ......................... 3, 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ......................................... 2, 3, 8, 10

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ............................................. 7

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ......................................... 2, 5, 6

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ......................................... 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) ......................................................................................................................... 2, 8

*Customedia Technologies, LLC v. Dish Network Corp*, 951 F.3d 1359 (Fed. Cir. 2020) .............. 7

*Digitech Image Tech., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) ......................................................................................................................... 6, 7, 9

*Elec. Power Grp. LLC v. Alstom SA*, 830 F.3d 1350 (Fed. Cir. 2016) ......................................... 5

*Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012) ............................... 3

*Gottschalk v. Benson*, 409 U.S. 63 (1972) .................................................................................. 9

*iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 2020-1477, 2021 WL 117027 (Fed. Cir. Jan. 13, 2021) ................................................................................................................ 5

*In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607 (Fed. Cir. 2016) ......................................... 2

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ......................... 2

*Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343 (Fed. Cir. 2016) ....................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ............................. 3, 8

*NetSoc, LLC v. Match Group, LLC*, Case No. 3:18-cv-01809 N, 2019 WL 3304704 (N.D. Tex. July 22, 2019) ............................................................................................ 1

*Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) ........................... 7

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ............................................ 2, 3

**Statutes**

35 U.S.C. § 101 ........................................................................................................... 1, 2, 10

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 1, 5, 11

## I. INTRODUCTION

Defendant, Oki Data Americas Inc. ("OKI"), submits this memorandum in support of its Motion to Dismiss the Complaint pursuant to FED. R. CIV. P., RULE 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. (Dkt. No. 1). Plaintiff, Magnacross, LLC ("Magnacross"), has accused OKI of directly infringing U.S. Patent No. 6,917,304 ("the '304 Patent" or "the Patent-in-Suit").

For the reasons set forth herein, OKI respectfully submits the Complaint should be dismissed because Claim 1 of the '304 Patent is patent-ineligible under 35 U.S.C. § 101. Simply put, Claim 1 is drawn to an abstract idea without reciting any separate inventive concept that transforms the abstract idea into patent-eligible subject matter. Since Claim 1 is the only claim at issue, the entire complaint should be dismissed for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

### A. Legal Standard for Motions to Dismiss

This Court has found that "[w]hen considering a rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief." *NetSoc, LLC v. Match Group, LLC*, Case No. 3:18-cv-01809, 2019 WL 3304704, at *1 (N.D. Tex. July 22, 2019) (Godbey, J.). In order to have a viable complaint, "a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (brackets in original). In considering a motion to dismiss, the "court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff." *Id*.

### B. Patent Ineligibility is a Threshold Question of Law

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has explained, however, that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

The Federal Circuit has explained the § 101 analysis "bears some of the hallmarks of a jurisdictional inquiry" and as such, must be addressed before the Court turns to "addressing questions of invalidity or infringement." *Ultramercial, Inc. v. Hulu,* LLC, 772 F.3d 709, 718 (Fed. Cir. 2014). Only if § 101 is satisfied "is the inventor allowed to pass through to the other requirements for patentability." *Id.* at 718. Given the threshold nature of the § 101 analysis, the Federal Circuit has consistently recognized it is proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12 motion. *See, e.g.*, *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019); *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 609 (Fed. Cir. 2016); *Ultramercial*, 772 F.3d at 717; *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1351 (Fed. Cir. 2014).

### C. The Two-Part *Alice* Test

The Supreme Court has formulated a two-part test for assessing patent eligibility. At Step 1, the court must evaluate the claims "[o]n their face" to determine to which "concept" the claims are "drawn." *Alice*, 573 U.S. at 219 ("On their face, the claims before us are drawn to the concept of intermediated settlement."). This step involves "ascertaining the basic character of the subject matter" of the claim. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). "The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed

2

advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

If the court determines the claims are drawn to an abstract concept, it then must ask, "[w]hat else is there in the claims before us?" *Alice*, 573 U.S. at 217, quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). This second step is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. at 217-218 (brackets in original). These "additional elements" must be "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 221. Similarly, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not 'impose meaningful limits on the claim's scope.'"). Likewise, merely limiting the use of the abstract idea to a particular technological environment is insufficient to save an otherwise patent-ineligible claim. *See Ultramercial*, 772 F.3d at 716.

