**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**(DALLAS DIVISION)**

| | |
|---|---|
| MAGNACROSS LLC, | |
| Plaintiff, | |
| vs. | **Case No. 3:20-cv-01959-M** |
| OKI DATA AMERICAS INC., | |
| Defendant. | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS, ALTERNATIVE MOTION FOR PARTIAL SUMMARY**
<u>**JUDGMENT, AND MOTION FOR SANCTIONS**</u>

# TABLE OF CONTENTS

I.     SUMMARY ..................................................................................................................1

II.    LEGAL STANDARDS ................................................................................................3

     A.     Legal Standard for Motion to Dismiss.....................................................................3

     B.     Legal Standard for Motion for Summary Judgment ................................................4

     C.     Legal Standard Regarding Frivolous Claims...........................................................4

     D.     Legal Standard Regarding 28 U.S.C. § 1927...........................................................5

     E.     Applicable Legal Standard for an Enforceable Contract Under Texas Law ...........6

III.   RENEWED MOTION TO DISMISS COUNT I (Patent Claims)......................................8

IV.   MOTION TO DISMISS COUNT II (CONTRACT CLAIM)...........................................8

     A.     Plaintiff Has Not Alleged Agreement (in Principle or Otherwise) on Any Terms Other Than an Amount of Payment..............................................................9

     B.     The January 18, 2021, Emails Confirm that No Valid Settlement Agreement was Reached...........................................................................................................11

     C.     The Correspondence During "Negotiations" Proves No "Valid Settlement" Agreement Was Reached on January 18, 2021 ......................................................12

V.    The Amendment of the Complaint to Add Frivolous Count II Constitutes Unreasonable and Vexatious Multiplication of This Proceeding .....................................18

VI.   CONCLUSION.............................................................................................................20

**Cases**

*Al–Juburi v. Chertoff*, 3:06–CV–1270–D (N.D. Tex. Aug. 9, 2007) ............................................ 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 3

*Barrett-Bowie v. Ameridream Edu. Concepts, LLC*, No. 3:12–CV–4343–M, 2014 WL
    5334448 (N.D. Tex. Oct. 20, 2014) ................................................................................ 5, 19

*Cedar Lane Tech. Inc. v. Blackmagic Design Inc.*, No. 20-cv-01302-VC, 2020 WL
    6789711 (N.D. Cal. Nov. 19, 2020) ...................................................................................... 20

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ........................... 3, 4, 8, 11

*Edwards v. Gen. Motors Corp.*, 153 F.3d 242 (5th Cir. 1992) ...................................................... 5

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ........................................................................... 6

*Fort Worth Independent School Dist. v. City of Fort Worth*, 22 S.W.3d 831 (Tex.
    2000) ...................................................................................................................................... 6

*Garcia v. U.S.*, No. 3:14–CV–357–L, 2015 WL 1810451 (N.D. Tex. April 20, 2015) ................ 4

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ....................................................... 6

*Harris v. Rowe*, 593 S.W.2d 303 (Tex. 1979) .............................................................................. 7

*Henshaw v. Tex. Nat'l Res. Found.*, 216 S.W.2d 566 (Tex. 1949) ................................................ 7

*Henson–El v. Williams*, 923 F.2d 51 (5th Cir. 1991) .................................................................... 5

*In Re Western Fidelity v. Bishop*, No. 4:01–MC–0020–A, 2001 WL 34664165 (N.D.
    Tex. June 26, 2001) .......................................................................................................... 5, 20

*Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318 (5th Cir. 2006) .............................. passim

*Martin v. Black*, 909 S.W.2d 192 (Tex. App.—Houston 1995, writ denied) ................................ 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 4

*Neeley v. Bankers Tr. Co.*, 757 F.2d 621 (5th Cir. 1985) .............................................................. 6

*Neitzke v. Williams*, 490 U.S. 319 (1989) .................................................................................... 5

*NetSoc, LLC v. Match Group, LLC*, Case No. 3:18-cv-01809 N, 2019 WL 3304704 (N.D. Tex. July 22, 2019) ........................................................................................... 3

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................... 3

*Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*, No. 3:18-CV-1719-L, 2019 WL 4748271, (N.D. Tex. Sept. 30, 2019) ........................................................................ 3

*Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002) ........................ 6

*Rosas v. Bexar Cty.*, No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015) ........................................................................................................................ 3

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) .............. 7

*Taurus v. Social Sec. Admin. and its Agents*, No. 3:09-CV-1079-M, 2009 WL 2849581 (N.D. Tex. Sept. 1, 2009) ................................................................................ 4, 5, 19

*Texas Assn. of Fraudulent Judgment Victims v. Midland Funding LLC*, 3:15-CV-2858-M, 2016 WL 4592372 (N.D. Tex. Sept. 2, 2016) ............................................. 5

*Tremont LLC v. Halliburton Energy Services, Inc.*, 696 F.Supp.2d 741 (S.D. Tex. 2010) ........................................................................................................................ 4

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375 (5th Cir. 2003) ............. 3

**Statutes**

28 U.S.C. § 1927 ....................................................................................... 5, 6, 21

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) ....................................................................... passim

Fed. R. Civ. P. 12(d) ....................................................................... 2, 4, 8, 17

Fed. R. Civ. P. 56 ....................................................................... passim