Moreover, "well-understood, routine, conventional activit[ies]" or technology—including general-purpose computers and computer networks—do not provide an "inventive concept." *Alice*, 573 U.S. at 225-226. "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id.* at 223.

## III. CLAIM 1 OF THE PATENT-IN-SUIT IS *NOT* PATENT-ELIGIBLE

### A. Claim 1 of the '304 Patent

Magnacross asserts that OKI "has been and continues to directly infringe claim 1 of the '304 Patent" by making, using, offering to sell, selling and/or importing the OKI B412dn/B432dn Mono Printer.[1] Claim 1 reads:

> 1. *A method of wireless transmission of data* in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising
>
> the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels accordingly; characterized by
>
> > a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
> >
> > b) the data rate required for data transmission from said local sensors differing substantially between said at least two sensors, and
> >
> > c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said sub-channels.

(The '304 Patent at 7:29-45; emphasis added). Thus, Claim 1 is a method claim having two steps – *i.e.*, *dividing* a data channel into sub-channels and *transmitting* data from data sensors through said sub-channels.

### B. *Alice* Step 1 – Claim 1 is Drawn to an Abstract Concept

"Stripped of excess verbiage," Claim 1 of the '304 Patent is drawn to nothing more than dividing a data channel into sub-channels and transmitting data from data sensors though said sub-channels. *See Affinity Labs*, 838 F.3d at 1256.

---

[1] Complaint at 2; *see also* the claim chart appended to the Complaint at Exhibit 2 at 1.

The specification of the '304 Patent confirms that the alleged invention is simply directed to a method for transmitting data:

> ***According to <u>the invention</u>*** there is provided ***a method and apparatus for wireless transmission of data through a communications channel*** between at least two local data sensors with optional primary data processing and a data processing function, as defined in the accompanying claims.

(The '304 Patent at 2:60-64; emphasis added).[2]

Of particular importance, the Federal Circuit has held that the use of the term "the invention" in the specification limits the scope of the claims as a matter of law.

> We have found disavowal or disclaimer based on clear and unmistakable statements by the patentee that limit the claims, such as "the present invention includes ..." or "the present invention is ..." or "all embodiments of the present invention are...." When a patentee "describes the features of the 'present invention' as a whole," he implicitly alerts the reader that "this description limits the scope of the invention."

*Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) (Internal citations omitted).

The Federal Circuit has repeatedly held that claims similar to Claim 1 are "directed to" abstract ideas. *See e.g.*, *iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 2020-1477, 2021 WL 117027, at *2 (Fed. Cir. Jan. 13, 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea."); *Cellspin*, 927 F.3d at 1315 (The collection, transfer, and publishing of data are patent-ineligible abstract ideas); *Elec. Power Grp. LLC v. Alstom SA*, 830 F.3d 1350, 1351-53 (Fed. Cir. 2016) (Method of detection (*i.e.*, sensing) events comprising receiving a plurality of data streams from multiple sources deemed a patent-ineligible abstract idea); *Digitech Image Tech., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350

---

[2] A copy of the '304 Patent is appended to the Complaint as Exhibit 1 and is properly considered in ruling on a motion under Rule 12(b)(6). *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

(Fed. Cir. 2014) ("Although we acknowledged that a signal had physical properties with 'tangible causes and effects,' we nevertheless concluded that 'such transitory embodiments are not directed to statutory subject matter.' . . . We thus held that the physical embodiment of the supplemental data—the claimed 'signal'—was not patent eligible." (citations omitted).

Claim 1 of the '304 Patent does not recite elements that distinguish it from other transmission-type claims that the Federal Circuit has already deemed abstract. Similar to the patents in *Cellspin*, the "improvement" the '304 Patent offers is a way to automate an existing technological process. The '304 Patent describes the problem to be solved as follows:

> Conventionally, the data is transmitted from the data sensors to the data processing function via conventional conductors or cables which impose obvious inconveniences and limitations on the convenient operation of the equipment.