# I.    <u>SUMMARY</u>

Defendant, Oki Data Americas Inc. ("**Defendant**" or "**OKI**"), submits this memorandum in support of its Motion to Dismiss the "Corrected First Amended Complaint" [Docket Entry #43] pursuant to FED. R. CIV. P., RULE 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. Plaintiff, Magnacross, LLC ("**Plaintiff**" or "**Magnacross**"), filed a "First Amended Complaint" on July 13, 2021 [Docket Entry #41], which amended the allegations of Count I (patent infringement) and added a new Count II (breach of contract).  Following the hearing on OKI's Motion to Dismiss the original Complaint, Magnacross filed what it captioned as the "Corrected First Amended Complaint" [Docket Entry #43], which then changed Count I back to that presented in the original Complaint [Docket Entry #1], without making any changes to Count II or otherwise.[1]

Count I remains subject to dismissal on the grounds submitted in OKI's Motion to Dismiss filed on April 2, 2021, which motion is fully briefed [Docket Entries ##26, 33 and 36], has been the subject of an oral hearing [Docket Entry #42] and is currently *sub judice*.  OKI relies on that prior briefing in its entirety and, therefore, respectfully submits that nothing further is required as to Count I.

OKI respectfully submits that newly added Count II is a frivolous claim that should also be dismissed for failing to state a claim upon which relief can be granted for the reasons presented hereinbelow.  Plaintiff has not made factual allegations showing that the Parties achieved a valid settlement agreement on January 18, 2021, or any time since.  As pled, the only agreement that

---

[1]    Because the "Corrected First Amended Complaint" substantially changed the allegations presented in Count I of the "First Amended Complaint", reverting the scope and content of Count I to that of Count I of the Original Complaint, the "Corrected First Amended Complaint" is more properly a second amended complaint. The "Corrected First Amended Complaint" is cited hereinafter as "Corr. 1st Am. Compl."

was reached was as to the amount of money that OKI was willing to pay in return for a settlement, release and license, the terms of which were to be negotiated. Hence the reasons for stating the Parties had an "agreement in principle" as opposed to a "valid settlement agreement." In addition to Magnacross failing to plead that the Parties had reached agreement on any other essential terms, the correspondence between counsel for the Parties (some of which is expressly relied upon in the pleadings) plainly evidences, *inter alia*, a lack of agreement, disputes over material terms, and a clear recognition by Plaintiff's counsel that an ***agreement had not been reached***. OKI respectfully submits that, at best, the Parties had an unenforceable "agreement to agree." Therefore, OKI submits that Count II can be dismissed on the pleadings alone or by reference to documents referenced and relied upon in the pleadings. Alternatively, to the extent the Court considers the correspondence between the Parties (copies of which are contained in the Appendix submitted herewith) as matters outside the pleadings, pursuant to FED. R. CIV. P., RULE 12(d), the motion to dismiss Count II should be treated as a motion for partial summary judgment pursuant to FED. R. CIV. P., RULE 56.

Regardless of the procedural posture, the Court should:

1.    Dismiss Count I of the "Corrected First Amended Complaint", for the reasons discussed in prior briefing and in the July 14, 2021, hearing;

2.    Dismiss Count II of the "Corrected First Amended Complaint", as the Parties did not have a valid and enforceable settlement agreement as of January 18, 2021, as matter of law;

3.    Find that Count II is frivolous; and

4.    Find that Plaintiff's counsel has unreasonably and vexatiously multiplied the proceedings by injecting Count II into this proceeding.

## II.    LEGAL STANDARDS

### A.    Legal Standard for Motion to Dismiss

This Court has found that "[w]hen considering a rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief." *NetSoc, LLC v. Match Group, LLC*, Case No. 3:18-cv-01809, 2019 WL 3304704, at *1 (N.D. Tex. July 22, 2019). In order to have a viable complaint, "a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (brackets in original).

In considering a motion to dismiss, the "court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff." *Id*.  However, the requirement to accept allegations as true only applies to "well-pleaded facts." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court does not accept a "conclusory allegation," "unwarranted deduction," or "legal conclusion couched as a factual allegation." *E.g., id.* at 678-79, *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Likewise, a court does not accept "allegations that are contradicted by other allegations within [plaintiff's own [pleadings]." *See Phoneternet, LLC v. LexisNexis Risk Sols., Inc*., No. 3:18-CV-1719-L, 2019 WL 4748271, at *9 (N.D. Tex. Sept. 30, 2019) (Lindsay, J.) (citing *Rosas v. Bexar Cty.*, No. 5:14-CV-1082-DAE, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015) (collecting cases)).

In adjudicating a motion to dismiss, the court may consider the complaint and its proper attachments (since those documents are part of the pleadings, rather than matters outside the pleadings).  *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court may also consider documents attached to a defendant's motion to dismiss, as long as

those documents are referred to in the complaint and are central to plaintiff's claims.  *See id*. at 499.

If on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.".  *See*, FED. R. CIV. P., RULE 12(d).  "Courts have [] found that the framing of a motion to dismiss in the alternative as one for summary judgment provides adequate notice for purposes of Rule 12(d)." *Garcia v. U.S.*, No. 3:14–CV–357–L, 2015 WL 1810451, at *5 (N.D. Tex. April 20, 2015) (citing *Tremont LLC v. Halliburton Energy Services, Inc*., 696 F.Supp.2d 741, 853 (S.D. Tex. 2010); *Al–Juburi v. Chertoff*, 3:06–CV–1270–D, 2007 WL 2285964, at *4 (N.D. Tex. Aug. 9, 2007)).