(The '304 Patent at 1:37-40). In *Cellspin*, the Federal Circuit expressly rejected the argument that claims directed to automating existing processes recited "technological improvements" so as to be patent-eligible, holding "the need to perform tasks automatically is not a unique technical problem". *See Cellspin*, 927 F.3d at 1316.[3]

Additionally, in *Digitech*, the Federal Circuit found that claims directed to a process of organizing information through mathematical correlations that were not tied to a specific structure or machine were drawn to an abstract idea. *Id.* at 1350-51. The same result is compelled here. Like the method claims in *Digitech*, Claim 1 of the '304 Patent merely recites a process of taking existing information and organizing that information into a new form without being tied to a

---

[3] For the avoidance of confusion, although the Federal Circuit found that the claims in *Cellspin* were drawn to an abstract idea under Alice Step 1, it ultimately held that the claims recited an inventive step because they used conventional elements in a non-conventional and non-generic arrangement. *See Cellspin*, 927 F.3d at 1318. ("As noted above, Cellspin specifically alleged that using HTTP at a specific location, here at the intermediary mobile device, was inventive."). As discussed *infra*, however, Claim 1 of the '304 Patent uses conventional elements for their generic and conventional functions.

specific structure. *Digitech*, 758 F.3d at 1351. This is evidenced by the fact that the '304 Patent is directed to "the field of automotive diagnostic equipment and related automotive service equipment"[4] whereas, the accused products are laser printers alleged to infringe through users wirelessly printing images from their smart phones.[5]

In the best light for the Plaintiff, the '304 Patent results in an improvement in the efficiency of data transmission. (The '304 Patent at 3:19-35 (identifying the inefficiencies of the prior art systems)). That the '304 Patent may improve efficiency of transmitting data, however, does not save it from being directed to an abstract idea as "'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible as an improvement to computer functionality." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) *quoting Customedia Technologies, LLC v. Dish Network Corp*, 951 F.3d 1359, 1364 (Fed. Cir. 2020); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

Here, stripped of its excess verbiage, Claim 1 requires only the abstract idea of dividing a data channel into sub-channels and transmitting data from data sensors though said sub-channels – all elements the Federal Circuit has held to be abstract ideas. Accordingly, Claim 1 of the '304 Patent is directed to a patent-ineligible abstract idea.

        C.     *Alice* **Step 2 - Claim 1 of the '304 Patent Lacks Any Inventive Concept That Transforms the Abstract Concept into Patent-Eligible Subject Matter**

Because the asserted claims are directed to an abstract idea—dividing data channels and transmitting data from sensors through sub-channels—the claims are invalid unless they contain

---

[4]    The '304 Patent at 1:9-10.

[5]    *See* the claim chart appended to the Complaint at Exhibit 2 at 2.

an "inventive concept." *Alice*, 573 U.S. at 221. Under the second step of *Alice*, the court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 79). This step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 225). Here, nothing in Claim 1 recites an "inventive concept" that would transform the claimed abstract idea into patent-eligible subject matter.

The asserted claim first recites "wireless transmission of data in digital and/or analog format" from at least "two data sensors". (The '304 Patent at Claim 1). However, the specification makes clear that the claimed "data sensors" are nothing more than generic and conventional transmitters that may transmit raw or preprocessed data:

> In this specification and the claims, references to local data sensors are to be interpreted in accordance with the following, namely that the sensors may transmit raw data for subsequent processing or one or more of these may incorporate some degree of primary data processing whereby the data received at the main processor is partially or totally pre-processed or indeed raw data.

(The '304 Patent at 1:23-29). The specification states further:

> Firstly, as regards the local data sensors 14 to 22, as shown these comprise an engine tester 14, a gas bench 16, a scanner 18 and auxiliary sensors indicated as Aux 1 and Aux 2. These sensors are intended to be representative of the entire range of automotive sensors which are currently utilised for diagnostic and servicing processes, including for example vibration sensors (for RPM testing) ignition and alternator ripple sensors (likewise for RPM measurement), emissions analysis sensors, battery analysis sensors and the like.

(The '304 Patent at 4:46-55). The generic nature of the "data sensors" is further demonstrated by the Plaintiff's assertion that the element is met by a smart phone camera.[6]

---

[6] *See* the claim chart appended to the Complaint at Exhibit 2 at 2.

The requirement that the data rate for data transmission differs substantially between the two sensors is similarly generic and conventional. (The '304 Patent at Claim 1). The specification expressly states that "a multiplexer control system for multiplexing the data ***from a plurality of input channels having different transmission speeds***" was known in the prior art. (The '304 Patent at 2:52-54; emphasis added). Thus, the inclusion of this well-known and conventional limitation cannot supply the inventive step.