### B.      Legal Standard for Motion for Summary Judgment

"Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law." *Garcia*, 2015 WL 1810451, at *5. "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To meet its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *See id*. (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)).

### C.      Legal Standard Regarding Frivolous Claims

A claim is frivolous if it lacks an arguable basis in either law or fact. *Taurus v. Social Sec. Admin. and its Agents*, No. 3:09-CV-1079-M, 2009 WL 2849581, at *1 (N.D. Tex. Sept. 1, 2009)

(citing *Neitzke v. Williams*, 490 U.S. 319, (1989); *Henson–El v. Williams*, 923 F.2d 51, 53 (5th Cir. 1991)).

> A complaint is without an arguable basis in law if it is grounded upon a discredited or untenable legal theory. A claim is factually frivolous when 'the facts alleged are "fantastic or delusional scenarios" or the legal theory upon which a complaint relies is 'indisputably merit less.'"

*Taurus*, 2009 WL 2849581 at *1 (internal citations omitted); *see also Barrett-Bowie v. Ameridream Edu. Concepts, LLC*, No. 3:12–CV–4343–M, 2014 WL 5334448, at *2 (N.D. Tex. Oct. 20, 2014) (ordering sanctions against plaintiff's counsel for advancing a factually frivolous claim which was not made in good faith as it was directly contrary to the evidence available to plaintiff's counsel at the time the pleadings were filed.).

### D.    Legal Standard Regarding 28 U.S.C. § 1927

"The Court may impose sanctions in the form of attorney's fees and costs against '[a]ny attorney ... who ... multiplies the proceedings in any case unreasonably and vexatiously.'" *Texas Assn. of Fraudulent Judgment Victims v. Midland Funding LLC*, No. 3:15-CV-2858-M, 2016 WL 4592372, at *4 (N.D. Tex. Sept. 2, 2016) (quoting 28 U.S.C. § 1927). "Proving that an attorney's behavior was both 'vexatious' and 'unreasonable' requires 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Id.* (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1992)). This Court has held that

> the phrase 'unreasonably and vexatiously' describes conduct that, when viewed under an objective standard, is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation.

*In Re Western Fidelity v. Bishop*, No. 4:01–MC–0020–A, 2001 WL 34664165, at *22 (N.D. Tex. June 26, 2001).

In awarding fees under 28 U.S.C. § 1927, the court is required to "(1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes." *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002).

### E.     Applicable Legal Standard for an Enforceable Contract Under Texas Law[2]

"[F]ederal courts ... apply state substantive law and federal procedural law" when exercising jurisdiction over cases that require them to adjudicate state law claims. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Under Texas law, settlement agreements are 'enforceable in the same manner as any other written contract.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 323 (5th Cir. 2006) (quoting *Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston 1995, writ denied)).

A contract is legally enforceable "only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *See id.* (quoting *Fort Worth Independent School Dist. v. City of Fort Worth*, 22 S.W.3d 831 (Tex. 2000)). The question of indefiniteness is a matter of law for the Court to decide. *See, e.g.*, *Neeley v. Bankers Tr. Co.*, 757 F.2d 621, 626 (5th Cir. 1985).

An agreement to make a contract at a future time is enforceable if the parties have agreed to all essential terms. *Liberto*, 441 F.3d at 323. "By contrast, where an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.'" *Id.*; *see also T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d

---

[2]   Of course, Texas law requires other elements for a valid claim for breach of contract, and Defendant reserves the right to assert defects in Plaintiff's claim based on other elements if this action is not summarily dismissed. However, this Motion is limited to a simple and straightforward ground for dismissal, *i.e.*, that Plaintiff has not even pled the existence of a definite contract.

218, 221 (Tex. 1992) ("The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract."). "Thus, whether the Settlement Agreement is an enforceable contract turns upon whether its 'essential terms' are set forth in the agreement or are left to future negotiation." *Liberto*, 441 F.3d at 323.

In the *Liberto* case, the Fifth Circuit found that the parties' trademark license and settlement agreement was merely an agreement to agree, and not a contract, because, *inter alia*, the agreement expressly left "open for future negotiation the 'specific terms' of the license and the 'action to be taken [by the parties] to protect the trademark.'" *Id*. at 324; (brackets original). The settlement agreement also failed to mention other essential terms such as the duration of the license, the grounds for its renewal or termination, and the time of performance. *Id*. The court found that leaving necessary terms, especially those related to the control of the intellectual property, to be determined in future negotiations "militates against the finding of a binding contract". *Id.* at 325.