Similar to the method claims in *Digitech*, nothing in Claim 1 ties the claimed method to a specific structure or machine. As noted above, the sensors are not limited to a specific structure as evidenced by the '304 Patent being directed to vehicle diagnostic systems and the accused products being laser printers. Thus, the method claimed in Claim 1 of the '304 Patent is "so abstract and sweeping" as to cover any and all uses of a wireless transmission system. *Digitech*, 758 F.3d at 1351 *quoting Gottschalk v. Benson*, 409 U.S. 63, 68 (1972).

The sole claimed step of dividing the communications channel into sub-channels "whereby the data carrying capacities of said sub-channels are unequal" is admittedly generic. (The '304 Patent at Claim 1). The specification makes clear that this step is performed by a generic "controller" which provides a generic "multiplexing function":

> The main function of controller 40 is to provide a multiplexing function whereby communication channel 12 is divided into 16 sub-channels on a frequency basis-, these channels being of unequal band width and being allocated according to band width (more band width for greater bandwidth requirement) to the individual data channels 1 to 16.

(The '304 Patent at 5:22-27). The specification expressly identifies prior art that teaches "separating the control channel from the data channel whereby the control channel bandwidths can be made significantly smaller." (The '304 Patent at 2:23-26). Accordingly, this generic and conventional limitation cannot supply the inventive step.

Lastly, the claims require allocating data from the local data sensors to respective sub-channels. (The '304 Patent at Claim 1). However, here too, the specification makes clear that these "data allocation systems" are well-understood and can be designed by any technically skilled person in the art:

> The data allocation systems for data-division between the available channels can be readily designed accordingly by the technically skilled person so as to, in this way, more readily meet the technical parameters imposed on the system, as described below.

(The '304 Patent at 3:54-58). Furthermore, the specification states that the "allocation is effected in accordance with the *known* data rate requirements of the individual sensors, according to their *known* uses" (*Id*. at 5:57-59; emphasis added.), thereby admitting that the sensors are being used for their known conventional functionality.

The Supreme Court has made clear that a combination of generic / conventional components cannot transform an abstract idea into patentable subject matter where each component is used only for its long-established and inherent purpose. *Alice*, 573 U.S. at 225-226. "[P]urely functional and generic" components cannot render the claims patent-eligible. *Id.* at 226. As explained above, Claim 1 ***does not*** recite a non-conventional or non-generic arrangement for performing any of these well-known steps. To the contrary, it merely uses conventional elements (*i.e.*, communication channel, sensors, data processing means) in their conventional and generic manner, to perform their conventional and generic functions.

Failing both parts of the *Alice* test, Claim 1 of the '304 Patent is ***not*** patent-eligible under § 101.

## IV. CONCLUSION

Claim 1 of the '304 Patent is drawn to an abstract idea, thereby failing Step 1 of the *Alice* test. Claim 1 lacks any inventive concept that would transform the abstract idea into patent-eligible

subject matter, thereby failing Step 2 of the *Alice* test. Accordingly, OKI respectfully requests the Court find Claim 1 of the '304 Patent is not patent-eligible and grant OKI's motion to dismiss the Complaint pursuant to FED. R. CIV. P., RULE 12(b)(6) for failing to state a claim upon which relief can be granted.

Submitted this 2nd day of April, 2021

By: */s/ Marc R. Labgold*
Marc R. Labgold, Ph.D.
DC Bar No. 474969 (*pro hac vice* pending)
**OFFICES OF MARC R. LABGOLD, P.C.**
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Telephone: (703) 901-8860
Fax: (877) 401-8855
Email: mlabgold@labgoldlaw.com

William D. Taylor
(TX Bar No. 24046954)
**TAYLOR & TAYLOR LAW, P.C.**
4115 Highgrove Dr.
Arlington, TX 76001
Telephone: 817-483-8388
Fax: 817-483-8390
Email: wtaylor@taylorandtaylorlaw.com

***Counsel for Defendant Oki Data Americas Inc.***

# CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve electronic notification of such filing to all counsel of record.

By: */s/ Marc R. Labgold*
Marc R. Labgold, Ph.D.
DC Bar No. 474969 (*pro hac vice* pending)