Finally, the Texas Supreme Court has long recognized "[i]f there is any doubt about the meaning of the various terms of the contracts before [it], the Court may consider the interpretation placed upon them by the parties themselves." *Henshaw v. Tex. Nat'l Res. Found.*, 216 S.W.2d 566, 570 (Tex. 1949). Indeed, "[n]o principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves." *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) (applying this principle in construing contract as a matter of law); *see also Henshaw*, 216 S.W.2d at 570. Although these cases address statements and conduct made in the context of valid contracts (*see, e.g., Harris,* at 306 (finding that "Harris and Rowe intended that $775.00 be placed in escrow because this is the amount that Rowe, without

objection, deposited with Southwest Land Title Co."), they logically apply with equal force to determining whether the parties reached a valid agreement in the first place. In the present case, the statements and conduct by Plaintiff's counsel that unequivocally evidence continued efforts to negotiate a binding and enforceable agreement, demonstrate that no contract was every formed.

## III.    RENEWED MOTION TO DISMISS COUNT I (PATENT CLAIMS)

To the extent necessary, Defendant renews its Motion to Dismiss Count I of the Complaint [Docket Entry #1], which is repeated without amendment as Count I of the Corrected First Amended Complaint [Docket Entry #43]. Defendant believes there is no need to re-brief the motion based on its understanding that the Court considers that motion fully briefed and has taken it under advisement. (Transcript of July 14, 2021, Hearing [Docket Entry #44] at 45).

## IV.    MOTION TO DISMISS COUNT II (CONTRACT CLAIM)

Turning to Count II—for breach of a purported settlement agreement—Magnacross has failed to state a claim upon which relief can be granted. This is true regardless of whether the Court examines the issue under Rule 12(b)(6) or under Rules 12(d) and 56.[3] Simply put, Plaintiff's conclusory allegation of a "valid settlement" agreement cannot be credited, since there are no factual allegations indicating that the Parties agreed on all essential terms. To the contrary, the Parties' undisputed email negotiations—which Plaintiff references and relies upon in the Complaint—make clear that no such agreement occurred, as a matter of law.

---

[3]    In either case, the analysis is essentially the same. Magnacross references and relies on the Parties' January 18 email correspondence and on subsequent "negotiations" of a written settlement agreement, between January 18 and April 14. As such, these documents should be considered part of the pleadings, and may be considered under Rule 12(b)(6). *See, e.g.*, *Collins*, 224 F.3d at 498. However, because the Court's comments (at the July 14 hearing) might indicate a preference for deciding this issue by summary judgment, Defendant has also included post-April 14 correspondence, as well as a full declaration, to ensure compliance with the requirements of Rule 56. The correspondence up to April 14, 2021, are all expressly referenced in the Corr. 1st Am. Compl. [Docket Entry #43].

### A. Plaintiff Has Not Alleged Agreement (in Principle or Otherwise) on Any Terms Other Than an Amount of Payment

First, the actual allegations in Count II are insufficient to allege a valid agreement. As noted above, Texas law requires a contract to be "sufficiently definite to enable a court to understand the parties' obligations." *Liberto*, 441 F.3d at 323. Therefore, an agreement to make a contract at a future time is enforceable only if the parties have agreed to all essential terms. *See id.* "By contrast, where an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.'" *Id.* Such is the case here.

As pled, the Parties had reached only an "agreement in principle," and that was only with respect to the amount to be paid (the "**Payment Amount**") upon successful negotiation of a written settlement, with no allegation of any agreement (in principle or otherwise) being reached with respect to any other essential terms. Corr. 1st Am. Compl. [Docket Entry #43] at ¶¶ 19-24. More specifically, Paragraphs 19 and 20 are expressly limited to negotiation of the Payment Amount, *i.e.*, "the amount for settlement." Corr. 1st Am. Compl. [Docket Entry #43] at ¶¶ 19-20. Paragraphs 21 and 22 then represent the existence of an "agreement in principle" on the Payment Amount: *i.e.*, an "agreement in principle at [withheld number]." Corr. 1st Am. Compl. [Docket Entry #43] at ¶¶ 21-22.

In Paragraph 23, the allegations shift from saying "agreement in principle" to making the conclusory assertion that the Parties "had a valid settlement agreement." Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 23. Yet Plaintiff makes no factual allegations to support that conclusion. To the contrary, the allegations show that the Parties had only agreed in principle on the single term discussed in prior paragraphs, *i.e.*, the Parties had an agreement in principle "at the [withheld number] *as the settlement amount*." Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 23 (emphasis added).

In short, there are no factual allegations "that would enable a court to understand the parties' obligations"; indeed, there are no allegations that even mention any obligations by Magnacross (which, of course, would be necessary to form the consideration for any valid and enforceable contract). *See Liberto*, 441 F.3d at 323. As such, Plaintiff has failed to allege an agreement that is "sufficiently definite" to be binding under Texas law. *Id.*

To the contrary, Plaintiff's own allegations confirm the absence of a binding contract on January 18, 2021. Given the nature of this action – *e.g.*, alleging continuing patent infringement (Corr. 1st Am. Compl. [Docket Entry #43] at ¶¶ 12-13) – a settlement would necessarily require a written agreement (*e.g.*, release, license, etc.) as to multiple essential terms, and that is entirely consistent with Plaintiff's allegations. Specifically, Plaintiff alleges that its counsel sent a draft settlement agreement to Defendant's counsel. Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 24. Furthermore, it expressly alleges that dismissal of the claims was contingent upon completion of that written settlement agreement, *i.e.*, at which point Plaintiff would "*then* dismiss this matter." Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 24 (emphasis added). Finally, the allegations confirm that the Parties had not already reached agreement on the terms of that written settlement document, since "counsel for the parties negotiated [its terms] for several months" after January 18. Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 24.

Simply put, Plaintiff's conclusory assertion of a "valid settlement agreement" cannot be credited, in the face of: (1) the absence of supporting factual allegations and (2) its own contrary allegations in the pleading. As such, this action may be dismissed on the face of the pleadings alone, without need to consider any underlying documents.

**B. The January 18, 2021, Emails Confirm that No Valid Settlement Agreement was Reached**

Nevertheless, even if *arguendo* the absence of a valid agreement were not apparent from Plaintiff's own allegations, the absence of an agreement is confirmed by the very documents that Plaintiff relies upon in its pleadings. As shown below, those documents—the January 18, 2021, email string and the subsequent correspondence "negotiat[ing]" a written settlement agreement— make clear that no agreement (in principle or otherwise) was reached on January 18, 2021 (or any time thereafter). Furthermore, they demonstrate that Plaintiff and its counsel fully understood that a formal written agreement was always contemplated and necessary for a settlement.

First, the January 18, 2021, email string confirms the points discussed above. Consistent with Paragraphs 19 and 20, the Parties' email exchange was limited to a single issue, the Payment Amount, with no discussion of other essential terms. *See* Appendix[4] ("**Appx.**"), **Ex. A** at A002-004. Likewise, the email exchange confirms the "agreement in principle" was also limited to that single issue, which is consistent with the allegations in Paragraphs 21 and 22. *See* Appx., **Ex. A** A002-004.

Perhaps most importantly, the email string adds an additional point, *i.e.*, that the Parties *always* understood that the "agreement in principle" was to be only a part of a written settlement agreement encompassing other essential terms. This fact was conveniently omitted from Plaintiff's allegations, but it may be considered by the Court (under either Rule 12(b)(6) or Rule 56). *See Collins*, 224 F.3d at 498-99.

---

[4] Pursuant to the Court's directive during the hearing held on July 14, 2021, Defendant has attempted to reach agreement as to the documents relevant to the resolution of Count II. The Plaintiff's proposal comprised 221 pages. The Appendix submitted in support of Defendant's motion is considerably shorter, due in large part to the removal (where possible) of duplicative email chains, emails concerning scheduling matters, and other items not pertinent to the resolution of Count II.

More specifically, in Paragraph 22 of the "Corrected First Amended Complaint", Plaintiff misleadingly avers that Defendant's counsel "responded, 'Thank you. Marc' confirming the agreement in principle at [withheld number]." This is misleading because it omits the fact that Mr. Rabicoff's January email concluded with the statement "will send over a draft agreement very shortly." *See* Appx., **Ex. A** at A002. The "Thank you" was in response to Mr. Rabicoff's indication that he would be sending over a draft agreement. *See* Appx., **Ex. O** at A142, ¶ 5. Thus, the January 18, 2021, email exchange confirms what was already apparent in the pleadings, *i.e.*, the Parties had not agreed on all essential terms, which were to be completed by the subsequent negotiation of a written settlement agreement.

### C. The Correspondence During "Negotiations" Proves No "Valid Settlement" Agreement Was Reached on January 18, 2021

The foregoing allegations and evidence prove that the Parties had not reached a "valid settlement agreement" as averred in Count II. This alone is grounds for dismissal of Count II. Nonetheless, the correspondence that followed provides further objective, contemporaneous proof that neither Plaintiff nor its counsel believed an enforceable agreement was reached, much less that one was reached on January 18, 2021, as alleged in Count II.

In his January 18, 2021, 4:06PM EDT email (*see*, Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 21), Mr. Rabicoff confirmed the "agreement in principle at [withheld amount]" and then stated "[w]ill send over a draft agreement very shortly." On January 20, 2021, Mr. Rabicoff provided what he identified in his email as the "draft settlement". *See* Appx., **Ex. B** at A006. The attached draft, entitled "fNON-EXCLUSIVE *(sic)* PATENT LICENSE AND SETTLEMENT AGREEMENT" ("**Draft Agreement**"), included essential terms to be negotiated including, *inter alia*, patent license, covenant not to sue, mutual releases, dismissal of litigation, licensed users, licensed patents, licensed products, term, termination, survival clause, terms related to payment,

representations and warranties, confidentiality, governing law. *See* Appx., **Ex. B** at A009-020. Plaintiff understood that the Parties would be negotiating at least all of those essential terms – none of which had been previously discussed, much less agreed to. *See, e.g.,* Appx., **Ex. O** at A142-143, ¶¶ 6-8; **Ex. A** at A002 (Mr. Rabicoff indicating *sua sponte* that he would send a draft agreement). Thus, the "agreement in principle" on January 18, 2021, was nothing more than an unenforceable "agreement to agree." *Liberto*, 441 F.3d at 323.

In fact, the objective contemporaneous evidence proves that Plaintiff not only understood a written agreement and all essential terms was contemplated, but it also insisted that a notice of dismissal would not be filed until such an agreement was fully negotiated and executed. The then-current extension of time for OKI to Answer or otherwise respond to the original Complaint [Docket Entry #1], was to expire on January 22, 2021. [Docket Entry #17]. Upon receipt of the Draft Agreement on January 20, the undersigned counsel asked Mr. Rabicoff how he wished to proceed. *See* Appx., **Ex. C** at A022. Mr. Rabicoff responded: "We can dismiss before the EOT deadline if we have a fully executed deal. Otherwise we might need to get a final 2-week extension." *See* Appx., **Ex. C** at A022. Accordingly, the contemporaneous evidence proves that Mr. Rabicoff and his client knew that an enforceable valid settlement agreement had not yet been reached. Hence, Count II fails as a matter of law

On January 21, 2021, Mr. Rabicoff was informed that it was necessary to "work with OKI's legal department in Japan to get the agreement finalized, "necessitating an additional extension of time". *See* Appx., **Ex. C** at A022. On February 8, 2021, the undersigned sent an email to Mr. Rabicoff with the enclosed redlined revisions to the Draft Agreement. *See* Appx., **Ex. D** at A026. As is readily apparent, OKI's changes were extensive, comprising edits to all of the essential terms

and, significantly, changing the identity of the contracting party from Defendant (OKI Data Americas, Inc.) to its Japanese parent – OKI Data Corporation. *See* Appx., **Ex. D** at A027-044.

On February 12, 2021, Mr. Rabicoff provided Magnacross' counter-edits to OKI's redlined counter-draft. *See* Appx., **Ex. E** at A046 and A049-063. Of significance, Magnacross accepted that the contemplated agreement would now be with Defendant's Japanese parent corporation and not the Defendant. *See* Appx., **Ex. E** at A049. Equally significant, there still remained disagreement on most essential terms, including the definition of affiliate (which necessarily has an effect on the scope of the license to be granted), the scope of the exhaustion of right, the scope of the release, limitation on liability, material elements effecting the term and termination, the provision to be included in the survival clause and, of particular importance, the tax documents required by the Japanese Ministry of Tax that ensured compliance with applicable tax treaties, confirmed the identity of all pass-through entities and addressed anti-money laundering concerns. *See* Appx., **Ex. O** at A144-145, ¶ 13 and **Ex. E** at A054, § 4.2 at redline deletion.

On March 10, 2021, the undersigned explained that "***as a threshold issue***, I have confirmed that Oki cannot agree to waive the submission of the requisite tax documents".[5] *See* Appx., **Ex. G**

---

[5] By way of background, despite diligent efforts to have a meaningful negotiation, Mr. Rabicoff only made himself available for a 15-minute call on March 2, 2021. *See* Appx., **Ex. O** at A145-146, ¶ 15. Given the degree of differences between the Parties, little progress was possible during the 15-minute call. One topic that was discussed was the need for Magnacross to provide certain documentation for compliance with international tax treaties, including: (a) a certificate of U.S. residency, (b) completed Form 3 (Application Form For Income Tax Convention), (c) completed Form 16 (List of the Members of Foreign Company or List of the Partners of Entity), (d) completed Form 17 (Attachment Form For Limitation On Benefits Article), and (e) any other documents required for plural pass-through partners of Magnacross, if any. *Id*. Mr. Rabicoff indicated that his client was unwilling and, indeed, unable to provide the requisite documentation, instead suggesting that the Parties pursue a work-around. *Id*. Despite the undersigned explaining the need to ***discuss*** the extensive other points of disagreement as opposed to simply engaging in a volley of competing redlines, Mr. Rabicoff insisted that all changes be proposed in redline. *Id*. The Court need not rely upon the foregoing unless it deems it necessary or appropriate to convert the motion to dismiss to a motion for summary judgment.

at A071 (emphasis added). On March 10, 2021, Mr. Rabicoff responded stating, in relevant part, "*[i]t's simply a nonstarter if that's needed before payment*". *See* Appx., **Ex. G** at A071 (emphasis added). That same day, the undersigned requested a point of clarification on a point of withholding tax in Japan (*see* Appx., **Ex. G** at A071), to which Mr. Rabicoff commenced a new negotiation with respect to the Payment Amount, stating "my client's *opening position* is that OKI should gross up this withholding, and bear the costs since this should have been avoidable. I can probably get them to compromise by having the parties split the cost 50/50". *See* Appx., **Ex. G** at A070 (emphasis added). Whereas the legal issues concerning compliance with an international tax treaty are beyond the scope of this motion, the foregoing clearly demonstrates the lack of agreement. Furthermore, it acknowledges that even the one term that the Parties had agreed to in principle— *i.e.*, the Payment Amount—was not set in stone and was still subject to negotiation.

By that point in time, it was clear to OKI that a material impasse to settlement had been reached. On March 31, 2021, the undersigned wrote to Mr. Rabicoff stating "the tax issue is a deal breaker for my client even before we get to the other numerous other problems we only briefly discussed. As such, there is no need to extend the current stay. We will be responding to the complaint". *See* Appx., **Ex. G** at A070. In response, Mr. Rabicoff requested a call before the answer was filed, indicating "the gap here would be only a few thousand dollars." *See* Appx., **Ex. G** at A070. This is further indication that a final agreement on the Payment Amount had not even been reached.

If, *arguendo*, Plaintiff and its counsel believed that an enforceable agreement had been reached, one would logically expect that would have been expressed at that time; indeed, they arguably had a legal obligation to do so. Plaintiff never asserted that a "valid settlement agreement" had been reached on January 18, 2021, or any time thereafter. It did not do so,

however, because no such agreement had ever been reached. Instead, Plaintiff's counsel and his paralegal engaged in a flurry of emails requesting OKI agree to continue the stay and to not respond to the Complaint. *See* Appx., **Ex. H** at A076-77. Notably, Mr. Rabicoff again acknowledged the lack of agreement, stating he had tried to reach the undersigned "to see if we had ***agreement on other terms***." *See* Appx., **Ex. H** at A076 (emphasis added).

On April 7, 2021, Mr. Rabicoff wrote again, providing further proof that a "valid settlement agreement" had not been reached. While he stated that his client "agrees to providing all the required forms under § 4.2", he noted "***we still have other edits – we're open to negotiating these other terms***, but need actual counter-redlines back from you." *See* Appx., **Ex. I** at A079 (emphasis added). Mr. Rabicoff concluded, "for all these reasons, we strongly recommend re-doubling efforts on the settlement agreement." *Id*. Thus, as of April 7, 2021, Mr. Rabicoff fully understood that there was no "valid settlement agreement" between the Parties.

The correspondence in the weeks that followed provide further evidence of Plaintiff's counsel's understanding that there was no "valid settlement agreement" at that time, much less as of January 18, 2021, as alleged in Count II. The correspondence is detailed and provided in the accompanying Labgold Declaration. Select statements of note ***by Mr. Rabicoff*** include:[6]

| Date | Statement | Appx. Citation |
|---|---|---|
| 4/8/21 | "I'm hoping we can focus on settlement – **we're ready to continue negotiations** in good faith and, as you can see, are willing to supply the required documentation so your client | **Ex. K** at A108-109 |

---

[6] It appears that all of the statements through April 14, 2021 could be considered under Rule 12(b)(6) without converting to summary judgment, since they are part of the "negotiations" that are referred to by Plaintiff and that are central to its claims. If, however, the Court wishes to consider the statements after April 14 or the statement in Defendant's supporting Declaration, the motion may be converted to summary judgment pursuant to Rule 12(d).

| | | |
|---|---|---|
| | can reasonably ascertain Magnacross' identity, etc." (Emphasis added). | |
| 4/14/21 | "I'm going to get the ***most flexibility from my client on terms if we close this*** before we need to answer the Motion to Dismiss (on 4/23)." (Emphasis added). | **Ex. K** at A108 |
| 4/15/21 | "Can you explain the change of settlement amount to 25,000 after we agreed in principal at 47,500? We presume this is a mistake, since ***we've continued to negotiate*** …". (Emphasis added); | **Ex. K** at A108 |
| 4/16/21 | "***we're at a crossroads***" acknowledging that there was still "***disputed terms***" and concluding "any modification to the agreed payment amount ***sabotages the negotiation and scuttles any conceivable deal***." (Emphasis added); | **Ex. K** at A107 |
| 4/16/21 | "if this is a matter of your client being concerned about the scope of CNS/release coverage, we can at least try to work through those details. I might have wiggle room". | **Ex. K** at A107 |

Each of the foregoing statements provides objective evidence that Mr. Rabicoff and his client fully understood that the Parties had not reached a "valid settlement agreement" on January 18, 2021, as alleged in Count II (or thereafter).

Lastly, OKI respectfully submits that Plaintiff's conduct before this Court provides further objective evidence that no "valid settlement agreement" was reached on January 18, 2021, or thereafter. If, *arguendo*, an enforceable agreement had been reached, one would have expected Plaintiff to notify the Court of that fact when OKI filed its Motion to Dismiss [Docket Entry #26];

indeed, as noted *supra*, they arguably had a legal obligation to do so. Rather than engage in the farce of submitting a non-responsive cut-and-paste brief from another case, Plaintiff could have simply notified the Court of the existence of the allegedly enforceable agreement. It did not do so, because no such agreement ever existed, as a matter of law. Accordingly, Count II should be dismissed with prejudice.

## V. THE AMENDMENT OF THE COMPLAINT TO ADD FRIVOLOUS COUNT II CONSTITUTES UNREASONABLE AND VEXATIOUS MULTIPLICATION OF THIS PROCEEDING

The contemporaneous correspondence provides objective proof that Plaintiff's counsel knew that no enforceable settlement agreement existed on January 18, 2021. Mr. Rabicoff's own words repeatedly and consistently evidence his understanding that the "agreement in principle" was nothing more than an agreement to agree and that he was fully aware that any final and binding settlement required a written agreement with the essential terms detailed *supra*. Plaintiff's "local" counsel, Mr. Papool Chaudhari, was also well-aware of the fact that no enforceable agreement existed. He had injected himself into the negotiation process on May 26, 2021, suggesting a one hour zoom call to walk through the areas of dispute. *See* Appx., **Ex. L** at A112.

Thus, Plaintiff's counsel were both fully aware at the time they caused the First Amended Complaint to be filed that no "valid settlement agreement" existed. Despite such knowledge, they knowingly filed frivolous Count II on July 13, 2021. A claim is frivolous if it lacks an arguable basis in either law or fact. *Taurus*, 2009 WL 2849581, at *1. Knowingly filing a frivolous and factually baseless claim is sanctionable conduct. *See, Barrett-Bowie*, 2014 WL 5334448, at *2 (ordering sanctions against plaintiff's counsel for advancing a factually frivolous claim which was not made in good faith as it was directly contrary to the evidence available to plaintiff's counsel at the time the pleadings were filed.).

Moreover, Count II includes selective quotations to misleadingly create the appearance that OKI's counsel thanked Mr. Rabicoff for confirming the existence of a "valid settlement agreement." *See* Corr. 1st Am. Compl. [Docket Entry #43] at ¶ 22. In reality, the actual emails clearly show the expression "Thank you" was responsive to Mr. Rabicoff's statement "Will send over a draft agreement very shortly." *See* Appx., **Ex. A** at A002 and **Ex. O** at A142, ¶5.

Even more troubling is the timing of the filing of Count II. Despite asserting that the "valid settlement agreement" existed on January 18, 2021, the Complaint was not amended to add the corresponding Count II until after business hours (5:07PM CDT) the night before the hearing on OKI's Motion to Dismiss the Complaint. OKI respectfully submits that the clear intention of the filing was to derail the oral hearing on OKI's Motion to Dismiss the Complaint and preclude the Court from dismissing the Complaint at that time. Doing so would ensure that Plaintiff would retain leverage to continue to urge OKI to negotiate a settlement agreement.

Such conduct is the epitome of engaging in unreasonable and vexatious multiplication of litigation. This Court has held that

> the phrase 'unreasonably and vexatiously' describes conduct that, when viewed under an objective standard, is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation.

*Western Fidelity*, 2001 WL 34664165, at *22. Under an objective standard, Plaintiff's counsel plainly knew that the allegations of Count II were false, untenable and unwarranted in fact or law. *Id.* The timing of the allegations of Count II – six months after Count II avers a "valid settlement agreement" came into existence and the night before a hearing on a Motion to Dismiss the Complaint – is evidence of a "primary purpose of obstructing the orderly process of the litigation." *Id.*

Accordingly, OKI respectfully requests that the Court (a) find the Count II frivolous, (b) find that Plaintiff's counsel has unreasonably and vexatiously multiplied the proceedings, (c) order Plaintiff's counsel to personally satisfy the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct, and (d) grant such other relief that the Court deems necessary and proper under the circumstances of this case. Furthermore, both Mr. Rabicoff and Mr. Chaudhari should be jointly and severally liable for the violations. While Mr. Rabicoff was more substantively involved in the earlier stages of the negotiation, Mr. Chaudhari was actively involved in efforts to negotiate a settlement agreement. *See* Appx., **Ex. L** at A112 and **Ex. M** at A116-134. Mr. Chaudhari's name is on the Corr. 1st Am. Compl. [Docket Entry #43] at p. 6, and he made the ECF filing after being cautioned by the Court as to his responsibility. *See* Transcript of July 14, 2021, Hearing [Docket Entry #44] at 7. Yet, despite being well aware of the fact there was no "valid settlement agreement", he nonetheless effected the filing of frivolous Count II. *See, e.g.*, *Cedar Lane Tech. Inc. v. Blackmagic Design Inc*., No. 20-cv-01302-VC, 2020 WL 6789711 (N.D. Cal. Nov. 19, 2020) (finding both local counsel and Mr. Rabicoff liable for, *inter alia*, filing frivolous assertions).

## VI.  <u>CONCLUSION</u>

OKI's motion to dismiss Count I of the "Corrected First Amended Complaint" is already *sub judice* and, therefore, Defendant believes no further pleading is required at this time. For the reasons set forth herein, OKI respectfully requests the Court grant OKI's Motion to Dismiss Count II of the "Corrected First Amended Complaint" pursuant to FED. R. CIV. P., RULE 12(b)(6) for failing to state a claim upon which relief can be granted or, alternatively, pursuant to FED. R. CIV. P., RULE 56. Additionally, OKI respectfully requests the Court (a) find Count II frivolous, (b) find that Plaintiff's counsel unnecessarily and vexatiously multiplied the proceedings in an improper attempt to avoid dismissal of the proceedings, (c) award OKI its costs and attorneys' fees that were

incurred as a result of such conduct pursuant to 28 U.S.C. § 1927, and (d) grant OKI any and all additional relief the Court deems appropriate under the circumstances of this case.

Submitted this 29th day of July, 2021     By: */s/ Marc R. Labgold*
                                                 Marc R. Labgold, Ph.D.
                                                 DC Bar No. 474969 (*pro hac vice*)
                                                 **OFFICES OF MARC R. LABGOLD, P.C.**
                                                 12005 Sunrise Valley Drive, Suite 203
                                                 Reston, Virginia 20191
                                                 Tel: (703) 901-8860
                                                 Fax: (877) 401-8855
                                                 Email: mlabgold@labgoldlaw.com

                                                 William D. Taylor
                                                 (TX Bar No. 24046954)
                                                 **TAYLOR & TAYLOR LAW, P.C.**
                                                 4115 Highgrove Dr.
                                                 Arlington, TX 76001
                                                 Telephone: 817-483-8388
                                                 Facsimile: 817-483-8390
                                                 Email: wtaylor@taylorandtaylorlaw.com

                                                 ***Counsel for Defendant Oki Data Americas Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve electronic notification of such filing to all counsel of record.

                                       By: */s/ Marc R. Labgold*
                                              Marc R. Labgold, Ph.D.
                                            DC Bar No. 474969 (*pro hac vice*)