**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MAGNACROSS LLC,** | **Case No. 3:20-cv-01959-M** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **OKI DATA AMERICAS INC.,** | |
| Defendant. | |

**PLAINTIFF'S APPENDIX IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT, AND MOTION FOR SANCTIONS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

| Document | Beginning Page Number |
|---|---|
| January 12, 2021 Email from Labgold to Rabicoff | **A001** |
| January 13, 2021 Email from Rabicoff to Labgold | **A002** |
| January 13, 2021 Email from Labgold to Rabicoff | **A003** |
| January 15, 2021 Email from Rabicoff to Labgold | **A004** |
| January 18, 2021 Email from Labgold to Rabicoff | **A005** |
| January 18, 2021 Email from Rabicoff to Labgold | **A005** |
| January 18, 2021 Email from Labgold to Rabicoff | **A006** |
| January 18, 2021 Email from Rabicoff to Labgold | **A007** |

| Document | Beginning Page Number |
|---|---|
| | |
| January 18, 2021 Email from Labgold to Rabicoff | **A008** |
| January 20, 2021, Email and attachment from Rabicoff to Labgold | **A009** |
| February 8, 2021 Email and attachment from Labgold to Rabicoff | **A023** |
| February 12, 2021 Email and attachment from Rabicoff to Labgold | **A042** |
| February 22, 2021 Email from Rabicoff to Labgold | **A058** |
| February 22, 2021 Email from Labgold to Rabicoff | **A059** |
| February 25, 2021 Email from Labgold to Rabicoff | **A060** |
| February 26, 2021 Email from Rabicoff to Labgold | **A061** |
| March 9, 2021 Email from Rabicoff to Labgold | **A062** |
| March 10, 2021 Email from Labgold to Rabicoff | **A063** |
| March 10, 2021 Email from Rabicoff to Labgold | **A064** |
| March 10, 2021 Email from Labgold to Rabicoff | **A065** |
| March 10, 2021 Email from Rabicoff to Labgold | **A066** |
| March 15, 2021 Email from Rabicoff to Labgold | **A067** |
| March 15, 2021 Email from Labgold to Rabicoff | **A068** |

| Document | Beginning Page Number |
|---|---|
| | |
| March 23, 2021 Email from Rabicoff to Labgold | **A069** |
| March 25, 2021 Email from Rabicoff to Labgold | **A070** |
| March 31, 2021 Email from Labgold to Rabicoff | **A071** |
| April 1, 2021 Email from Rabicoff to Labgold | **A072** |
| April 1, 2021 Email from Labgold to Rabicoff | **A073** |
| April 1, 2021 Email and attachment from Rabicoff to Labgold | **A074** |
| April 1, 2021 Email from Rabicoff to Labgold | **A090** |
| April 1, 2021 Email from Labgold to Frye | **A091** |
| April 1, 2021 Email from Rabicoff to Labgold | **A092** |
| April 1, 2021 Email from Labgold to Rabicoff | **A093** |
| April 5, 2021 Email from Rabicoff to Labgold | **A094** |
| April 7, 2021 Email and attachment from Rabicoff to Labgold | **A096** |
| April 8, 2021 Email from Labgold to Rabicoff | **A110** |
| April 8, 2021 Email from Rabicoff to Labgold | **A112** |
| April 9, 2021 Email from Rabicoff to Labgold | **A113** |
| April 14, 2021 Email from Rabicoff to Labgold | **A114** |
| April 14, 2021 Email and attachment from Labgold to Rabicoff | **A115** |
| April 15, 2021 Email from Rabicoff to Labgold | **A131** |

| Document | Beginning Page Number |
|---|---|
| April 15, 2021 Email from Labgold to Rabicoff | **A132** |
| April 16, 2021 Email from Rabicoff to Labgold | **A133** |
| April 16, 2021 Email from Labgold to Rabicoff | **A135** |
| April 16, 2021 Email and attachment from Rabicoff to Labgold | **A136** |
| April 16, 2021 Email from Rabicoff to Labgold | **A151** |
| May 26, 2021 Email from Chaudhari to Labgold | **A153** |
| May 27, 2021 Email from Labgold to Chaudhari | **A154** |
| May 27, 2021 Email from Chaudhari to Labgold | **A155** |
| June 3, 2021 Email from Chaudhari to Labgold | **A156** |
| June 4, 2021 Email and attachment from Labgold to Chaudhari | **A157** |
| June 22, 2021 Email and attachment from Chaudhari to Labgold | **A173** |
| June 22, 2021 Email from Labgold to Chaudhari | **A189** |
| June 29, 2021 Email from Chaudhari to Labgold | **A190** |
| June 30, 2021 Email from Labgold to Chaudhari | **A191** |
| June 30, 2021 Email from Chaudhari to Labgold | **A192** |

| Document | Beginning Page Number |
|---|---|
| July 2, 2021 Email and attachment from Chaudhari to Labgold | **A193** |
| July 5, 2021 Email from Waiter to Chaudhari | **A209** |
| July 13, 2021 Email from Chaudhari to Waiter | **A212** |
| July 16, 2021 Email from Labgold to Chaudhari | **A213** |
| July 16, 2021 Email from Chaudhari to Labgold | **A214** |
| July 19, 2021 Email from Labgold to Chaudhari | **A215** |
| July 19, 2021 Email from Chaudhari to Labgold | **A216** |
| Declaration of Julie Wang | **A217** |
| Declaration of Issac Rabicoff | **A221** |
| Declaration of Papool Chaudhari | **A232** |

Dated:  August 19, 2021                    Respectfully submitted,

                                           */s/ Isaac Rabicoff*
                                           Isaac Rabicoff
                                           **Rabicoff Law LLC**
                                           73 W Monroe St
                                           Chicago, IL 60603
                                           (773) 669-4590
                                           isaac@rabilaw.com

                                           Papool S. Chaudhari
                                           State Bar No. 24076978
                                           PRA Law
                                           2800 Bartons Bluff Lane #1902
                                           Austin, TX 78746
                                           Tel. (214) 702-1150
                                           papool@pralawllc.com

                                           **Counsel for Plaintiff**
                                           **Magnacross LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all counsel of record who have appeared in this case on August 19, 2021, and who are deemed to have consented to electronic service via the Court's CM/ECF system pursuant to Local Rule CV-5.1(d).

*/s/ Isaac Rabicoff*
Isaac Rabicoff

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Tuesday, January 12, 2021 1:11 PM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

Thank you again for your patience and cooperation to date.  We have considered your client's latest response.  Suffice it to say that the parties have diametric views on the scope and validity of the patent-in-suit and the issue of infringement.  As such, it does not make economic sense to continue to discuss the merits.

That said, it makes little sense to devote valuable resources to litigating the dispute.  As such, my client is willing to settle the case on a nuisance basis for $25,000.

I look forward to your client's response.

With best regards,

Marc

**PLAINTIFF'S APPENDIX**                                    **A001**

**From:**      Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**      Wednesday, January 13, 2021 7:27 AM
**To:**        Marc R. Labgold
**Subject:**   Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:**   Follow up
**Flag Status:**      Flagged

Marc:

I'm authorized to counter at 95K, responding to your client's 25K.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Tue, Jan 12, 2021 at 2:27 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
 Thanks

> On TuesdayJan 12, 2021, at 2:12 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Marc:
>
> Thanks, I'll get back with you very soon.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Tue, Jan 12, 2021 at 2:11 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>  Isaac,
>
>  Thank you again for your patience and cooperation to date.  We have considered your client's latest
>  response.  Suffice it to say that the parties have diametric views on the scope and validity of the
>  patent-in-suit and the issue of infringement.  As such, it does not make economic sense to continue to
>  discuss the merits.

**PLAINTIFF'S APPENDIX**                    **A002**

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Wednesday, January 13, 2021 3:34 PM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

I am authorized to counter at $30K.

Let me know.

Thanks,

Marc


> On WednesdayJan 13, 2021, at 8:31 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Thanks.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Wed, Jan 13, 2021 at 8:31 AM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:
> > Thanks Isaac.  I will get back to you shortly.
> >
> >
> > > On Jan 13, 2021, at 8:26 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
> > >
> > > Marc:
> > >
> > > I'm authorized to counter at 95K, responding to your client's 25K.
> > >
> > >
> > > Isaac Rabicoff
> > > Rabicoff Law LLC

**PLAINTIFF'S APPENDIX**                    **A003**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Friday, January 15, 2021 7:53 AM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

I'm authorized to counter at 85K, to your 30K.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Wed, Jan 13, 2021 at 4:34 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Isaac,
>
> I am authorized to counter at $30K.
>
> Let me know.
>
> Thanks,
>
> Marc
>
>
> On WednesdayJan 13, 2021, at 8:31 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Thanks.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Wed, Jan 13, 2021 at 8:31 AM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:

**PLAINTIFF'S APPENDIX**                                    **A004**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Monday, January 18, 2021 3:02 PM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

Can you just confirm the number -- I understand this is conditional upon my client accepting, but just want to avoid any uncertainty.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Mon, Jan 18, 2021 at 4:00 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Isaac,
>
> Sorry for the delay in responding.  I am confirming that arriving at the center would do the trick.  Please confirm.
>
> With best regards,
>
> Marc
>
>
>
> On FridayJan 15, 2021, at 8:53 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Marc:
>
> I'm authorized to counter at 85K, to your 30K.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590

**PLAINTIFF'S APPENDIX**                    **A005**

**From:**          Marc R. Labgold  <mlabgold@labgoldlaw.com>
**Sent:**          Monday, January 18, 2021 3:04 PM
**To:**            Isaac Rabicoff
**Subject:**       Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:**    Follow up
**Flag Status:**       Flagged


57.5


On MondayJan 18, 2021, at 4:02 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

Can you just confirm the number -- I understand this is conditional upon my client accepting, but just want to avoid any uncertainty.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Mon, Jan 18, 2021 at 4:00 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
Isaac,

Sorry for the delay in responding.  I am confirming that arriving at the center would do the trick.  Please confirm.

With best regards,

Marc



On FridayJan 15, 2021, at 8:53 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

I'm authorized to counter at 85K, to your 30K.


Isaac Rabicoff

**PLAINTIFF'S APPENDIX**                                    **A006**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Monday, January 18, 2021 3:06 PM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Thanks Marc.

We have an agreement in principle at 57.5.

Will send over a draft agreement very shortly.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Mon, Jan 18, 2021 at 4:03 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> 57.5
>
>
>> On MondayJan 18, 2021, at 4:02 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>
>> Marc:
>>
>> Can you just confirm the number -- I understand this is conditional upon my client accepting, but just want to avoid any uncertainty.
>>
>>
>> Isaac Rabicoff
>> Rabicoff Law LLC
>> www.RabiLaw.com
>> 5680 King Centre Dr, Suite 645
>> Alexandria, VA 22315
>> 773.669.4590
>>
>>
>> On Mon, Jan 18, 2021 at 4:00 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Isaac,
>>>
>>> Sorry for the delay in responding.  I am confirming that arriving at the center would do the trick.  Please confirm.

18
**PLAINTIFF'S APPENDIX**                                        **A007**

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Monday, January 18, 2021 3:08 PM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thank you.

Marc

On MondayJan 18, 2021, at 4:06 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Thanks Marc.

We have an agreement in principle at 57.5.

Will send over a draft agreement very shortly.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Mon, Jan 18, 2021 at 4:03 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
57.5

On MondayJan 18, 2021, at 4:02 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

Can you just confirm the number -- I understand this is conditional upon my client
accepting, but just want to avoid any uncertainty.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315

**PLAINTIFF'S APPENDIX**                                          **A008**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Wednesday, January 20, 2021 8:00 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| **Attachments:** | Magnacross-Oki Agreement 2020-1-20.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Draft settlement is attached.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Mon, Jan 18, 2021 at 4:03 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> 57.5
>
>
>> On MondayJan 18, 2021, at 4:02 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>
>> Marc:
>>
>> Can you just confirm the number -- I understand this is conditional upon my client accepting, but just want to avoid any uncertainty.
>>
>>
>> Isaac Rabicoff
>> Rabicoff Law LLC
>> www.RabiLaw.com
>> 5680 King Centre Dr, Suite 645
>> Alexandria, VA 22315
>> 773.669.4590
>>
>>
>> On Mon, Jan 18, 2021 at 4:00 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Isaac,
>>>
>>> Sorry for the delay in responding.  I am confirming that arriving at the center would do the trick.  Please confirm.
>>>
>>> With best regards,

**PLAINTIFF'S APPENDIX**                    **A009**

# fNON-EXCLUSIVE PATENT LICENSE
# AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035 (hereinafter "Magnacross"), on the one hand, and OKI Data Americas Inc, a [state] entity with a regular and established place of business at [address] (hereinafter "OKI"), on the other.  Magnacross and OKI are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

## BACKGROUND

A.     WHEREAS Magnacross owns the Licensed Patents (as defined in Section 1.2 below) with all rights to enforce the Licensed Patents;

B.     WHEREAS Magnacross alleges that the manufacture, use, sale, offer for sale, or import by OKI of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against OKI in the United States District Court for the Northern District of Texas, Civil Action No. 3:20-cv-01959 (the "Litigation");

C.     WHEREAS without admitting infringement or liability and for settlement purposes, and in part to avoid the expense and risks associated with patent infringement litigation, OKI desires to obtain a license, covenant not to sue and release under the Licensed Patents in connection with the Licensed Products (as defined in Section 1.3 below) by Licensed Users (as defined in Section 1.1 below); and

D.     WHEREAS Magnacross is willing to provide a license, covenant not to sue and release to OKI under Magnacross's early settlement program, in exchange for a payment amount that Magnacross believes is substantially less than the amount that would constitute a reasonable royalty for OKI's past and expected future use of the inventions of the Patent-in-Suit, because Magnacross is granting this release and license early in the Litigation;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and OKI, intending to be legally bound, agree as follows:

1.     **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

**PLAINTIFF'S APPENDIX**                                                                                    **A010**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.1   **"Licensed User(s)"** shall mean OKI and its Subsidiaries as defined in Section 1.4 below, subject to the following:

(a)   If an entity that was at any time a Subsidiary ceases to be at least fifty percent (50%) beneficially or equitably owned by OKI after the Effective Date (a "Divested Subsidiary"), the Divested Subsidiary shall continue to be a Licensed User; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Subsidiary at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Subsidiary; and

(b)   In the event that an entity is not a Subsidiary as of the Effective Date of this Agreement, but later becomes a Subsidiary through an acquisition by OKI (an "Acquired Subsidiary"), such Acquired Subsidiary shall be deemed to be a Subsidiary for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Subsidiary with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Subsidiary.   To the extent OKI is acquired by or merges with another entity or reorganizes organizations in the future in a manner that meet the Control requirements herein, this shall be deemed a change in control subject to Section 8.7.

1.2   **"Licensed Patents"** shall mean (a) U.S. Patent No. 6,917,304; and (b) any additional patents issued or granted via any divisionals, continuations, continuations-in-part, reissues and reexaminations of U.S. Patent No. 6,917,304.

1.3   **"Licensed Product(s)"** shall mean any product, software, website or service, or material portion of a product, software, website or service, that has been, is or will be made, had made, used, offered to sell, sold or imported by, or on behalf of, Licensed Users, under a brand that any Licensed User owns or controls, wherein such product, software, website or service, or such material portion of a product, software, website or service is covered or could be alleged to be covered by one or more claims of any Licensed Patent.

1.4   **"Subsidiary" or "Subsidiaries"** shall mean any entity in which, as of the Effective Date or during the Term of this Agreement, OKI owns or controls a greater than fifty percent (50%) beneficial or equitable ownership interest, directly or indirectly.

1.5   **"Term"** shall mean the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.   **LICENSE AND COVENANT NOT TO SUE**

**PLAINTIFF'S APPENDIX**                                                        **A011**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**2.1    Grant of Limited License.**  Subject to payment by OKI to Magnacross of the Settlement Payment in accordance with Sections 4.1 and 4.2 below and subject to the other provisions of this Section 2 and the provisions of Section 8.7, Magnacross hereby grants:

(a)      to Licensed Users;

(b)      to the manufacturers, distributors, resellers, and retailers of Licensed Users, solely to the extent of their actions on behalf of Licensed Users with respect to Licensed Products; and

(c)      to the customers and end users of Licensed Products, solely to the extent of their use of Licensed Products;

a nonexclusive, nontransferable, perpetual, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, and export the Licensed Products, for the Term.

**2.2    Covenant Not To Sue.**  Subject to payment by OKI to Magnacross of the Settlement Payment in accordance with Sections 4.1 and 4.2 below, Magnacross hereby covenants not to sue, under the Licensed Patents:

(a)      any Licensed User;

(b)      any manufacturer, distributor, reseller or retailer of Licensed Users, solely to the extent of their actions on behalf of Licensed Users with respect to Licensed Products; and

(c)      any customer or end user of Licensed Products, solely to the extent of their use of Licensed Products.

The covenants not to sue set forth herein shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may now or in the future have against any Licensed User, including without limitation breach of this Agreement.

**2.3    Reserved Rights.**  Any and all rights not explicitly granted to Licensed Users in Sections 2.1 and 2.2 above are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth in Sections 2.1 and 2.2 above.

**2.4    No Sublicense Rights**.  The license granted to Licensed Users in Section 2.1 above does not confer upon Licensed Users the right to grant or otherwise transfer

**PLAINTIFF'S APPENDIX**                    **A012**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7 below.

## 3.   MUTUAL RELEASES AND DISMISSAL OF LITIGATION

3.1   **Release by Magnacross**.  Subject to payment by OKI to Magnacross of the Settlement Payment in accordance with Sections 4.1 and 4.2 below, Magnacross releases, acquits, and forever discharges:

(a)   the Licensed Users, and their predecessors, successors and assigns;

(b)   the officers, directors, members, attorneys, employees, agents, and insurers of the Licensed Users, solely to the extent of their actions on behalf of Licensed Users;

(c)   the manufacturers, distributors, resellers, and retailers of Licensed Users, solely to the extent of their actions on behalf of Licensed Users with respect to Licensed Products; and

(d)   the customers and end users of Licensed Products, solely to the extent of their use of Licensed Products;

from any and all claims or liability for infringement or alleged infringement of the Licensed Patents in connection with the Licensed Products, occurring prior to the Effective Date.

For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

3.2   **Release by OKI.**  OKI hereby releases, acquits, and forever discharges:

(a)   Magnacross, and its predecessors, successors and assigns;

(b)   the officers, directors, members, attorneys, employees, agents, and insurers of Magnacross, solely to the extent of their actions on behalf of Magnacross;

from any and all claims in connection with the licensing and enforcement of the Licensed Patents, occurring prior to the Effective Date.
For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.

3.3   **Contesting Validity.**  OKI agrees that Licensed Users shall not challenge, or assist others in challenging in any way, the validity and enforceability of any

---

**PLAINTIFF'S APPENDIX**                          **A013**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Licensed Patent, except that Licensed Users shall have the right to challenge the validity and enforceability of any Licensed Patent in defense to a suit or assertion of a claim relating to any Licensed Patent that is brought against a Licensed User.

3.4     **Unknown Claims.**   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.   The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.   The Parties agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction.   Section 1542 reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5     **Dismissal of Litigation.**   Subject to payment by OKI of the Settlement Payment in accordance with Sections 4.1 and 4.2 below, Magnacross and OKI, through their counsel, will dismiss, with prejudice, all claims made against the other Party in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.   No Party shall take any action to oppose the Court's entry of dismissal as set forth above, nor to subsequently take any action either to vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.   The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

3.6     **Safe Harbor**.   In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach. Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if  the allegedly breaching Party cures it within 30 days of such written notice.

4.     **PAYMENT**

4.1     **Settlement Payment.**   Within five (5) business days after the execution of this Agreement, OKI shall pay to Magnacross a lump-sum and one-time payment in the amount of **$57,500 USD** ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Licensed Users shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

**PLAINTIFF'S APPENDIX**                              **A014**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

4.2 **Terms Related to Payment**. The Settlement Payment set forth in Section 4.1 above shall be paid in United States Dollars by wire transfer to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement. Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder. OKI will not withhold any tax amounts from the Settlement Payment and will make the full amount of the Settlement Payment to Magnacross in accordance with the terms of this Section 4.2. Any payment required hereunder that is more than ten (10) days late (including unpaid portions of amounts due) shall bear interest, compounded monthly, at the lesser of ten percent (10%) per annum, or the highest interest rate permitted to be charged by applicable law. Failure to pay within ten (10) days of the due date shall constitute a material breach of this Agreement.

4.3 **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross's outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.5 above.

5. **REPRESENTATIONS, WARRANTIES AND COVENANTS**

5.1 **Representations, Warranties, and Covenants of OKI.** OKI represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by OKI and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which OKI is a party; (b) OKI understands that this Agreement may not provide Licensed Users all of the rights needed, if any, from parties other than Magnacross to make, have made, use, sell, offer for sale, or import into the United States the Licensed Products; and (c) OKI has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement.

5.2 **Representations, Warranties, and Covenants of Magnacross**. Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all licenses, covenants and other rights of OKI and obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; and (f) in the event that Magnacross transfers any Licensed

**PLAINTIFF'S APPENDIX**                                             **A015**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Patent in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patent.

5.3     **WARRANTY DISCLAIMERS.** (A) EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, THE RIGHTS GRANTED TO LICENSED USERS BY MAGNACROSS UNDER THIS AGREEMENT ARE GRANTED IN "AS IS" CONDITION; (B) EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO LICENSED USERS OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND (C) MAGNACROSS MAKES NO REPRESENTATION THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, OR IMPORT OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4     **Limitation of Liability.**

(a)     Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Licensed User, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance. These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)     In no event shall Magnacross or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement. OKI expressly consents to this limitation of Magnacross's liability for all actions and inactions by Magnacross or its successors or assigns. In the event of a breach by Magnacross, Licensed User agrees not to seek damages or any other payment from Magnacross, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, Magnacross cures the breach within thirty (30) days from receipt of notice.

6.     **CONFIDENTIALITY**

PLAINTIFF'S APPENDIX                              A016

6.1     **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement to its accountants, attorneys, bankers, investors, prospective investors, consultants and any third party covered by the release or covenant not to sue provided above (collectively, the "Permitted Third Parties"), provided that any such Permitted Third Party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement.  Either Party may disclose the terms and existence of this Agreement in connection with any litigation involving the Licensed Patents, so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions.   Magnacross may disclose the terms and existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement.

Confidential Information shall not include information that: (i) was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

7.     **TERM AND TERMINATION**

7.1     **Termination for Breach**.  Magnacross may terminate this Agreement upon ten (10) days written notice to OKI upon the breach by OKI of any of the payment terms of this Agreement contained in Sections 4.1 and 4.2 above, provided that OKI has not cured the breach within such ten (10) day period.

7.2     **No Refund.**  In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall OKI be entitled to a refund or reimbursement of the Settlement Payment from

**PLAINTIFF'S APPENDIX**                                                                        **A017**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross; however, this provision shall not prevent OKI from recovering damages against Magnacross, subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross.

7.3    **Survival**.   Sections 1, 4, 5, 6, 7, and 8 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.1 above.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8.    **MISCELLANEOUS**

8.1    **Non-Agency**.   Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between Magnacross and OKI.  Neither Magnacross nor OKI shall incur any debts or make any commitments for the other.

8.2    **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and OKI, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by any party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by a Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

8.3    **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

8.4    **Governing Law and Consent to Jurisdiction**.   This Agreement shall be governed by and construed under applicable federal law and the laws of the State of Texas, excluding any conflict of law provisions.  Magnacross and OKI each irrevocably consent to the exclusive jurisdiction of any Texas state or federal

**PLAINTIFF'S APPENDIX**                                              **A018**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

court sitting in the Eastern District of Texas, over any suit, action or proceeding arising out of or relating to this Agreement.

8.5    **Notices**. Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

8.6    **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party hereto for the benefit of a third party, or to confer any rights on any party other than Magnacross or Licensed Users.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than Magnacross or OKI any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7    **Assignment and Change of Control.**  OKI may not assign, delegate, sell, transfer, sublicense or otherwise diOKIse of any or all of its rights or obligations under this Agreement to any other person, business or entity, except pursuant to a merger, a sale of all or substantially all of OKI'ss business assets, or a corporate reorganization.  In the event that OKI is part of a merger or is sold or acquired by another entity, the license rights and other rights granted under this Agreement shall extend only to the business of OKI at the time of the merger, sale or acquisition, and natural evolutions thereof, and shall not extend to any other operations of any entity that is merged with OKI or that purchases or acquires OKI, even if the operations are of the same type as OKI.

8.8    **Statement Regarding Marking of Products.**  OKI asserts that the Licensed Users have not infringed any claim of any Licensed Patent, that the Licensed Users are not currently infringing any claim of any Licensed Patent, and that the Licensed Users have no intent to do so.  OKI further asserts that the Patent-in-Suit is invalid, such that the Licensed Users could not make, have made, sell, offer for sale, import or export any product that would infringe any valid claim of the Patent-in-Suit.  Further, this Agreement is a litigation settlement of disputed claims, and not an acknowledgement that any Licensed User needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.  Therefore, from the Effective Date forward, the Licensed Users contend that they will have no products that must be marked under 35 U.S.C. § 287.

8.9    **Counterparts.**  This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.  Each such

**PLAINTIFF'S APPENDIX**                                                     **A019**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

[Signatures on Next Page]

**PLAINTIFF'S APPENDIX**                    **A020**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                                    **OKI Data Americas Inc**


By: _____            By: _____

Print Name: _____          Print Name: _____

Title: _____            Title: _____

Date: _____            Date: _____


      [Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                    **A021**

## EXHIBIT A

## WIRE TRANSFER INSTRUCTIONS

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████████ | Chicago, IL 60603 |
|  | ███████████ |

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**From:**         Marc R. Labgold <mlabgold@labgoldlaw.com>
**Sent:**         Monday, February 8, 2021 7:01 PM
**To:**           Isaac Rabicoff
**Subject:**      Revised draft
**Attachments:**  Oki Revised Magnacross draft.docx

**Follow Up Flag:**  Follow up
**Flag Status:**     Flagged

Dear Isaac,

I hope you are doing well.  Attached is Oki's revised draft for your review

With best regards,

Marc

**PLAINTIFF'S APPENDIX**                                    **A023**

# NON-EXCLUSIVE PATENT LICENSE
# AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at ~15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), on the one hand, and OKIOki Data Americas IncCorporation, a [state] entity with a regularcorporation, organized and established placeexisting under the laws of businessJapan, with a principal office at [address]4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "OKI"), on the other ODJ").  Magnacross and OKIODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

## BACKGROUND

A.     WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.2 below3) with all rights to enforce the Licensed Patents;

B.     WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by OKIODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against OKIODA in the United States District Court for the Northern District of Texas Dallas Division, Civil Action No. 3:20-cv-019591959 (the "Litigation");

C.     WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.     WHEREAS, Magnacross and ODJ desire to settle their respective claims, without admitting infringement or liability and for settlement purposes, and in part to avoid the expense and risks associated with patent infringementnecessity of further litigation, OKI desires and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to obtainOkidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents in connection with the Licensed Products (as defined in Section 1.3 below) by Licensed Users (as defined in Section 1.1 below); which includes the Patent-in-Suit; and

DE.     WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to OKI under Magnacross's early settlement programOkidata, in exchange for a-payment amount that Magnacross believes is substantially less than the amount that would constitute a reasonable royalty for OKI's past and expected future use of the inventions of the Patent-in-Suit, because Magnacross is granting this releaseof good and license early in the Litigation; valuable consideration;

---

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                                        **A024**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ~~OKI~~ODJ, intending to be legally bound, agree as follows:

1. **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

1.1 ~~"Licensed User(s)" shall mean OKI and its Subsidiaries as defined in Section 1.4 below, subject to the following:~~

~~(a) If an entity that was at any time a Subsidiary ceases to be at least fifty percent (50%) beneficially or equitably owned by OKI after the Effective Date (a "Divested Subsidiary"), the Divested Subsidiary shall continue to be a Licensed User; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Subsidiary at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Subsidiary; and~~

~~(b) In the event that an entity is not a Subsidiary as of the Effective Date of this Agreement, but later becomes a Subsidiary through an acquisition by OKI (an "Acquired Subsidiary"), such Acquired Subsidiary shall be deemed to be a Subsidiary for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Subsidiary with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Subsidiary. To the extent OKI is acquired by or merges with another entity or reorganizes organizations in the future in a manner that meet the Control requirements herein, this shall be deemed a change in control subject to Section 8.7.~~

1.2 ~~"Licensed Patents" shall mean (a) U.S. Patent No. 6,917,304; and (b) any additional patents issued or granted via any divisionals, continuations, continuations-in-part, reissues and reexaminations of U.S. Patent No. 6,917,304.~~

1.1 **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under common control with such Party upon, prior to, or after, the Effective Date. For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party

**PLAINTIFF'S APPENDIX**                    **A025**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases.

1.2     **"Claims"** means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3     "Licensed Patents" means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, _inter partes_ reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above.

~~1.3~~1.4  "Licensed   Product(s)"   ~~shall   mean~~means   any product, system, component, subassembly, good, hardware, software, website or service, or ~~material portion of a product, software, website or service,~~a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold ~~or~~, imported , exported, leased, purchased, licensed or otherwise disposed of, by, or ~~on behalf of, Licensed Users, under a brand that any Licensed User owns~~for Okidata in the past, present, ~~or controls, wherein such product, software, website or service, or such material portion of a product, software, website or service is covered or could be alleged to be covered by one or more claims of any Licensed Patent~~future, including, without limitation, the products accused in the Litigation.

> Formatted: Indent: Left: 1 , Right 0 ch

1.4     ~~"Subsidiary" or "Subsidiaries" shall mean any entity in which, as of the Effective Date or during the Term of this Agreement, OKI owns or controls a greater than fifty percent (50%) beneficial or equitable ownership interest, directly or indirectly.~~

1.5     "Litigation" has the meaning set forth in the second WHEREAS clause.

1.6     "Magnacross" means Magnacross LLC, and any of its past, present and future parent and subsidiary companies and past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.

PLAINTIFF'S APPENDIX                    A026

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.7    "**Okidata**" means ODJ, and any of its past, present and future parent and subsidiary companies and past or present Affiliates including ODA, and each of their respective officers, directors, employees, agents and representatives.

1.8    "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

1.9    "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

1.51.10 "**Term**" shall meanmeans the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

> **Formatted:** Level 1

2.    **LICENSE AND COVENANT NOT TO SUE**

2.1    **Grant of** Limited **License.**  Subject to payment by OKIODJ to Magnacross of the Settlement Payment in accordance with pursuant to Sections 4.1 and 4.2 below and subject to the other provisions of this Section 2 and the provisions of Section 8.7, Magnacross hereby grants:

(a)    to Licensed Users;

(b)    to the manufacturers, distributors, resellers, and retailers of Licensed Users, solely to the extent of their actions on behalf of Licensed Users with respect to Licensed Products; and

(c)    to the customers and end users of Licensed Products, solely to the extent of their use of Licensed Products;

Okidata a nonexclusive, nontransferable, (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, and export or otherwise dispose of the Licensed Products, for the Term.

> **Formatted:** No widow/orphan control, Don't keep lines together

2.2    **Covenant Not** Toto **Sue.**  Subject to payment by OKIODJ to Magnacross of the Settlement Payment in accordance with pursuant to Sections 4.1 and 4.2 below, Magnacross hereby unconditionally covenants not to sue, under the Licensed Patents:

> **Formatted:** Right  0 ch, No widow/orphan control, Don't keep lines together

(a)    or otherwise asserts any Licensed User;

(b)    any manufacturer, distributor, reseller or retailer of Licensed Users, solely to the extent of their actions on behalf of Licensed Usersclaim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future,

---

**PLAINTIFF'S APPENDIX**                                        **A027**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products; and

(c)    any customer or end user of Licensed Products, solely to.  For the extent of their use of Licensed Products.

The avoidance of doubt, the covenants not to sue set forth hereinabove shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may now or in the future have against any Licensed User, including without limitationfor breach of this Agreement.

**Formatted:** Indent: Hanging:  0.5

**Formatted:** Block Text, Left, Indent: Left:  -0.5 , Right  0 ch

2.3    **No Sublicense Rights.**  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

2.4    **Exhaustion of Rights.** Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.5    **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

2.6    **Reserved Rights.**  Any and all rights not explicitly granted to Licensed Users in Sections 2.1 and 2.2 aboveOkidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth in Sections 2.1 and 2.2 aboveherein.

2.4    **No Sublicense Rights.**  The license granted to Licensed Users in Section 2.1 above does not confer upon Licensed Users the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7 below.

**PLAINTIFF'S APPENDIX**                    **A028**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.      **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

> Formatted: Font: Not Bold
>
> Formatted: Indent: Left: 0.5 , Hanging: 0.5
>
> Formatted: Font: Bold

3.1     **Release by Magnacross.** Subject to ~~payment by OKI to Magnacross of~~ the Settlement Payment ~~in accordance with Sections 4.1 and 4.2 below~~by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits, and ~~forever~~ discharges:

(a)     ~~the Licensed Users,~~ Okidata and their ~~predecessors,~~respective successors and permitted assigns;

(b)     ~~the officers, directors, members, attorneys, employees, agents, and insurers of the Licensed Users, solely to the extent of their actions on behalf of Licensed Users;~~

(c)     ~~the manufacturers,~~ as well as any current or former suppliers, assemblers, replicators, integrators, distributors, ~~resellers, and retailers of Licensed Users, solely to the extent of their actions on behalf of Licensed Users with respect to Licensed Products; and~~

(d)     ~~the~~dealers, customers (direct or indirect) and end~~-~~users of ~~Licensed Products, solely to the extent of their use of Licensed Products;~~

Okidata, and each of them ("Okidata Parties"), from and against any and all ~~claims or liability for infringement or alleged infringement of the Licensed Patents in connection with the Licensed Products, occurring~~Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date~~.~~

~~For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any~~ ~~claims~~ in any way directly or indirectly arising out of ~~the performance or breach of this Agreement,~~. relating or pertaining to:  (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents.

> Formatted: Indent: Hanging: 0.5

3.2     **Release by** ~~OKI.  OKI~~**Okidata.**  Okidata hereby fully and forever releases, acquits, and ~~forever~~ discharges:

(a)     ~~Magnacross,~~ and ~~its predecessors,~~their respective successors and permitted assigns;

(b)     ~~the officers, directors, members, attorneys, employees, agents, and insurers of~~ ("Magnacross, ~~solely to the extent of their actions on behalf of Magnacross;~~

**PLAINTIFF'S APPENDIX**                                              **A029**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Parties") from and against any and all ~~claims in connection with the licensing and enforcement of the Licensed Patents, occuring prior~~Claims that were or could have been averred by ODA in the Litigation.  Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.  Thus, nothing in this release is to ~~the Effective Date.~~be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. ~~For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.~~

3.3    **Contesting Validity.**    ~~OKI~~Okidata agrees that ~~Licensed Users~~it shall not challenge~~, or assist others in challenging in any way,~~ the validity and enforceability of any Licensed Patent, except ~~that Licensed User~~as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any ~~of the~~ Licensed ~~Patent in defense~~Patents solely to ~~a suit or assertion of~~the extent a claim ~~relating to any~~of infringement under the Licensed ~~Patent that~~Patents is brought against ~~a~~Okidata or Okidata Parties with respect to the Licensed ~~User~~Products.

3.4    **Unknown Claims.**    The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.  The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents. ~~The~~ Upon advice of counsel, the Parties ~~agree to~~expressly waive and relinquish ~~all rights and benefits each may have under~~ the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code ~~of the State of California, or any similar statute or law of any jurisdiction.  Section 1542,~~ which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5    **Denial of Liability.**    The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.  Each Party shall bear its own costs and attorney's fees incurred in the Litigation.

**PLAINTIFF'S APPENDIX**                                    **A030**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6    **Dismissal of Litigation.**  Subject to payment by ~~OKI~~ODJ of the Settlement Payment ~~in accordance with~~pursuant to Sections 4.1 and 4.2 ~~below~~, Magnacross, by and ~~OKI,~~ through ~~their~~its counsel, ~~will~~ shall dismiss, with prejudice, all claims made against ~~the other Party~~ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, ~~nor~~or to ~~subsequently take any action~~ either to vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

~~3.6    Safe Harbor.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.~~

4.    **PAYMENT**

4.1    **Settlement Payment.**  Within ~~forty~~five ~~(5)  business~~45) days ~~after~~of the ~~execution of this Agreement, OKI~~later of the Effective Date or the date on which Magnacross provides to ODJ a tax related form identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of ~~$~~Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").    Other than the Settlement Payment, Magnacross acknowledges and agrees that ~~Licensed Users~~Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2    **Terms Related to Payment.**  The Settlement Payment ~~set forth in Section 4.1 above~~ shall be paid in United States Dollars by wire transfer to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  ~~Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.  OKI will not withhold any tax amounts from~~The Parties agree that the Settlement Payment ~~and will make~~ constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the ~~full amount~~ Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the ~~Settlement Payment~~Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross ~~in accordance with the terms of this Section 4.2.  Any payment required hereunder that is more than ten (10) days late (including  unpaid  portions  of  amounts  due)~~under Section 4.1 hereof, and

[Formatted: Font: Not Bold, No underline]

[Formatted: Font: Not Bold, No underline]

PLAINTIFF'S APPENDIX                    A031

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross shall ~~bear interest, compounded monthly, at the lesser of ten percent (10%) per annum, or the highest interest rate permitted~~not be liable for any withholding taxes involved in this transaction provided that prior to ~~be charged by applicable law. Failure to pay within ten (10) days~~ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List ~~of the~~ due ~~date shall constitute a material breach~~Partners of ~~this Agreement.~~Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.


**Formatted:** Right  0 ch

**4.3** **Distribution of Settlement Payment.** ~~The~~ Settlement Payment shall not be disbursed from the trust account of Magnacross's outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.~~5 above.~~6.


**Formatted:** Right  0 ch

**5.** **REPRESENTATIONS, WARRANTIES AND COVENANTS**

**5.1** **Representations, Warranties, and Covenants of ~~OKI. OKI~~ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ~~OKI~~ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ~~OKI is a party; (b) OKI understands that this Agreement may not provide Licensed Users all of the rights needed, if any, from parties other than Magnacross to make, have made, use, sell, offer for sale, or import into the United States the Licensed Products; and (c) OKI~~ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement; and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.


**Formatted:** Font: Not Bold
**Formatted:** Right  0 ch

**5.2** **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all ~~licenses, covenants, release~~license, covenant, release and other rights of ~~OKI~~Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; ~~and (f) in the event that Magnacross transfers any Licensed Patent~~(f) as of the Effective Date, Magnacross does not

**PLAINTIFF'S APPENDIX                    A032**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patent Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

5.3     WARRANTY DISCLAIMERS.   (A) EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, THE RIGHTS GRANTED TO LICENSED USERS BY MAGNACROSS UNDER THIS AGREEMENT ARE GRANTED IN "AS IS" CONDITION; (B)5.3 WARRANTY     DISCLAIMERS.   EXCEPT     AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO LICENSED USERSOKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND (C) MAGNACROSS MAKES NO REPRESENTATION THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, OR IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4     Limitation of Liability.

(a)     Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Licensed User, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance. These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)     In no event shall Magnacross or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  OKI expressly consents to this limitation of Magnacross's liability for all actions and inactions

**PLAINTIFF'S APPENDIX**                          **A033**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

by Magnacross or its successors or assigns. In the event of a breach by Magnacross, Licensed User agrees not to seek damages or any other payment from Magnacross, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, Magnacross cures the breach within thirty (30) days from receipt of notice.

6.      **CONFIDENTIALITY**

6.1     **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").    The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement to its accountants, attorneys, bankers, investors, prospective investors, consultants and any third party covered by the release or covenant not to sue provided above (collectively, the "Permitted Third Parties"), provided that any such Permitted Third Partyonly: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisionprovisions in this Agreement. Either Party may disclose; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms and existence ofin this Agreement; and (h) in connection with any litigation involving the Licensed Patents, so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions.  Magnacross may disclose the terms and existence of this Agreement (including the Parties and the consideration exchanged under the

**PLAINTIFF'S APPENDIX**                                     **A034**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

~~terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to~~ contains confidentiality  obligations that are at least as restrictive as the terms ~~of this confidentiality provision~~ in this  Agreement~~.~~, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (c) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; ~~or~~ (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

6.2    **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

7.    **TERM AND TERMINATION**

7.1    **Effective Date and Term.**  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

7.2    **Termination for Breach.** ~~Magnacross~~Either Party may terminate this Agreement upon ~~ten (10)~~thirty (30) business days written notice to ~~OKI upon~~the other Party of the breach by ~~OKI~~the other Party of any of the ~~payment~~material terms of this Agreement ~~contained in Sections 4.1 and 4.2 above~~, provided that ~~OKI~~the breaching Party has not cured the breach within such ~~ten (10) day~~thirty (30) business days period. In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.,

**PLAINTIFF'S APPENDIX**                                    **A035**

[Formatted: Font: Not Bold]
[Formatted: Indent: Left: 1 , Right  0 ch]
[Formatted: Font: Bold]
[Formatted: Font: Bold]

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

7.3    **No Other Termination**.  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.

~~7.2~~  7.4    **No Refund**. In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ~~OKI~~ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent ~~OKI~~Okidata from recovering damages against Magnacross~~, subject to the limitation of liability in Section 5.4 above,~~ in the event of a breach of this Agreement by Magnacross. However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent.

~~7.3~~  7.5    **Survival**. Articles 1, 2, 3, 4, 5 and 6 and Sections ~~1,~~ 7.3, 7.4, 7.5~~, 6, 7,~~ and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.~~1 above~~2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8.    **MISCELLANEOUS**

8.1    **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between Magnacross and ~~OKI~~Okidata.  Neither Magnacross nor ~~OKI~~Okidata shall incur any debts or make any commitments for the other.

8.2    **Entire Agreement, Amendments, and Waivers**. ~~T~~This Agreement constitutes and contains the entire agreement between Magnacross and ~~OKI~~Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by ~~any party~~either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial

PLAINTIFF'S APPENDIX                                    A036

[Formatted: Indent: Left: 0.5 , Hanging: 0.5 , No bullets or numbering]

[Formatted: Indent: Left: 0.5 , Hanging: 0.5 , No bullets or numbering]

[Formatted: Font: Bold]

[Formatted: Indent: Left: 0.5 , Hanging: 0.5 , Right 0 ch]

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by ~~a~~the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

8.3    **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.   The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

8.4    **Governing Law and Consent to Jurisdiction**.   This Agreement shall be governed by and construed under ~~applicable federal law and~~ the laws of the State of Texas~~,~~ excluding any conflict of law provisions.  Magnacross and ~~OKI~~ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas~~,~~ over any suit, action or proceeding arising out of or relating to this Agreement.

8.5    **Notices**. Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

8.6    **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party ~~hereto~~ for the benefit of a third party, or to confer any rights on any party other than Magnacross or ~~Licensed Users~~Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than Magnacross or ~~OKI~~Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7    **Assignment** ~~and Change of Control.  OKI~~.

    8.7.1    **No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408                    Page 14

**PLAINTIFF'S APPENDIX**                    **A037**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

diOKIsedispose of any or all of its rights or obligations under this Agreement to any ~~other person, business~~third party.

**8.7.2  Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole ~~or entity, except pursuant to a merger, a~~ in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the ~~sale of all,~~ transfer or ~~substantially all~~ other disposition by ODJ of any of ~~OKI's business~~its or their assets, ~~or a corporate reorganization.~~properties or businesses that may be covered by such rights to such third party. In the event ~~that OKI is part of~~ ~~a merger or is sold or acquired by another entity, the license rights and other rights granted under this Agreement shall extend~~such a transaction, the rights of ODJ hereunder so assigned only ~~to the business of OKI at the time~~extend to Okidata's products existing as of the ~~merger, sale or acquisition, and natural evolutions thereof, and shall~~date of the transaction, and will not otherwise extend to any other ~~operations of any entity that is merged with OKI or~~products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

**8.7.3  After Acquired Affiliates.** Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.

**8.8  Bankruptcy.** The Parties acknowledge and agree that ~~purchases or acquires OKI, even if the operations are of the same type as OKI~~under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value. Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code. Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

**8.8  Statement Regarding Marking of Products.** ~~OKI asserts that the Licensed Users have not infringed any claim of any Licensed Patent, that the Licensed Users are not currently infringing any claim of any Licensed Patent, and that the~~

[ Formatted: Right  0 ch ]

**PLAINTIFF'S APPENDIX**                                    **A038**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

~~Licensed Users have no intent to do so. OKI further asserts that the Patent-in-Suit is invalid, such that the Licensed Users could not make, have made, sell, offer for sale, import or export any product that would infringe any valid claim of the Patent-in-Suit. Further, this Agreement is a litigation settlement of disputed claims, and not an acknowledgement that any Licensed User needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service. Therefore, from the Effective Date forward, the Licensed Users contend that they will have no products that must be marked under 35 U.S.C. § 287.~~

~~8.9~~8.9   **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

8.10    **Diligence.**  The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.11    **Counterparts.**    This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.    Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

~~[Signatures on Next Page]~~

**PLAINTIFF'S APPENDIX**                                        **A039**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                                    ~~OKI~~   **Oki Data** ~~Americas Inc~~**Corporation**

> Formatted: English (United Kingdom)

By: _____              By: _____

Print Name: _____      Print Name: _____

Title: _____           Title: _____

> Formatted: Font: 9 pt

Date: _____            Date: _____


[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                          **A040**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████████ | Chicago, IL 60603 |
|  | ███████████████ |

**Formatted:** Normal, Indent: Left:  0 , Hyphenate

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                                    **A041**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Friday, February 12, 2021 10:03 AM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas
**Attachments:** Magnacross OKI draft Agreement - Magnacross 20210210 redline.docx

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

My client's edits are attached.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Wed, Jan 20, 2021 at 9:00 AM Isaac Rabicoff <isaac@rabilaw.com> wrote:
> Draft settlement is attached.
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590

On Mon, Jan 18, 2021 at 4:03 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> 57.5
>
>> On MondayJan 18, 2021, at 4:02 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>
>> Marc:
>>
>> Can you just confirm the number -- I understand this is conditional upon my client accepting, but just want to avoid any uncertainty.
>>
>> Isaac Rabicoff
>> Rabicoff Law LLC
>> www.RabiLaw.com
>> 5680 King Centre Dr, Suite 645

1

**PLAINTIFF'S APPENDIX**                    **A042**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

### BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas  Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                                **A043**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, ~~prior to,~~ or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases.  For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2     **"Claims"** means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3     **"Licensed Patents"** means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

**PLAINTIFF'S APPENDIX**                                   **A044**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4      "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future; that are covered or could be alleged to be covered by one or more claims of any Licensed Patent including, without limitation, the products accused in the Litigation.

1.5      "**Litigation**" has the meaning set forth in the second WHEREAS clause.

1.6      "~~Magnacross~~Okidata" means ~~Magnacross LLC~~ODJ, and any of its ~~past,~~ present and future parent and subsidiary companies and ~~past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.~~

~~1.7~~1.6   "**Okidata**" means ODJ, and any of its ~~past, present and future parent and subsidiary companies and past or~~ present Affiliates including ODA, and, solely in their role as such, each of their respective officers, directors, employees, agents and representatives.

~~1.8~~1.7   "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.9~~1.8   "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.10~~1.9 "**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.      **LICENSE AND COVENANT NOT TO SUE**

2.1      **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2      **Covenant Not to Sue**.  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                          A045

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **2.3**    **No Sublicense Rights**.  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

    **2.4**    **Exhaustion of Rights.**  Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or (solely to the extent of the Licensed Products) any downstream products thereof prior to the Effective Date at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

    **2.5**    **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

    **2.6**    **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

**3.**      **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

    **3.1**    **Release by Magnacross.**  Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as (solely in their role as such and solely with respect to the Licensed Products) any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

**PLAINTIFF'S APPENDIX**        **A046**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2     **Release by Okidata.**  Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.  Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.  Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.

> Formatted: Indent: First line:  0

3.3     **Contesting Validity.**  Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent in any forum, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4     **Unknown Claims.**  The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.  The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.  Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5     **Denial of Liability.**  The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.  Each Party shall bear its own costs, expenses, and attorney's fees incurred in the Litigation.

**PLAINTIFF'S APPENDIX**                                               **A047**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6 **Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel,  shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

3.7 **Safe Harbor**.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.

4. **PAYMENT**

4.1 **Settlement Payment.**  Within ~~forty-five (45)~~ten (10) business days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related form identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2 **Terms Related to Payment**.  The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction ~~provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.~~.

**PLAINTIFF'S APPENDIX**                    A048

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **4.3**    **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

**5.**    **REPRESENTATIONS, WARRANTIES AND COVENANTS**

    **5.1**    **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

    **5.2**    **Representations, Warranties, and Covenants of Magnacross.**  Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

    **5.3**    **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**        **A049**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4    Limitation of Liability.

(a)     Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)     In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

6.    **CONFIDENTIALITY**

6.1    **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                                        **A050**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions—. Magnacross may disclose the terms and contains existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law. .

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (e) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

**6.2    No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                        **A051**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

7. **TERM AND TERMINATION**

7.1 **Effective Date and Term.** This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

7.2 **Termination for Breach.** Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

~~7.3   No Other Termination.   The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.~~

7.4   ~~No Refund.~~7.3       No Refund. In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross ~~in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent,~~ subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross

7.54 **Survival**. Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, ~~7.4, 7.5~~ and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8. **MISCELLANEOUS**

8.1 **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

**Formatted:** Font: Not Bold

**PLAINTIFF'S APPENDIX**                                                  **A052**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2**   **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3**   **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4**   **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.   Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5**   **Notices**.  Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6**   **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                         **A053**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

**8.7     Assignment.**

**8.7.1     No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

**8.7.2     Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

~~**8.7.3     After Acquired Affiliates.**  Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.~~

**8.8     Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

**8.9     Statement Regarding Marking of Products.**  OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so.  Further, this Agreement is a litigation settlement of disputed claims, and not an

**PLAINTIFF'S APPENDIX                                        A054**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.  Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.

8.9<u>10</u>   **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to <u>seek</u> specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  ~~The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.~~

8.10<u>11</u>   **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.11<u>12</u>   **Counterparts.**   This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.  Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                                    **Oki Data Corporation**

By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

**PLAINTIFF'S APPENDIX**                                    **A055**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                                    **A056**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████████ | Chicago, IL 60603 |
|  | █████████████ |

Formatted Table

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                    **A057**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Monday, February 22, 2021 7:46 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Just following up -- any updates?

Many thanks.


On February 12, 2021 at 11:52 AM, isaac@rabilaw.com wrote:

Thanks.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Fri, Feb 12, 2021 at 11:34 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
 Thank you,  I will get back as quickly as possible.

 Marc



     On FridayFeb 12, 2021, at 11:02 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

     My client's edits are attached.


     Isaac Rabicoff
     Rabicoff Law LLC
     www.RabiLaw.com
     5680 King Centre Dr, Suite 645
     Alexandria, VA 22315
     773.669.4590

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Monday, February 22, 2021 8:57 AM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Isaac,

I am working on narrowing some of the issues and expect to have a revised version by Weds at the latest.

Marc

> On MondayFeb 22, 2021, at 8:45 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

> Just following up -- any updates?

> Many thanks.

> On February 12, 2021 at 11:52 AM, isaac@rabilaw.com wrote:

> Thanks.

> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590

> On Fri, Feb 12, 2021 at 11:34 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Thank you,  I will get back as quickly as possible.

> Marc

> > On FridayFeb 12, 2021, at 11:02 AM, Isaac Rabicoff <isaac@rabilaw.com>
> > wrote:

1
**PLAINTIFF'S APPENDIX**                                **A059**

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Thursday, February 25, 2021 8:36 AM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

Are you available for a call to discuss and hopefully resolve the differences between the parties' drafts.  I think a discussion will be much more fruitful than simply exchanging edits.  I am available this afternoon after 3pm or any time on Friday.

With best regards,

Marc


On MondayFeb 22, 2021, at 9:57 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Ok thanks.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Mon, Feb 22, 2021 at 9:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Hi Isaac,

I am working on narrowing some of the issues and expect to have a revised version by Weds at the latest.

Marc


On MondayFeb 22, 2021, at 8:45 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:


Just following up -- any updates?

Many thanks.

**PLAINTIFF'S APPENDIX**                                    **A060**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Friday, February 26, 2021 7:52 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Yes, please reserve a date below. I have time on Monday/early next week.

https://calendly.com/rabicofflaw/matter

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Thu, Feb 25, 2021 at 9:35 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac,

Are you available for a call to discuss and hopefully resolve the differences between the parties' drafts.  I think a discussion will be much more fruitful than simply exchanging edits.  I am available this afternoon after 3pm or any time on Friday.

With best regards,

Marc

On MondayFeb 22, 2021, at 9:57 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Ok thanks.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Mon, Feb 22, 2021 at 9:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Hi Isaac,

**PLAINTIFF'S APPENDIX**                                            **A061**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Tuesday, March 9, 2021 6:34 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

Do you expect to have edits to our 2/12 draft soon? Just got a hard nudge from my client.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Mon, Feb 22, 2021 at 9:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Hi Isaac,

I am working on narrowing some of the issues and expect to have a revised version by Weds at the latest.

Marc

> On MondayFeb 22, 2021, at 8:45 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Just following up -- any updates?

Many thanks.

> On February 12, 2021 at 11:52 AM, isaac@rabilaw.com wrote:

Thanks.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315

1

**PLAINTIFF'S APPENDIX**                    **A062**

| | |
|---|---|
| **From:** | Marc R. Labgold <mlabgold@labgoldlaw.com> |
| **Sent:** | Wednesday, March 10, 2021 12:41 PM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

I hope all is well.  As a threshold issue, I have confirmed that OKI cannot agree to waive the submission of (a) certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross.

Please let me know your client's position.

With best regards,

Marc

> On TuesdayMar 9, 2021, at 7:33 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Marc:
>
> Do you expect to have edits to our 2/12 draft soon? Just got a hard nudge from my client.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Mon, Feb 22, 2021 at 9:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>> Hi Isaac,
>>
>> I am working on narrowing some of the issues and expect to have a revised version by Weds at the latest.
>>
>> Marc
>>
>>
>>> On MondayFeb 22, 2021, at 8:45 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

**PLAINTIFF'S APPENDIX**                                             **A063**

**From:**          Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**          Wednesday, March 10, 2021 12:56 PM
**To:**            Marc R. Labgold
**Subject:**       Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:**    Flagged

Marc:

I've facilitated deals with Japanese companies before, and I've learned that a certificate of residency isn't required if you're not seeking any special tax treatment / not seeking a foreign tax credit. My understanding is that you don't need it if you're seeking no benefits under the foreign tax treaty.

Let me know whether this is your client's view or not.

As I mentioned, it's going to take 1+ year to get the residency certificate. It's simply a non-starter if that's needed before payment.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Wed, Mar 10, 2021 at 1:41 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
Isaac,

I hope all is well.  As a threshold issue, I have confirmed that OKI cannot agree to waive the submission of (a) certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross.

Please let me know your client's position.

With best regards,

Marc


        On TuesdayMar 9, 2021, at 7:33 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

        Marc:

**PLAINTIFF'S APPENDIX**                                   **A064**

**From:**        Marc R. Labgold  <mlabgold@labgoldlaw.com>
**Sent:**        Wednesday, March 10, 2021 1:43 PM
**To:**          Isaac Rabicoff
**Subject:**     Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:**   Follow up
**Flag Status:**      Flagged

Isaac,

Just to confirm, are you saying that your client accepts that without the documents OKI will be required to withhold 20%?

Marc

> On WednesdayMar 10, 2021, at 1:55 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Marc:
>
> I've facilitated deals with Japanese companies before, and I've learned that a certificate of residency isn't required if you're not seeking any special tax treatment / not seeking a foreign tax credit. My understanding is that you don't need it if you're seeking no benefits under the foreign tax treaty.
>
> Let me know whether this is your client's view or not.
>
> As I mentioned, it's going to take 1+ year to get the residency certificate. It's simply a non-starter if that's needed before payment.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Wed, Mar 10, 2021 at 1:41 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>> Isaac,
>>
>> I hope all is well.  As a threshold issue, I have confirmed that OKI cannot agree to waive the submission of (a) certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross.
>>
>> Please let me know your client's position.

**PLAINTIFF'S APPENDIX**                          **A065**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Wednesday, March 10, 2021 2:07 PM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

I'm just seeing if this is an option at least -- I don't have authorization for it currently.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Wed, Mar 10, 2021 at 2:43 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Isaac,
>
> Just to confirm, are you saying that your client accepts that without the documents OKI will be required to withhold 20%?
>
> Marc
>
>
>> On WednesdayMar 10, 2021, at 1:55 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>
>> Marc:
>>
>> I've facilitated deals with Japanese companies before, and I've learned that a certificate of residency isn't required if you're not seeking any special tax treatment / not seeking a foreign tax credit. My understanding is that you don't need it if you're seeking no benefits under the foreign tax treaty.
>>
>> Let me know whether this is your client's view or not.
>>
>> As I mentioned, it's going to take 1+ year to get the residency certificate. It's simply a non-starter if that's needed before payment.
>>
>>
>> Isaac Rabicoff
>> Rabicoff Law LLC
>> www.RabiLaw.com
>> 5680 King Centre Dr, Suite 645

**PLAINTIFF'S APPENDIX**                    **A066**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Monday, March 15, 2021 7:50 AM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

Here's where my client is. We brought a lawsuit against the US Oki entity, and also accused those US-based products. So our reasonable belief in agreeing upon a settlement number was that taxes would not be withheld.

If it's really not possible to pay through the US entity, our only viable option is to have a payment subject to 20% withholding, because getting a tax certificate isn't viable.

My client's opening position is that Oki should gross up this withholding, and bear that cost, since this should have been avoidable. I can probably get them to compromise by having the parties split the cost 50/50.

I want to confirm, once more, that avoiding withholding isn't an option.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Wed, Mar 10, 2021 at 2:43 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac,

Just to confirm, are you saying that your client accepts that without the documents OKI will be required to withhold 20%?

Marc


On WednesdayMar 10, 2021, at 1:55 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

I've facilitated deals with Japanese companies before, and I've learned that a certificate of residency isn't required if you're not seeking any special tax treatment / not seeking a foreign tax credit. My understanding is that you don't need it if you're seeking no benefits under the foreign tax treaty.

Let me know whether this is your client's view or not.

1
**PLAINTIFF'S APPENDIX**                                   **A067**

| | |
|---|---|
| **From:** | Marc R. Labgold  <mlabgold@labgoldlaw.com> |
| **Sent:** | Monday, March 15, 2021 1:21 PM |
| **To:** | Isaac Rabicoff |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

I will discuss with my client and get back asap.

Thanks,

Marc

On MondayMar 15, 2021, at 8:50 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

Here's where my client is. We brought a lawsuit against the US Oki entity, and also accused those US-based products. So our reasonable belief in agreeing upon a settlement number was that taxes would not be withheld.

If it's really not possible to pay through the US entity, our only viable option is to have a payment subject to 20% withholding, because getting a tax certificate isn't viable.

My client's opening position is that Oki should gross up this withholding, and bear that cost, since this should have been avoidable. I can probably get them to compromise by having the parties split the cost 50/50.

I want to confirm, once more, that avoiding withholding isn't an option.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Wed, Mar 10, 2021 at 2:43 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
   Isaac,

   Just to confirm, are you saying that your client accepts that without the documents OKI will be required to withhold 20%?

**PLAINTIFF'S APPENDIX**                                    **A068**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Tuesday, March 23, 2021 7:08 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Just following up -- any updates?

Many thanks.

On March 15, 2021 at 2:24 PM, isaac@rabilaw.com wrote:

Thanks.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Mon, Mar 15, 2021 at 2:20 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
Isaac,

I will discuss with my client and get back asap.

Thanks,

Marc

On MondayMar 15, 2021, at 8:50 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

Here's where my client is. We brought a lawsuit against the US Oki entity, and also accused those US-based products. So our reasonable belief in agreeing upon a settlement number was that taxes would not be withheld.

If it's really not possible to pay through the US entity, our only viable option is to have a payment subject to 20% withholding, because getting a tax certificate isn't viable.

1
**PLAINTIFF'S APPENDIX**                                        **A069**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Thursday, March 25, 2021 5:35 PM
**To:** Marc R. Labgold
**Subject:** Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

Just got a hard nudge from my client, any updates re the tax issue?

On Mon, Mar 15, 2021, 2:20 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac,

I will discuss with my client and get back asap.

Thanks,

Marc

On MondayMar 15, 2021, at 8:50 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

Here's where my client is. We brought a lawsuit against the US Oki entity, and also accused those US-based products. So our reasonable belief in agreeing upon a settlement number was that taxes would not be withheld.

If it's really not possible to pay through the US entity, our only viable option is to have a payment subject to 20% withholding, because getting a tax certificate isn't viable.

My client's opening position is that Oki should gross up this withholding, and bear that cost, since this should have been avoidable. I can probably get them to compromise by having the parties split the cost 50/50.

I want to confirm, once more, that avoiding withholding isn't an option.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

1

**PLAINTIFF'S APPENDIX**                                    **A070**

**From:**           Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**           Wednesday, March 31, 2021 1:58 PM
**To:**              Marc R. Labgold
**Subject:**       Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:**   Follow up
**Flag Status:**      Flagged

Marc:

I suggest we have a quick call to discuss before you answer -- the gap here would be only a few thousand dollars.

I'm also discussing with my client now.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Wed, Mar 31, 2021 at 2:06 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Isaac,
>
> The tax issue is a deal-breaker for my client even before we get to the numerous other problems we only briefly discussed.  As such, there is no need to extend the current stay.  We will be responding to the complaint.
>
> With best regards,
>
> Marc
>
>
>
>> On ThursdayMar 25, 2021, at 6:34 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>
>> Marc:
>>
>> Just got a hard nudge from my client, any updates re the tax issue?
>>
>> On Mon, Mar 15, 2021, 2:20 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Isaac,
>>>
>>> I will discuss with my client and get back asap.

**PLAINTIFF'S APPENDIX**           **A071**

**From:**          Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**          Thursday, April 1, 2021 10:37 AM
**To:**            Marc R. Labgold, Ph.D.
**Cc:**            Irina Frye
**Subject:**       Re: Magnacross v Oki Data Americas - motion to stay

**Follow Up Flag:** Follow up
**Flag Status:**    Flagged


Marc:

My client accepts your original proposal, that we bear the 20% withholding tax. I had asked for some time from you so I could discuss this.

Please confirm that you've receipted our acceptance of your offer. We're ready to finalize the deal.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Thu, Apr 1, 2021 at 11:15 AM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:
Irina,

I emailed Isaac yesterday. We will not need to file the extension.

Thank you,
Marc


On Apr 1, 2021, at 9:27 AM, Irina Frye <irina@rabilaw.com> wrote:

Marc,

Our stay ends tomorrow.  Please let us know if we can file this third motion to stay.  Thanks.


*Irina Frye, RP*
Paralegal to Isaac Rabicoff
Rabicoff Law LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
773.669.4596

**PLAINTIFF'S APPENDIX**                          **A072**

| | |
|---|---|
| **From:** | Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> |
| **Sent:** | Thursday, April 1, 2021 11:17 AM |
| **To:** | Isaac Rabicoff |
| **Cc:** | Irina Frye; Megan C Labgold |
| **Subject:** | Re: Magnacross v Oki Data Americas - motion to stay |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

As I told you previously, the withholding was only one of the outstanding issues. My previous point was not an offer, it was a question: i.e, whether your client in refusing to provide the requisite tax forms was willing to accept that the tax would be withheld?  Regardless, there are numerous other issues that I tried to discuss, only some of which were possible during the 15 minutes you allowed for our discussion.  Is your client now willing to accept our mark-up?   I do not have authority to accept any offer at this point, I am just asking how you propose moving forward.  I in turn will use my best efforts to speak with my client tonight with whatever it is your client is now proposing.

I will be available later this afternoon if you want to speak further.  If so, please let me know a number and I can call you when I am available.

Marc


> On Apr 1, 2021, at 11:36 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
>
> Marc:
>
> My client accepts your original proposal, that we bear the 20% withholding tax. I had asked for some time from you so I could discuss this.
>
> Please confirm that you've receipted our acceptance of your offer. We're ready to finalize the deal.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Thu, Apr 1, 2021 at 11:15 AM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:
> > Irina,
> >
> > I emailed Isaac yesterday. We will not need to file the extension.

**PLAINTIFF'S APPENDIX**                                      **A073**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Thursday, April 1, 2021 11:24 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Fwd: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| **Attachments:** | Magnacross OKI draft Agreement - Magnacross 20210210 redline.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft.

In response, we had a call where you mentioned the tax withholding issue. As discussed, my client initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we can get this done promptly.

That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client, and have ultimately agreed to your client's request on this.

I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this fairly quickly, because I recall the tax issue was the main outstanding issue.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

---------- Forwarded message ---------
From: **Isaac Rabicoff** <isaac@rabilaw.com>
Date: Fri, Feb 12, 2021 at 11:02 AM
Subject: Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas
To: Marc R. Labgold <mlabgold@labgoldlaw.com>

My client's edits are attached.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

**PLAINTIFF'S APPENDIX**                          **A074**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

### BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas  Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

      1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                                          **A075**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, prior to, or after, the Effective Date. For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases. For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals. If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate. In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2   **"Claims"** means any or all of the following: claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3   **"Licensed Patents"** means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

**PLAINTIFF'S APPENDIX**                A076

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4    "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future; that are covered or could be alleged to be covered by one or more claims of any Licensed Patent including, without limitation, the products accused in the Litigation.

1.5    "**Litigation**" has the meaning set forth in the second WHEREAS clause.

1.6    "~~Magnacross~~Okidata" means ~~Magnacross LLC~~ODJ, and any of its ~~past,~~ present and future parent and subsidiary companies and ~~past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.~~

~~1.7~~1.6  "**Okidata**" means ODJ, and any of its ~~past, present and future parent and subsidiary companies and past or~~ present Affiliates including ODA, and, solely in their role as such, each of their respective officers, directors, employees, agents and representatives.

~~1.8~~1.7  "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.9~~1.8  "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.10~~1.9 "**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.    **LICENSE AND COVENANT NOT TO SUE**

2.1    **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2    **Covenant Not to Sue**. Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                                  **A077**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **2.3**    **No Sublicense Rights**.  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

    **2.4**    **Exhaustion of Rights.**  Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or (solely to the extent of the Licensed Products) any downstream products thereof prior to the Effective Date at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

    **2.5**    **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

    **2.6**    **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

**3.**      **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

    **3.1**    **Release by Magnacross.**   Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as (solely in their role as such and solely with respect to the Licensed Products) any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

**PLAINTIFF'S APPENDIX**          **A078**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2   **Release by Okidata.**   Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation. Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right. Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.

> Formatted: Indent: First line: 0

3.3   **Contesting Validity.**   Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent in any forum, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4   **Unknown Claims.**   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts. The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents. Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5   **Denial of Liability.**   The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party. Each Party shall bear its own costs, expenses, and attorney's fees incurred in the Litigation.

**PLAINTIFF'S APPENDIX**                                                    **A079**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6     **Dismissal of Litigation.**   Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel,  shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

3.7     **Safe Harbor**.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.

4.     **PAYMENT**

4.1     **Settlement Payment.**   Within ~~forty-five (45)~~ten (10) business days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related form identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2     **Terms Related to Payment**.   The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction ~~provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.~~.

**PLAINTIFF'S APPENDIX**                                    **A080**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **4.3**    **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

**5.**    **REPRESENTATIONS, WARRANTIES AND COVENANTS**

    **5.1**    **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

    **5.2**    **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

    **5.3**    **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**        **A081**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

**5.4     Limitation of Liability.**

(a)     Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)     In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

**6.     CONFIDENTIALITY**

**6.1     Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                    **A082**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions—. Magnacross may disclose the terms and contains existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (e) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

**6.2**   **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                                                                          **A083**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

7.   **TERM AND TERMINATION**

7.1   **Effective Date and Term.**  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

7.2   **Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

7.3   ~~No Other Termination.   The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.~~

7.4   ~~No Refund.~~7.3   **No Refund.** In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross ~~in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent~~, subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross

7.~~5~~4   **Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, ~~7.4, 7.5~~ and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8.   **MISCELLANEOUS**

8.1   **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

Formatted: Font: Not Bold

**PLAINTIFF'S APPENDIX**                                        **A084**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

8.2   **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

8.3   **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

8.4   **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.  Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

8.5   **Notices**.  Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

8.6   **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                                        **A085**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

**8.7     Assignment.**

**8.7.1     No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

**8.7.2     Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

~~**8.7.3     After Acquired Affiliates.**   Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.~~

**8.8     Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

**8.9     Statement Regarding Marking of Products.**  OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so.  Further, this Agreement is a litigation settlement of disputed claims, and not an

**PLAINTIFF'S APPENDIX**                                                    **A086**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.  Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.

8.9̶10  **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to seek specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  ~~The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.~~

8.1̶0̶11  **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.1̶1̶12  **Counterparts.**  This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.  Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                              **Oki Data Corporation**

By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

**PLAINTIFF'S APPENDIX**                                        **A087**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                              **A088**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████ | Chicago, IL 60603 |
| | ███████████ |

Formatted Table

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Thursday, April 1, 2021 1:27 PM |
| **To:** | Marc R. Labgold |
| **Subject:** | Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

Any feedback here? Let's discuss soon -- but my client is unclear where we are with the edits we proposed on 2/12, since we've gotten no feedback.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Thu, Apr 1, 2021 at 12:24 PM Isaac Rabicoff <isaac@rabilaw.com> wrote:
> Marc:
>
> Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft.
>
> In response, we had a call where you mentioned the tax withholding issue. As discussed, my client initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we can get this done promptly.
>
> That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client, and have ultimately agreed to your client's request on this.
>
> I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this fairly quickly, because I recall the tax issue was the main outstanding issue.
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> ---------- Forwarded message ---------
> From: **Isaac Rabicoff** <isaac@rabilaw.com>
> Date: Fri, Feb 12, 2021 at 11:02 AM

**PLAINTIFF'S APPENDIX**                    **A090**

| | |
|---|---|
| **From:** | Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> |
| **Sent:** | Thursday, April 1, 2021 4:03 PM |
| **To:** | Irina Frye |
| **Cc:** | Isaac Rabicoff |
| **Subject:** | Re: Magnacross v Oki Data Americas - motion to stay |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Irina,

Thank you for your email. I do not want an extension of time. I have not asked for an extension of time. I oppose a further extension of time. I object to filing the request for an extension of time. I do not consent to the filing for an extension of time.

With best regards,

Marc


> On Apr 1, 2021, at 4:22 PM, Irina Frye <irina@rabilaw.com> wrote:
>
> Marc,
>
> Could we please file the attached request for a 14-day extension (since our stay ends tomorrow)?
>
> Thank you.
>
>
> *Irina Frye, RP*
> Paralegal to Isaac Rabicoff
> Rabicoff Law LLC
> 5680 King Centre Drive, Suite 645
> Alexandria, VA 22315
> 773.669.4596
> www.RabiLaw.com
>
>
> On Thu, Apr 1, 2021 at 10:36 AM Isaac Rabicoff <isaac@rabilaw.com> wrote:
>> Marc:
>>
>> My client accepts your original proposal, that we bear the 20% withholding tax. I had asked for some time from you so I could discuss this.
>>
>> Please confirm that you've receipted our acceptance of your offer. We're ready to finalize the deal.

**PLAINTIFF'S APPENDIX**                    **A091**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Thursday, April 1, 2021 5:49 PM
**To:** Marc R. Labgold, Ph.D.
**Cc:** Irina Frye
**Subject:** Re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

Can you please provide your contact information? I called the number on your firms website.

I attempted to reach out to you, at your request earlier today, to see if we had agreement on other terms.

I didn't hear back from you. Please let me know.

On Thu, Apr 1, 2021, 5:03 PM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:
Dear Irina,

Thank you for your email. I do not want an extension of time. I have not asked for an extension of time. I oppose a further extension of time. I object to filing the request for an extension of time. I do not consent to the filing for an extension of time.

With best regards,

Marc

On Apr 1, 2021, at 4:22 PM, Irina Frye <irina@rabilaw.com> wrote:

Marc,

Could we please file the attached request for a 14-day extension (since our stay ends tomorrow)?

Thank you.

*Irina Frye, RP*
Paralegal to Isaac Rabicoff
Rabicoff Law LLC
5680 King Centre Drive, Suite 645
Alexandria, VA 22315
773.669.4596
www.RabiLaw.com

1
**PLAINTIFF'S APPENDIX**                                **A092**

**From:** Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com>
**Sent:** Thursday, April 1, 2021 5:53 PM
**To:** Isaac Rabicoff
**Subject:** Re: Magnacross v Oki Data Americas

I asked for your contact so I could call you when I was available. I am now reachable on 703-901-8860

> On Apr 1, 2021, at 6:48 PM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
> Marc:
>
> Can you please provide your contact information? I called the number on your firms website.
>
> I attempted to reach out to you, at your request earlier today, to see if we had agreement on other terms.
>
> I didn't hear back from you. Please let me know.
>
> On Thu, Apr 1, 2021, 5:03 PM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:
>> Dear Irina,
>>
>> Thank you for your email. I do not want an extension of time. I have not asked for an extension of time. I oppose a further extension of time. I object to filing the request for an extension of time. I do not consent to the filing for an extension of time.
>>
>> With best regards,
>>
>> Marc
>>
>>> On Apr 1, 2021, at 4:22 PM, Irina Frye <irina@rabilaw.com> wrote:
>>>
>>> Marc,
>>>
>>> Could we please file the attached request for a 14-day extension (since our stay ends tomorrow)?
>>>
>>> Thank you.
>>>
>>>
>>> *Irina Frye, RP*
>>> Paralegal to Isaac Rabicoff
>>> Rabicoff Law LLC
>>> 5680 King Centre Drive, Suite 645
>>> Alexandria, VA 22315

**PLAINTIFF'S APPENDIX**                    **A093**

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Monday, April 5, 2021 7:43 AM
**To:** Marc R. Labgold
**Subject:** Fwd: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:** Flagged


Just following up -- any updates?

Many thanks.


On April 1, 2021 at 12:26 PM, isaac@rabilaw.com wrote:

Marc:

Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft.

In response, we had a call where you mentioned the tax withholding issue. As discussed, my client initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we can get this done promptly.

That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client, and have ultimately agreed to your client's request on this.

I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this fairly quickly, because I recall the tax issue was the main outstanding issue.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


---------- Forwarded message ---------
From: **Isaac Rabicoff** <isaac@rabilaw.com>
Date: Fri, Feb 12, 2021 at 11:02 AM
Subject: Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas
To: Marc R. Labgold <mlabgold@labgoldlaw.com>


My client's edits are attached.

**PLAINTIFF'S APPENDIX**                                        **A094**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Wednesday, April 7, 2021 7:15 AM |
| **To:** | Marc R. Labgold |
| **Cc:** | phoeffner@labgoldlaw.com; wtaylor@taylorandtaylorlaw.com; megan@labgoldlaw.com |
| **Subject:** | Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| **Attachments:** | Magnacross - Order denying 101 Motion.pdf; Magnacross OKI draft Agreement - Magnacross 20210210 redline - v2.docx |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

I'm first going to address your 101 motion, and then I have reasonably good news regarding edits to the settlement agreement.

**1) Judge Lynn has already denied a 101 motion against this patent.**

This is not mentioned in your 101 motion. You would be making history here if your motion prevailed. Judge Lynn properly observed that claim construction was required before deciding 101, and nothing about the pleadings here would suggest she should reach a different opinion:

"After reviewing the pleadings and the arguments of the parties, the Court concludes that the issue of patent eligibility should not be decided until claim construction has occurred." Slip Op, 2 (see attached).

**2) Settlement. My client agrees to providing all of the required forms under Section 4.2.**
See attached -- we reverted our edits to 4.2. We still have other edits -- we're open to negotiating these other terms, but need actual counter-redlines back from you.

**3) As a matter of public record, Cassiopeia never sued Oki.**
My client doesn't understand the insinuations you've made here. We're genuinely not sure what matter you're referring to.

Moreover, if the terms of whatever settlement agreement you're referring to has a similar or at least typical confidentiality terms, you have breached confidentiality (both contractual confidentiality and client confidentiality with respect to whomever you were representing at the time) by sharing this alleged issue with both us and your current client Oki.

4) Next steps -- for all of these reasons, we strongly recommend redoubling efforts on the settlement agreement. I'm available to discuss further.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

1
**PLAINTIFF'S APPENDIX**                                    **A095**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ"). Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

### BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

      1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                    **A096**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, ~~prior to,~~ or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases.  For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2     **"Claims"** means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3     **"Licensed Patents"** means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

---

**PLAINTIFF'S APPENDIX**                                       **A097**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4 "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future: that are covered or could be alleged to be covered by one or more claims of any Licensed Patent including, without limitation, the products accused in the Litigation.

1.5 "**Litigation**" has the meaning set forth in the second WHEREAS clause.

1.6 "~~Magnacross~~Okidata" means ~~Magnacross LLC~~ODJ, and any of its ~~past,~~ present and future parent and subsidiary companies and ~~past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.~~

~~1.7~~1.6 "~~Okidata" means ODJ, and any of its past, present and future parent and subsidiary companies and past or~~ present Affiliates including ODA, and, solely in their role as such, each of their respective officers, directors, employees, agents and representatives.

~~1.8~~1.7 "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.9~~1.8 "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.10~~1.9 "**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2. **LICENSE AND COVENANT NOT TO SUE**

2.1 **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2 **Covenant Not to Sue**. Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                                    A098

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **2.3**    **No Sublicense Rights**.  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

    **2.4**    **Exhaustion of Rights.**  Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or (solely to the extent of the Licensed Products) any downstream products thereof prior to the Effective Date at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

    **2.5**    **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

    **2.6**    **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

**3.**    **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

    **3.1**    **Release by Magnacross.**  Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as (solely in their role as such and solely with respect to the Licensed Products) any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

**PLAINTIFF'S APPENDIX**          **A099**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2    **Release by Okidata.**  Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.  Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.  Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.

> Formatted: Indent: First line:  0

3.3    **Contesting Validity.**  Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent in any forum, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4    **Unknown Claims.**  The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.  The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.  Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5    **Denial of Liability.**  The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.  Each Party shall bear its own costs, expenses, and attorney's fees incurred in the Litigation.

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6 **Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel,  shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

3.7 **Safe Harbor**.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.

4. **PAYMENT**

4.1 **Settlement Payment.**  Within ~~forty-five (45)~~ten (10) business days ~~of~~ from the ~~later of the~~ Effective Date ~~or the date on which Magnacross provides to ODJ a tax related form identified in Section 4.2~~, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2 **Terms Related to Payment**.  The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty. Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.

**PLAINTIFF'S APPENDIX**                    **A101**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

4.3     **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

5.     **REPRESENTATIONS AND COVENANTS**

5.1     **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

5.2     **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

5.3     **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4    Limitation of Liability.

(a)    Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)    In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

6.    CONFIDENTIALITY

6.1    **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                    **A103**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions—. Magnacross may disclose the terms and contains existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law. .

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (e) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

6.2     **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                                              **A104**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**7.    TERM AND TERMINATION**

7.1    **Effective Date and Term.**  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

7.2    **Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

Formatted: Font: Not Bold

~~7.3    No Other Termination.   The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.~~

7.4    ~~No Refund.~~7.3        No Refund. In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross ~~in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent,~~ subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross

7.5<u>4</u>    **Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3~~, 7.4, 7.5~~ and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

**8.    MISCELLANEOUS**

8.1    **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata. Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2    Entire Agreement, Amendments, and Waivers**. This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof. This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties. No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party. No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3    Severability and Captions**. If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement. In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision. The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4    Governing Law and Consent to Jurisdiction**. This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions. Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5    Notices**. Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6    No Third Party Beneficiaries**. Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata. Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                                      **A106**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

**8.7     Assignment.**

    **8.7.1     No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

    **8.7.2     Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

    ~~**8.7.3     After Acquired Affiliates.**  Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.~~

**8.8     Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

**8.~~9~~10     Specific Performance.** The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has

**PLAINTIFF'S APPENDIX**                                                **A107**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

the right to seek specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have. ~~The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.~~

8.~~10~~11 **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.~~11~~12 **Counterparts.** This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission. Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                              **Oki Data Corporation**

By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                                    **A108**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████ | Chicago, IL 60603 |
| | ███████████ |

Formatted Table

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

| | |
|---|---|
| **From:** | Marc R. Labgold <mlabgold@labgoldlaw.com> |
| **Sent:** | Thursday, April 8, 2021 12:36 PM |
| **To:** | Isaac Rabicoff |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| **Attachments:** | Cedar Lane Technologies Inc v Blackmagic Design Inc.pdf; Untitled.html |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac

I am responding to your points in order presented.

1.      The docket currently reflects no related cases.  If you are claiming there are related cases, it is your obligation to advise the Court of same.  I also note that the Rule 7.1 disclosure you filed (a) is not in compliance with the local rules and (b) appears to be inaccurate with respect to the lack of corporate ownership (*see* ¶3.e., below).  Please advise if you intend to file an updated compliant corporate and/or related case disclosures (*see* the attached case in this regard).

That said, the previously filed Rule 12 motion you identified in your email is neither dispositive nor relevant because, *inter alia*, (a) my client is entitled to its own defense (please let me know if you would like caselaw on this point) and (b) it appears that, among other things, a different claim was at issue.

2.      I am pleasantly surprised to hear that your client is now willing to provide the required documentation.  I am confused however as you repeatedly claimed that the IRS document could not be obtained for at least 12 months.  You told me multiple times as recent as last Friday that you had personally confirmed that fact.  Has something changed or will we be waiting 12 months for the documents?  Please let me know so that I can advise my client accordingly.  With respect to edits, I am traveling but will revert with a redlined version upon my return.

3.      Your accusations of a breach of confidentiality are baseless, wrong and extremely unprofessional.  Let me first remind you of the facts:

a.  During our initial call, I asked you if Magnacross and Cassiopeia were related.

b.  Initially, you explained that you had heard of an entity called Cassiopeia but explained that you did not represent them and you did not know who it was.

c.  I then explained that I was asking because I had previously received the exact same edits to a draft I provided to Cassiopeia's counsel.

d   I again asked you if Magnacross and Cassiopeia were related because it was mathematically impossible the exact same changes throughout the draft could have been made by two unrelated entities/individuals unless there was a troll group that had circulated a memo to the effect: "Here are the edits everyone should use if you receive a draft agreement from Marc Labgold" which I suspected was equally unlikely.

e.  When we spoke last week, however, you acknowledged that Magnacross and Cassiopeia are both owned by IP Edge and admitted that you not only knew of Cassiopeia but also that ***you*** had previously represented Cassiopeia.

**PLAINTIFF'S APPENDIX**                              **A110**

With that background, I remind you that I never indicated the identify of the other company, hence no breach of any confidentiality.  Similarly, I never stated that I disclosed the content or substance of the other agreement to my client, which I have not.  Hence no breach of any confidentiality. I could not be disclosing anything to your client that it did not already know, since the same individual on your end made the same exact changes to both drafts.   Even so, if your email is to be believed, you and your client are not even aware of the identity of the party that entered into the agreement with Cassiopeia.  Before making such accusations, I strongly suggest that you ensure you have a provable factual basis.

4.      *See*, ¶2 above.

With best regards,

Marc

**PLAINTIFF'S APPENDIX**                    **A111**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Thursday, April 8, 2021 12:41 PM |
| **To:** | Marc R. Labgold |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

I'm going to focus on point 2 -- my client is simply willing to take the time necessary to get the required docs. I was told this would take ~ 8-9 months. We can still close the deal and dismiss the case before then. To be clear, we cannot get it within a month -- that was never possible.

"e.  When we spoke last week, however, **you acknowledged that Magnacross and Cassiopeia are both owned by IP Edge** and admitted that you not only knew of Cassiopeia but also that you had previously represented Cassiopeia."

That statement is absolutely false -- and I've consistently denied it. IP Edge does not own either of these entities. I never suggested otherwise at any time.

I'm hoping we can focus on settlement -- we're ready to continue negotiations in good faith and, as you can see, are willing to supply the required documentation so your client can reasonably ascertain Magnacross's identity, etc.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Thu, Apr 8, 2021 at 1:35 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac

I am responding to your points in order presented.

1.      The docket currently reflects no related cases.  If you are claiming there are related cases, it is your obligation to advise the Court of same.  I also note that the Rule 7.1 disclosure you filed (a) is not in compliance with the local rules and (b) appears to be inaccurate with respect to the lack of corporate ownership (*see* ¶3.e., below).  Please advise if you intend to file an updated compliant corporate and/or related case disclosures (*see* the attached case in this regard).

That said, the previously filed Rule 12 motion you identified in your email is neither dispositive nor relevant because, *inter alia*, (a) my client is entitled to its own defense (please let me know if you would like caselaw on this point) and (b) it appears that, among other things, a different claim was at issue.

**PLAINTIFF'S APPENDIX**                                   **A112**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Friday, April 9, 2021 8:14 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Fwd: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Just checking in on this -- any updates?

Many thanks.

On April 1, 2021 at 12:26 PM, isaac@rabilaw.com wrote:

Marc:

Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft.

In response, we had a call where you mentioned the tax withholding issue. As discussed, my client initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we can get this done promptly.

That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client, and have ultimately agreed to your client's request on this.

I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this fairly quickly, because I recall the tax issue was the main outstanding issue.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

---------- Forwarded message ---------
From: **Isaac Rabicoff** <isaac@rabilaw.com>
Date: Fri, Feb 12, 2021 at 11:02 AM
Subject: Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas
To: Marc R. Labgold <mlabgold@labgoldlaw.com>

My client's edits are attached.

**PLAINTIFF'S APPENDIX**                                    **A113**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Wednesday, April 14, 2021 7:03 AM |
| **To:** | Marc R. Labgold |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

It's been 1 week since we provided settlement edits that conceded on the necessary documents issue.

Do you have any feedback yet?

I'm going to get the most flexibility from my client on terms if we close this before we need to answer the MTD (on 4/23).

Happy to discuss, thanks.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Thu, Apr 8, 2021 at 1:41 PM Isaac Rabicoff <isaac@rabilaw.com> wrote:
> Marc:
>
> I'm going to focus on point 2 -- my client is simply willing to take the time necessary to get the required docs. I was told this would take ~ 8-9 months. We can still close the deal and dismiss the case before then. To be clear, we cannot get it within a month -- that was never possible.
>
> "e.  When we spoke last week, however, **you acknowledged that Magnacross and Cassiopeia are both owned by IP Edge** and admitted that you not only knew of Cassiopeia but also that you had previously represented Cassiopeia."
>
> That statement is absolutely false -- and I've consistently denied it. IP Edge does not own either of these entities. I never suggested otherwise at any time.
>
> I'm hoping we can focus on settlement -- we're ready to continue negotiations in good faith and, as you can see, are willing to supply the required documentation so your client can reasonably ascertain Magnacross's identity, etc.
>
>
> Isaac Rabicoff
> Rabicoff Law LLC

**PLAINTIFF'S APPENDIX**                    **A114**

| | |
|---|---|
| **From:** | Marc R. Labgold <mlabgold@labgoldlaw.com> |
| **Sent:** | Wednesday, April 14, 2021 8:58 PM |
| **To:** | Isaac Rabicoff |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| **Attachments:** | OKI redlined revised draft Magnacross Agreement (13April2021).docx; Untitled.html |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

Please see the attached redline.

With best regards,

Marc

**PLAINTIFF'S APPENDIX**                                    **A115**

# NON-EXCLUSIVE PATENT LICENSE
# AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

## BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

1.1     **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                                            **A116**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, prior to, or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases. For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2    "Claims" means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3    "Licensed Patents" means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

**PLAINTIFF'S APPENDIX**                                    **A117**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4     "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future ~~that are covered or could be alleged to be covered by one or more claims of any Licensed Patent~~, including, without limitation, the products accused in the Litigation.

1.5     "**Litigation**" has the meaning set forth in the second WHEREAS clause.

~~1.6~~    "~~Okidata~~**Magnacross**" means ~~ODJ~~Magnacross LLC, and any of its past, present and future parent and subsidiary companies and past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.

~~1.6~~**1.7**    "**Okidata**" means ODJ, and any of its past, present and future parent and subsidiary companies and past or present Affiliates including ODA, and~~, solely in their role as such,~~ each of their respective officers, directors, employees, agents and representatives.

~~1.7~~**1.8**    "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.8~~**1.9**    "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.9~~**1.10**"**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.     **LICENSE AND COVENANT NOT TO SUE**

2.1     **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2     **Covenant Not to Sue**.  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                                    **A118**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

2.3 **No Sublicense Rights**. The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

2.4 **Exhaustion of Rights.** Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or (solely to the extent of the Licensed Products) any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country). This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.5 **Full Force and Effect.** The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

2.6 **Reserved Rights.** Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross. No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

3. **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

3.1 **Release by Magnacross.** Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as (solely in their role as such and solely with respect to the Licensed Products) any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

**PLAINTIFF'S APPENDIX**                    **A119**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2     **Release by Okidata.**   Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.  Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.  Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata.  ~~For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.~~

3.3     **Contesting Validity.**   Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent ~~in any forum~~, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4     **Unknown Claims.**   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.  The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.  Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5     **Denial of Liability**.   The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.  Each Party shall bear its own costs ~~, expenses,~~ and attorney's fees incurred in the Litigation.

**PLAINTIFF'S APPENDIX**                              **A120**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    3.6   **Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel,  shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

    ~~3.7~~   ~~**Safe Harbor.**  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.~~

4.    **PAYMENT**

    4.1   **Settlement Payment.**  Within ~~ten (10) business~~forty-five (45) days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related ~~form~~forms identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of ~~Fifty Seven~~Twenty Five Thousand ~~Five Hundred~~ United States Dollars (\$~~57,500~~25,000.00 USD) ("Settlement Payment"). Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

    4.2   **Terms Related to Payment**.  The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  ~~Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.~~  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction, provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.

**PLAINTIFF'S APPENDIX**           A121

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

4.3 **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

5. **REPRESENTATIONS, WARRANTIES AND COVENANTS**

5.1 **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

5.2 **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

5.3 **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**                    **A122**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4 ~~Limitation of Liability.~~

~~(a) Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance. These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.~~

~~(b) In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement. Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.~~

6. **CONFIDENTIALITY**

6.1 **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                    **A123**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions. Magnacross may disclose the terms and existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to contains confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (c) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

**6.2**     **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                              **A124**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**7.     TERM AND TERMINATION**

    **7.1     Effective Date and Term.**  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

    **7.2     Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.

> **Formatted:** Font: Bold

    ~~**7.3     No Refund.**~~**7.3     No Other Termination.**  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.

    **7.4     No Refund.**  In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross~~, subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross~~ in the event of a breach of this Agreement by Magnacross.   However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent.

    **7.~~4~~5     Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, 7.4, 7.5 and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

**8.     MISCELLANEOUS**

    **8.1     Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

**PLAINTIFF'S APPENDIX**                                    **A125**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2**   **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3**   **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4**   **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.  Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5**   **Notices**.  Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6**   **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                              **A126**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7     **Assignment.**

8.7.1   **No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

8.7.2   **Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

8.7.3   **After Acquired Affiliates.**  Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.

8.8     **Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

8.9     ~~**Statement Regarding Marking of Products.** OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so.  Further, this Agreement is a litigation settlement of disputed claims, and not an~~

**PLAINTIFF'S APPENDIX**                    **A127**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

~~acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.  Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.~~

8.10~~8.9~~        **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to ~~seek~~ specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

8.11~~10~~ **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.12~~11~~ **Counterparts.**  This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.  Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.


**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.


**Magnacross LLC**                              **Oki Data Corporation**


By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

**PLAINTIFF'S APPENDIX**                                                    **A128**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**


[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                    **A129**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 ███████ | 73 W Monroe St |
|  | Chicago, IL 60603 |
|  | ███████ |

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**From:** Isaac Rabicoff <isaac@rabilaw.com>
**Sent:** Thursday, April 15, 2021 10:07 AM
**To:** Marc R. Labgold
**Cc:** Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com
**Subject:** Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Marc:

Can you explain the change of settlement amount to 25,000, after we agreed in principle at 47,500? We presume this is a mistake, since we've continued to negotiate in good faith and event conceded on the main issue your clients concern, re the necessary documents.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

On Wed, Apr 14, 2021 at 9:57 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac,

Please see the attached redline.

With best regards,

Marc

On WednesdayApr 14, 2021, at 8:02 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:

Marc:

It's been 1 week since we provided settlement edits that conceded on the necessary documents issue.

Do you have any feedback yet?

I'm going to get the most flexibility from my client on terms if we close this before we need to answer the MTD (on 4/23).

**PLAINTIFF'S APPENDIX**                    **A131**

| | |
|---|---|
| **From:** | Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> |
| **Sent:** | Thursday, April 15, 2021 5:39 PM |
| **To:** | Isaac Rabicoff |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac,

We reached an impasse, after which my client incurred expense in conjunction with, inter alia, preparing its response to the Complaint. The current settlement amount reflects such expense. Thus, it is definitely in your clients interest to reach a final resolution before I need to incur further expense.

Best regards,

Marc


On Apr 15, 2021, at 11:07 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:


Marc:

Can you explain the change of settlement amount to 25,000, after we agreed in principle at 47,500? We presume this is a mistake, since we've continued to negotiate in good faith and event conceded on the main issue your clients concern, re the necessary documents.



Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Wed, Apr 14, 2021 at 9:57 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Isaac,

Please see the attached redline.

With best regards,

Marc

**PLAINTIFF'S APPENDIX**                                    **A132**

**From:**       Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**       Friday, April 16, 2021 7:04 AM
**To:**         Marc R. Labgold, Ph.D.
**Cc:**         Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com
**Subject:**    Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion

**Follow Up Flag:**   Follow up
**Flag Status:**      Flagged

Marc:

We're at a crossroads.

1) The costs of the 101 motion were entirely self-inflicted. We repeatedly offered answer extensions. You well know that you can't win this motion -- this same judge already rejected a 101 motion against the same patent less than 2 years ago based on necessary claim construction. The claims haven't changed since that time, so she'll presumably reach the same conclusion here.

2) I repeatedly requested your counter-redlines or comments so that we could attempt to negotiate terms that concerned your client. When I raised our concerns about the tax documents as an issue, you said multiple times that you were "checking in" with your client. After you said your client wasn't willing to bear any of the taxes, we conceded and said we'd bear the full 20%.

3) Prior to our latest call, at no time did you indicate you were drafting a 101 motion, or that we were somehow at an impasse on terms. You made non sequitur insulations about our edits being much the same as those in a completely unrelated matter -- nothing about how we could make progress on disputed terms.

4) Now, after we made a number of concessions on redlines including the tax forms, you finally provide counter redlines -- which amounted to rejecting ***all*** of our redlines without explanation or comment, and reducing the settlement about by $20,000.

Has your client really ***prohibited*** you from sharing any such feedback, even when it would save the parties significant costs and effort?

There's only one path forward for settlement here -- good faith negotiation on terms. Actual ***communication*** over terms your client finds important -- we're not mind readers. If affiliate coverage is a concern -- perhaps we can discuss a combination of reps and covenants that would get us there. But to be completely clear, any modification to the agreed payment amount ***sabotages*** the negotiation and scuttles any conceivable deal.

I'm available to discuss early next week.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

1
**PLAINTIFF'S APPENDIX**                    **A133**

On Thu, Apr 15, 2021 at 6:39 PM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:

Isaac,

We reached an impasse, after which my client incurred expense in conjunction with, inter alia, preparing its response to the Complaint. The current settlement amount reflects such expense. Thus, it is definitely in your clients interest to reach a final resolution before I need to incur further expense.

Best regards,

Marc

> On Apr 15, 2021, at 11:07 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
>
> Marc:
>
> Can you explain the change of settlement amount to 25,000, after we agreed in principle at 47,500? We presume this is a mistake, since we've continued to negotiate in good faith and event conceded on the main issue your clients concern, re the necessary documents.
>
>
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590
>
>
> On Wed, Apr 14, 2021 at 9:57 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>> Isaac,
>>
>> Please see the attached redline.
>>
>> With best regards,
>>
>> Marc
>>
>>
>>
>>> On WednesdayApr 14, 2021, at 8:02 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>>>
>>> Marc:
>>>
>>> It's been 1 week since we provided settlement edits that conceded on the necessary documents issue.

**PLAINTIFF'S APPENDIX**                                                  **A134**

**From:**      Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com>
**Sent:**      Friday, April 16, 2021 7:22 AM
**To:**        Isaac Rabicoff
**Cc:**        Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com
**Subject:**   Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion

Isaac,

Did you intend to include a redline?

Marc


On Apr 16, 2021, at 8:03 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:


Marc:

We're at a crossroads.

1) The costs of the 101 motion were entirely self-inflicted. We repeatedly offered answer extensions. You well know that you can't win this motion -- this same judge already rejected a 101 motion against the same patent less than 2 years ago based on necessary claim construction. The claims haven't changed since that time, so she'll presumably reach the same conclusion here.

2) I repeatedly requested your counter-redlines or comments so that we could attempt to negotiate terms that concerned your client. When I raised our concerns about the tax documents as an issue, you said multiple times that you were "checking in" with your client. After you said your client wasn't willing to bear any of the taxes, we conceded and said we'd bear the full 20%.

3) Prior to our latest call, at no time did you indicate you were drafting a 101 motion, or that we were somehow at an impasse on terms. You made non sequitur insulations about our edits being much the same as those in a completely unrelated matter -- nothing about how we could make progress on disputed terms.

4) Now, after we made a number of concessions on redlines including the tax forms, you finally provide counter redlines -- which amounted to rejecting **all** of our redlines without explanation or comment, and reducing the settlement about by $20,000.

Has your client really **prohibited** you from sharing any such feedback, even when it would save the parties significant costs and effort?

There's only one path forward for settlement here -- good faith negotiation on terms.
Actual **communication** over terms your client finds important -- we're not mind readers. If affiliate coverage is a concern -- perhaps we can discuss a combination of reps and covenants that would get us there. But to be completely clear, any modification to the agreed payment amount **sabotages** the negotiation and scuttles any conceivable deal.

**PLAINTIFF'S APPENDIX**                                    **A135**

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Friday, April 16, 2021 7:23 AM |
| **To:** | Marc R. Labgold |
| **Subject:** | Fwd: Magnacross/Oki -- settlement edits and notice regarding 101 motion |
| **Attachments:** | Magnacross - Order denying 101 Motion.pdf; Magnacross OKI draft Agreement - Magnacross 20210210 redline - v2.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590

---------- Forwarded message ---------
From: **Isaac Rabicoff** <isaac@rabilaw.com>
Date: Wed, Apr 7, 2021 at 8:15 AM
Subject: Magnacross/Oki -- settlement edits and notice regarding 101 motion
To: Marc R. Labgold <mlabgold@labgoldlaw.com>
Cc: <phoeffner@labgoldlaw.com>, <wtaylor@taylorandtaylorlaw.com>, <megan@labgoldlaw.com>

Marc:

I'm first going to address your 101 motion, and then I have reasonably good news regarding edits to the settlement agreement.

**1) Judge Lynn has already denied a 101 motion against this patent.**

This is not mentioned in your 101 motion. You would be making history here if your motion prevailed. Judge Lynn properly observed that claim construction was required before deciding 101, and nothing about the pleadings here would suggest she should reach a different opinion:

"After reviewing the pleadings and the arguments of the parties, the Court concludes that
the issue of patent eligibility should not be decided until claim construction has occurred." Slip Op, 2 (see attached).

**2) Settlement. My client agrees to providing all of the required forms under Section 4.2.**
See attached -- we reverted our edits to 4.2. We still have other edits -- we're open to negotiating these other terms, but need actual counter-redlines back from you.

**3) As a matter of public record, Cassiopeia never sued Oki.**

**PLAINTIFF'S APPENDIX**                                    **A136**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

**BACKGROUND**

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas  Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

     1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**          **A137**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, ~~prior to,~~ or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases.  For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2   **"Claims"** means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3   **"Licensed Patents"** means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

**PLAINTIFF'S APPENDIX**                    **A138**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4     "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future; that are covered or could be alleged to be covered by one or more claims of any Licensed Patent including, without limitation, the products accused in the Litigation.

1.5     "**Litigation**" has the meaning set forth in the second WHEREAS clause.

~~1.6~~     "**~~Magnacross~~Okidata**" means ~~Magnacross LLC~~ODJ, and any of its ~~past,~~ present and future parent and subsidiary companies and ~~past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.~~

~~1.7~~1.6     "**Okidata**" means ODJ, and any of its ~~past, present and future parent and subsidiary companies and past or~~ present Affiliates including ODA, and, solely in their role as such, each of their respective officers, directors, employees, agents and representatives.

~~1.8~~1.7     "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.9~~1.8     "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.10~~1.9     "**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.     **LICENSE AND COVENANT NOT TO SUE**

2.1     **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2     **Covenant Not to Sue**.  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                    **A139**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

2.3 **No Sublicense Rights**.  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

2.4 **Exhaustion of Rights.**  Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or *(solely to the extent of the Licensed Products)* any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.5 **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

2.6 **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

3. **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

3.1 **Release by Magnacross.**  Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as *(solely in their role as such and solely with respect to the Licensed Products)* any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. *For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.*

**PLAINTIFF'S APPENDIX**                              **A140**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2 **Release by Okidata.**  Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.  Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.  Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.

Formatted: Indent: First line: 0

3.3 **Contesting Validity.**  Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent in any forum, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4 **Unknown Claims.**  The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.  The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.  Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5 **Denial of Liability.**  The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.  Each Party shall bear its own costs, expenses, and attorney's fees incurred in the Litigation.

**PLAINTIFF'S APPENDIX**                                                      **A141**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **3.6**    **Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel, shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses. No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation. The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

    **3.7**    **Safe Harbor**. In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach. Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.

**4.**    **PAYMENT**

    **4.1**    **Settlement Payment.**  Within ~~forty-five (45)~~ten (10) business days ~~of~~ from the ~~later of the~~ Effective Date ~~or the date on which Magnacross provides to ODJ a tax related form identified in Section 4.2~~, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment"). Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

    **4.2**    **Terms Related to Payment**. The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement. The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty. Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.

**PLAINTIFF'S APPENDIX**        **A142**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**4.3**    **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

**5.**    **REPRESENTATIONS, WARRANTIES AND COVENANTS**

**5.1**    **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

**5.2**    **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

**5.3**    **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**                                          **A143**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

**5.4     Limitation of Liability.**

(a)      Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)      In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

6.      **CONFIDENTIALITY**

6.1      **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                                        **A144**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions—. Magnacross may disclose the terms and contains existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (e) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

**6.2** **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                    **A145**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**7.     TERM AND TERMINATION**

**7.1     Effective Date and Term.** This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

**7.2     Termination for Breach.** Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

> **Formatted:** Font: Not Bold

~~**7.3     No Other Termination.**   The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.~~

~~**7.4     No Refund.**~~**7.3     No Refund.** In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross ~~in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent,~~ subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross.

**7.~~5~~4     Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3,~~ 7.4, 7.5~~ and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.   All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

**8.     MISCELLANEOUS**

**8.1     Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

---

**PLAINTIFF'S APPENDIX**                           **A146**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

between Magnacross and Okidata. Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2**   **Entire Agreement, Amendments, and Waivers**. This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof. This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties. No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party. No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3**   **Severability and Captions**. If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement. In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision. The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4**   **Governing Law and Consent to Jurisdiction**. This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions. Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5**   **Notices**. Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6**   **No Third Party Beneficiaries**. Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata. Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                **A147**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7     **Assignment.**

8.7.1   **No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

8.7.2   **Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

8.7.3   ~~**After Acquired Affiliates.** Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.~~

8.8     **Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

8.~~9~~10   **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has

**PLAINTIFF'S APPENDIX**                    **A148**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

the right to seek specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have. The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

8.1011 **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.1112 **Counterparts.** This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission. Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                              **Oki Data Corporation**

By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                              **A149**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████ | Chicago, IL 60603 |
|  | ████████ |

Formatted Table

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

| | |
|---|---|
| **From:** | Isaac Rabicoff <isaac@rabilaw.com> |
| **Sent:** | Friday, April 16, 2021 7:26 AM |
| **To:** | Marc R. Labgold, Ph.D. |
| **Cc:** | Patrick J. Hoeffner; William Taylor; megan@labgoldlaw.com |
| **Subject:** | Re: Magnacross/Oki -- settlement edits and notice regarding 101 motion |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Marc:

I was referencing our 4/7 edits (presumably you redlined against that version), which made the concessions I referred to, including the necessary tax documents.

As I stated before, if this is a matter of your client being concerned about the scope of CNS/release coverage, we can at least try to work through those details -- I might have wiggle room there if you can give us any feedback on these issues/propose a constructive redline. But we can't countenance a change in the agreed payment amount.


Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


On Fri, Apr 16, 2021 at 8:21 AM Marc R. Labgold, Ph.D. <mlabgold@labgoldlaw.com> wrote:

Isaac,

Did you intend to include a redline?

Marc


> On Apr 16, 2021, at 8:03 AM, Isaac Rabicoff <isaac@rabilaw.com> wrote:
>
>
> Marc:
>
> We're at a crossroads.
>
> 1) The costs of the 101 motion were entirely self-inflicted. We repeatedly offered answer extensions. You well know that you can't win this motion -- this same judge already rejected a 101 motion against the same patent less than 2 years ago based on necessary claim construction. The claims haven't changed since that time, so she'll presumably reach the same conclusion here.

**PLAINTIFF'S APPENDIX**                    **A151**

**From:**          Isaac Rabicoff <isaac@rabilaw.com>
**Sent:**          Friday, April 16, 2021 8:19 AM
**To:**            Marc R. Labgold
**Subject:**       Fwd: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas

**Follow Up Flag:** Follow up
**Flag Status:**    Flagged

Any updates? Happy to discuss.


On April 1, 2021 at 12:26 PM, isaac@rabilaw.com wrote:

Marc:

Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft.

In response, we had a call where you mentioned the tax withholding issue. As discussed, my client
initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we
can get this done promptly.

That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was
going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client,
and have ultimately agreed to your client's request on this.

I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this
fairly quickly, because I recall the tax issue was the main outstanding issue.

Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
5680 King Centre Dr, Suite 645
Alexandria, VA 22315
773.669.4590


---------- Forwarded message ---------
From: **Isaac Rabicoff** <isaac@rabilaw.com>
Date: Fri, Feb 12, 2021 at 11:02 AM
Subject: Re: Rule 408 Privileged Communication re: Magnacross v Oki Data Americas
To: Marc R. Labgold <mlabgold@labgoldlaw.com>


My client's edits are attached.


Isaac Rabicoff

**PLAINTIFF'S APPENDIX**                              **A152**

M **Gmail**

Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                    Wed, May 26, 2021 at 4:34 PM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: "megan@labgoldlaw.com" <megan@labgoldlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw.com>, Irina Frye
<irina@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Marc,

Nice meeting you over Zoom on Monday.  I wanted to follow up on this and see if you are good with it or have any
changes. I think this is due Friday, so wanted to make sure we are all set.

Additionally, I note that on the call, you mentioned you are happy to have further discussion regarding the settlement
agreement. Although I'm "local" counsel on this case, I am mainly a "lead" counsel and have negotiated many of these
types of settlement agreements. I was thinking it would be productive and beneficial for you and I have a zoom call to look
at the settlement agreement together and go over edits.  If you are open to that, can you give me some dates and times
that would work for you? Maybe next week, following the long weekend?  I'd suggest we pencil in one hour for zoom call,
and we can share screen the settlement agreement and talk through any issues on the terms.

Please let me know and I'll see if any of the dates and times you propose work for me.

Thanks!

Papool

On Mon, May 24, 2021 at 2:24 PM Isaac Rabicoff <isaac@rabilaw.com> wrote:
> Marc:
>
> Per our discussion, see attached proposed final Report + exhibits. I have a final edit which I believe conform to what
> you requested re claim construction scheduling.
>
> Please provide final tweaks if any or, otherwise, confirm that you approve for filing.
>
> Thanks.
>
> Isaac Rabicoff
> Rabicoff Law LLC
> www.RabiLaw.com
> 5680 King Centre Dr, Suite 645
> Alexandria, VA 22315
> 773.669.4590

On Mon, May 17, 2021 at 3:11 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> **Magnacross v Oki Data Scheduling Conference (Zoom Meeting)**
>
> Scheduled: Monday, May 24, 2021 at 1:30 PM to 2:30 PM, EDT
>
> Join Zoom Meeting
> https://us02web.zoom.us/j/81773143549?pwd=ajhPNFphZm44bVR0c045MGdPYm1QQT09
>
> Meeting ID: 817 7314 3549
> Passcode: 604965
>
> One tap mobile

**PLAINTIFF'S APPENDIX**                                                      **A153**

 Gmail

Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                                        Thu, May 27, 2021 at 10:35 AM
To: Papool Chaudhari <papool@pralawllc.com>
Cc: "megan@labgoldlaw.com" <megan@labgoldlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw.com>, Irina Frye
<irina@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Dear Papool,

Thank you for your email.

Attached are the reviewed documents with minor edits in redline.

Thank you for offering to jump in to assist with the negotiations.  We are amendable to that approach.  Please forward the
proposed revisions to OKI's revised draft and we can proceed from there,

With best regards,

Marc


On WednesdayMay 26, 2021, at 5:34 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

Marc,

Nice meeting you over Zoom on Monday.  I wanted to follow up on this and see if you are good with it or
have any changes. I think this is due Friday, so wanted to make sure we are all set.

Additionally, I note that on the call, you mentioned you are happy to have further discussion regarding the
settlement agreement. Although I'm "local" counsel on this case, I am mainly a "lead" counsel and have
negotiated many of these types of settlement agreements. I was thinking it would be productive and
beneficial for you and I have a zoom call to look at the settlement agreement together and go over edits.  If
you are open to that, can you give me some dates and times that would work for you? Maybe next week,
following the long weekend?  I'd suggest we pencil in one hour for zoom call, and we can share screen the
settlement agreement and talk through any issues on the terms.

Please let me know and I'll see if any of the dates and times you propose work for me.

Thanks!

Papool


On Mon, May 24, 2021 at 2:24 PM Isaac Rabicoff <isaac@rabilaw.com> wrote:
Marc:

Per our discussion, see attached proposed final Report + exhibits. I have a final edit which I believe
conform to what you requested re claim construction scheduling.

Please provide final tweaks if any or, otherwise, confirm that you approve for filing.

**PLAINTIFF'S APPENDIX**                                        **A154**



Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                Thu, May 27, 2021 at 10:53 AM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: "megan@labgoldlaw.com" <megan@labgoldlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw.com>, Irina Frye
<irina@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Marc,

Thank you.  Your edits on the documents look good to me. Issac, let me know in this chain or separately if this is good
and I can get it on file.

As to the settlement agreement, I appreciate you are amenable to my suggested approach .  I'm not sure if what I have
seen are your last edits (because I was not on the chain when they were circulated), but if what I have are the edits, I
think the best approach is to get on a zoom call with your edits on a share screen, because I think many of our revisions
would be simply rejecting things struck out from OKI.  I don't think that is a productive exercise, but if that is the exercise
you want me to engage in, in the spirit of good faith cooperation, then please send me your last round of edits so I am
sure I have your last round of edits, and we'll make edits back (keeping in mind some/many of those edits could simply be
rejection of OKI edits) and I'll even add in some high level comments in the document to give some discussion points for a
zoom call.  All subject to FRE 408, of course.

Thanks,

Papool


On Thu, May 27, 2021 at 10:35 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

Dear Papool,

Thank you for your email.

Attached are the reviewed documents with minor edits in redline.

Thank you for offering to jump in to assist with the negotiations.  We are amendable to that approach.  Please forward
the proposed revisions to OKI's revised draft and we can proceed from there,

With best regards,

Marc


On WednesdayMay 26, 2021, at 5:34 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

Marc,

Nice meeting you over Zoom on Monday.  I wanted to follow up on this and see if you are good with it or
have any changes. I think this is due Friday, so wanted to make sure we are all set.

Additionally, I note that on the call, you mentioned you are happy to have further discussion regarding the
settlement agreement. Although I'm "local" counsel on this case, I am mainly a "lead" counsel and have
negotiated many of these types of settlement agreements. I was thinking it would be productive and
beneficial for you and I have a zoom call to look at the settlement agreement together and go over edits.
If you are open to that, can you give me some dates and times that would work for you? Maybe next

**PLAINTIFF'S APPENDIX**                                        **A155**

 Gmail

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                          Thu, Jun 3, 2021 at 2:25 PM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: "megan@labgoldlaw.com" <megan@labgoldlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw.com>, Irina Frye
<irina@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Marc,

Following up on my email below. As I mentioned, I believe the best approach is to have a zoom call with your edits on a share screen and discuss. Alternatively, I'm open to you sending me your edits (To make sure I have the correct one), and I'll mark it up with comments, and then we can have a zoom call to discuss the points mentioned in the comments.

Either approach is fine with me. Please let me know which you prefer and either give me dates and times that work for you for a one hour zoom call on this, or send me your edits and I'll mark with it up with comments and then we can set up a zoom call to discuss.

Thanks,

Papool

On Thu, May 27, 2021 at 10:53 AM Papool Chaudhari <papool@pralawllc.com> wrote:
> Marc,
>
> Thank you. Your edits on the documents look good to me. Issac, let me know in this chain or separately if this is good and I can get it on file.
>
> As to the settlement agreement, I appreciate you are amenable to my suggested approach . I'm not sure if what I have seen are your last edits (because I was not on the chain when they were circulated), but if what I have are the edits, I think the best approach is to get on a zoom call with your edits on a share screen, because I think many of our revisions would be simply rejecting things struck out from OKI. I don't think that is a productive exercise, but if that is the exercise you want me to engage in, in the spirit of good faith cooperation, then please send me your last round of edits so I am sure I have your last round of edits, and we'll make edits back (keeping in mind some/many of those edits could simply be rejection of OKI edits) and I'll even add in some high level comments in the document to give some discussion points for a zoom call. All subject to FRE 408, of course.
>
> Thanks,
>
> Papool
>
> On Thu, May 27, 2021 at 10:35 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>> Dear Papool,
>>
>> Thank you for your email.
>>
>> Attached are the reviewed documents with minor edits in redline.
>>
>> Thank you for offering to jump in to assist with the negotiations. We are amendable to that approach. Please forward the proposed revisions to OKI's revised draft and we can proceed from there,
>>
>> With best regards,
>>
>> Marc



Papool Chaudhari <papool@pralawllc.com>

---

### Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                                   Fri, Jun 4, 2021 at 3:07 PM
To: Papool Chaudhari <papool@pralawllc.com>

Papool,

Thank you for your email.  Attached is the last draft we provided.  I am preparing for a hearing in Tokyo next Weds so I will be unavailable until after that is concluded.  That will allow you some time to make any edits that you propose and we can go from there.

With best regards,

Marc


On ThursdayJun 3, 2021, at 3:25 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

Marc,

Following up on my email below. As I mentioned, I believe the best approach is to have a zoom call with your edits on a share screen and discuss.  Alternatively, I'm open to you sending me your edits (To make sure I have the correct one), and I'll mark it up with comments, and then we can have a zoom call to discuss the points mentioned in the comments.

Either approach is fine with me.  Please let me know which you prefer and either give me dates and times that work for you for a one hour zoom call on this, or send me your edits and I'll mark with it up with comments and then we can set up a zoom call to discuss.

Thanks,

Papool

On Thu, May 27, 2021 at 10:53 AM Papool Chaudhari <papool@pralawllc.com> wrote:
Marc,

Thank you.  Your edits on the documents look good to me. Issac, let me know in this chain or separately if this is good and I can get it on file.

As to the settlement agreement, I appreciate you are amenable to my suggested approach .  I'm not sure if what I have seen are your last edits (because I was not on the chain when they were circulated), but if what I have are the edits, I think the best approach is to get on a zoom call with your edits on a share screen, because I think many of our revisions would be simply rejecting things struck out from OKI.  I don't think that is a productive exercise, but if that is the exercise you want me to engage in, in the spirit of good faith cooperation, then please send me your last round of edits so I am sure I have your last round of edits, and we'll make edits back (keeping in mind some/many of those edits could simply be rejection of OKI edits) and I'll even add in some high level comments in the document to give some discussion points for a zoom call.  All subject to FRE 408, of course.

Thanks,

Papool

**PLAINTIFF'S APPENDIX**                                                                  **A157**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

### BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas , Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

      **1.1**      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                           **A158**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, prior to, or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases. For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not a Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

1.2     **"Claims"** means any or all of the following:  claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3     "**Licensed Patents**" means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

**PLAINTIFF'S APPENDIX**                              **A159**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4     "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future ~~that are covered or could be alleged to be covered by one or more claims of any Licensed Patent,~~ including, without limitation, the products accused in the Litigation.

1.5     "**Litigation**" has the meaning set forth in the second WHEREAS clause.

~~1.6~~ 1.6     "~~Okidata~~Magnacross" means ~~ODJ~~Magnacross LLC, and any of its past, present and future parent and subsidiary companies and past or present Affiliates, and each of their respective officers, employees, agents, representatives and shareholders.

~~1.6~~1.7     "Okidata" means ODJ, and any of its past, present and future parent and subsidiary companies and past or present Affiliates including ODA, and~~, solely in their role as such,~~ each of their respective officers, directors, employees, agents and representatives.

~~1.7~~1.8     "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.8~~1.9     "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.9~~1.10     "**Term**" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.

2.     **LICENSE AND COVENANT NOT TO SUE**

2.1     **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

2.2     **Covenant Not to Sue.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

**PLAINTIFF'S APPENDIX**                                                            **A160**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

    **2.3**    **No Sublicense Rights**.  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

    **2.4**    **Exhaustion of Rights.**  Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or ~~(solely to the extent of the Licensed Products)~~ any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country).  This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

    **2.5**    **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

    **2.6**    **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

**3.**    **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

    **3.1**    **Release by Magnacross.**   Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as ~~(solely in their role as such and solely with respect to the Licensed Products)~~ any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. ~~For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.~~

**PLAINTIFF'S APPENDIX**         **A161**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2     **Release by Okidata.**   Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.   Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.   Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. ~~For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.~~

3.3     **Contesting Validity.**   Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent ~~in any forum~~, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

3.4     **Unknown Claims.**   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.   The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.   Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is   similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5     **Denial of Liability**.   The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.   Each Party shall bear its own costs ~~, expenses,~~ and attorney's fees incurred in the Litigation.

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                                              **A162**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6 **Dismissal of Litigation.** Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel, shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses. No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation. The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

~~3.7~~ ~~**Safe Harbor.** In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach. Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.~~

4. **PAYMENT**

4.1 **Settlement Payment.** Within ~~ten (10) business~~forty-five (45) days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related ~~form~~forms identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of ~~Fifty Seven~~Twenty Five Thousand ~~Five Hundred~~ United States Dollars ($~~57,500~~25,000.00 USD) ("Settlement Payment"). Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2 **Terms Related to Payment.** The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement. ~~Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.~~ The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty. Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction, provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.

**PLAINTIFF'S APPENDIX**                    A163

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

4.3    **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

5.    **REPRESENTATIONS, WARRANTIES AND COVENANTS**

5.1    **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

5.2    **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

5.3    **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**                                      **A164**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4    Limitation of Liability.

(a)    Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)    In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

6.    CONFIDENTIALITY

6.1    **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                              **A165**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, consultants, bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions. Magnacross may disclose the terms and existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third-party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to contains confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (c) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

**6.2** **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

**PLAINTIFF'S APPENDIX**                    **A166**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**7.     TERM AND TERMINATION**

7.1     **Effective Date and Term.**  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.

7.2     **Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.

> **Formatted:** Font: Bold

7.3     No Refund.7.3          **No Other Termination.**  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.

7.4     **No Refund.**  In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross, subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross in the event of a breach of this Agreement by Magnacross.   However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent.

7.45    **Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, 7.4, 7.5 and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

**8.     MISCELLANEOUS**

8.1     **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

**PLAINTIFF'S APPENDIX**                    **A167**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2**  **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3**  **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4**  **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.  Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5**  **Notices**.  Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6**  **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                                    **A168**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7    **Assignment.**

8.7.1    **No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

8.7.2    **Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

8.7.3    **After Acquired Affiliates.**   Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.

8.8    **Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

8.9    **Statement Regarding Marking of Products.**  OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so.  Further, this Agreement is a litigation settlement of disputed claims, and not an

**PLAINTIFF'S APPENDIX**                          **A169**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

~~acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.   Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.~~

8.~~10~~8.9     **Specific Performance.**  The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to ~~seek~~ specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

8.~~11~~10 **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.~~12~~11 **Counterparts.**  This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission.  Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.


**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the dates set forth below.


**Magnacross LLC**                          **Oki Data Corporation**


By: _____          By: _____

Print Name: _____          Print Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

**PLAINTIFF'S APPENDIX**                                        **A170**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                    **A171**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 ██████████ | 73 W Monroe St |
| | Chicago, IL 60603 |
| | ██████████ |

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                                    **A172**



Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

**Papool Chaudhari** <papool@pralawllc.com>                               Tue, Jun 22, 2021 at 11:53 AM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

SUBJECT TO FRE 408

Marc,

Thanks for sending this over. Because nearly the entirety of my edits would be changing or reverting your edits, what I have done here is simply added in my comments for discussion, as I mentioned previously that I would be doing that.  I think it makes most sense to discuss these before sending you back a full redline, because simply striking/reverting your edits without explanation is not productive.

These comments (and there may be one or two actual edits I made in there) are subject to FRE 408, and Magnacross reserves the right to further edit it and is not bound by any comment herein.

Please take a look and I think the best way to proceed, as I've proposed before, is to get on zoom call (block out 1 hour for this purpose) with this document on share screen and discuss your edits and my comments. Maybe end of this week or early next week?

Please let me know.

Thanks,

Papool

On Fri, Jun 4, 2021 at 3:07 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Papool,
>
> Thank you for your email.  Attached is the last draft we provided.  I am preparing for a hearing in Tokyo next Weds so will be unavailable until after that is concluded.  That will allow you some time to make any edits that you propose and we can go from there.
>
> With best regards,
>
> Marc
>
>
> On ThursdayJun 3, 2021, at 3:25 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>
> Marc,
>
> Following up on my email below. As I mentioned, I believe the best approach is to have a zoom call with your edits on a share screen and discuss.  Alternatively, I'm open to you sending me your edits (To make sure I have the correct one), and I'll mark it up with comments, and then we can have a zoom call to discuss the points mentioned in the comments.
>
> Either approach is fine with me.  Please let me know which you prefer and either give me dates and times that work for you for a one hour zoom call on this, or send me your edits and I'll mark with it up with comments and then we can set up a zoom call to discuss.

**PLAINTIFF'S APPENDIX**                                        **A173**

## NON-EXCLUSIVE PATENT LICENSE
## AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

### BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

      1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                               **A174**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, prior to, or after, the Effective Date.  For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases. ~~For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals.  If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate.  In the event that an entity is not an Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.~~

1.2   **"Claims"** means any or all of the following: claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3   **"Licensed Patents"** means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above ~~owned, filed, licensable, or controlled by Magnacross.~~

**Commented [PC1]:** If the license is going to extend to OKI's affiliates—which it contemplates—then we need to be able to have some reasonable way to know who is an affiliate and who is not an affiliate  How would we be able to know that, if control can be exercised by individuals? OKI could have certain individuals be affiliates and we'd never know  We want to avoid any inadvertent assertions against licensed entities  That's one of the purposes for this language  Is there an affiliate of OKI who is not controlled, or controlled by, an entity as opposed to simply an individual person?

As to divested affiliate language, not sure why OKI issue is there

**Commented [PC2]:** Magnacross can only license patents it owns  Not sure why you struck this  It is not possible for Magnacross to license patents it does not own or control

**PLAINTIFF'S APPENDIX**                                      **A175**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4    **"Licensed Product(s)"** means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future ~~that are covered or could be alleged to be covered by one or more claims of any Licensed Patent~~, including, without limitation, the products accused in the Litigation.

> **Commented [PC3]:** Do you believe that an OKI product that has absolutely nothing to do with the technology set forth in the patents is a "licensed product"? I don't think this makes sense

1.5    **"Litigation"** has the meaning set forth in the second WHEREAS clause.

~~1.6~~    **"~~Okidata~~Magnacross"** means ~~ODJ~~Magnacross LLC, and any of its past, present and future parent and subsidiary companies and past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.

~~1.6~~**1.7**    **"Okidata"** means ODJ, and any of its past, present and future parent and subsidiary companies and past or present Affiliates including ODA, and, ~~solely in their role as such,~~ each of their respective officers, directors, employees, agents and representatives.

> **Commented [PC4]:** Just as you have ODJ defined above, Magnacross is already defined  By expanding the definition here, expanding licensed product above, looking at the license/release/CNS language below, if, for example, Magnacross had an employee who themselves was an inventor and owned unrelated patents, those would end up licensed under this agreement  Whether or not this is intentional on your part, we cannot agree to this  The agreement in principle that was reached on this settlement is to license the Magnacross patent to OKI  The combination of edits here, 1 3, 1 4,, 1 7 and license/release/CNS language go beyond that

> **Commented [PC5]:** Similarly here, the license/release/CNS would extend far beyond ODJ, well beyond the scope of this agreement

~~1.7~~**1.8**    **"Patent-in-Suit"** has the meaning set forth in the second WHEREAS clause.

~~1.8~~**1.9**    **"Settlement Payment"** has the meaning set forth in Section 4.1 herein.

~~1.9    "Term" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.~~

2.    **LICENSE AND COVENANT NOT TO SUE**

2.1    **Grant of License.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

> **Commented [PC6]:** See comments above

2.2    **Covenant Not to Sue.**  Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products.  For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

> **Commented [PC7]:** See comments above

**PLAINTIFF'S APPENDIX**                                              **A176**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

2.3   **No Sublicense Rights.**  The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

2.4   **Exhaustion of Rights.** Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or ~~(solely to the extent of the Licensed Products)~~ any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country). This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

> **Commented [PC8]:** Not sure of OKI issue on this language

2.5   **Full Force and Effect.**  The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

2.6   **Reserved Rights.**  Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross.  No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

3.   **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

3.1   **Release by Magnacross.**   Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as ~~(solely in their role as such and solely with respect to the Licensed Products)~~ any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. ~~For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.~~

> **Commented [PC9]:** Same comment as above

> **Commented [PC10]:** Not sure why this is struck  Do you intend the parties to be released from breach of this very agreement?

**PLAINTIFF'S APPENDIX**                                            **A177**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2 **Release by Okidata.** Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation. Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right. Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. ~~For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.~~

> **Commented [PC11]:** Not sure why this is struck   Do you intend the parties to be released from breach of this very agreement?

3.3 **Contesting Validity.** Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent ~~in any forum~~, except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

> **Commented [PC12]:** Is this an issue with the language or a substantive concern?

3.4 **Unknown Claims.** The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts. The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents. Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is  similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5 **Denial of Liability.** The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party. Each Party shall bear its own costs ~~, expenses~~, and attorney's fees incurred in the Litigation.

> **Commented [PC13]:** Not following the striking of this language here

**PLAINTIFF'S APPENDIX**                    **A178**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.6 **Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel,  shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

~~3.7~~ ~~Safe Harbor.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.~~

4. **PAYMENT**

4.1 **Settlement Payment.**  Within ~~ten (10) business~~forty-five (45) days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related ~~form~~forms identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

4.2 **Terms Related to Payment.**  The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  ~~Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.~~  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction, provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) ~~a certificate of U.S. residency,~~ (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and ~~(c) any other documents required for plural-pass-through partners of Magnacross, if any.~~

**Commented [PC14]:** I heard you on the last zoom call we had state that this is duplicative of other sections in the agreement  I don't see the duplicity you see  Can you point me to where you see that?  If it is duplicative, I agree, don't need it, but I don't think it is duplicative, and, thus, it should stay in

**Commented [PC15]:** My understanding from Issac is that an agreement in principle was reached at $57,500 00, and then later OKI uniliterally has attempted to change the payment amount  We don't agree or accept the change after reaching AIP  For purposes of discussing this agreement, I suggest we keep the original agreed upon amount or leave it blank

**Commented [PC16]:** I've never seen someone strike this sort of language  Do you disagree that this is standard?  Of course each party is responsible for their own taxes?

**Commented [PC17]:** Not going to agree to provide the IRS certificate (certainly not in advance of payment), because there is an extraordinary delay since the COVID pandemic began on getting the IRS to issue these certificates  Also not going to agree to a document requirement that is not explicit on what is needed  As to the other docs, I'd propose that whatever other documents be attached to this agreement and we that we have to review those before signing

PLAINTIFF'S APPENDIX                                                                A179

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**4.3**   **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

**5.   REPRESENTATIONS, WARRANTIES AND COVENANTS**

**5.1**   **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

**5.2**   **Representations, Warranties, and Covenants of Magnacross.**  Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents, or the proceeds thereof; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

**5.3**   **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

> **Commented [PC18]:** What's the purpose of this edit? I'm not following why you have proposed this

**PLAINTIFF'S APPENDIX**                                                                 **A180**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4    Limitation of Liability.

(a)    Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)    In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

> **Commented [PC19]:** We need this in, and frankly, this is protection for both parties

## 6.    CONFIDENTIALITY

6.1    **Confidentiality.**  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").   The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                        **A181**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, ~~consultants,~~ bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, provided that any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, provided that any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions. ~~Magnacross may disclose the terms~~ and ~~existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to~~ contains confidentiality obligations that are at least as restrictive as the terms ~~of this confidentiality provision~~ in this Agreement. , or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (c) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

6.2 **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

---

**Commented [PC20]:** We need this

**Commented [PC21]:** We need this too, and our original language contemplates the necessary protection, i e , if such party is bound by confidentiality obligations that are at least as restrictive as terms in this agreement  If you want something a little stronger, that might work, but striking this out entirely does not

**Commented [PC22]:** This is agreeable

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

7. ~~TERM AND~~ TERMINATION

7.1  ~~Effective Date and Term.  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.~~

7.2  **Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

> **Commented [PC23]:** For mutual protection, we're not going to agree to this language

> **Formatted:** Font: Bold

7.3  ~~No Refund.~~7.3    No Other Termination.  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.

> **Commented [PC24]:** Goes back to the proposed deletion of LoL section  I can propose edits here, but it would strike out so much of this, better to discuss first

7.4  No Refund.  In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross, ~~subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross~~ in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent.

> **Commented [PC25]:** I think this will be agreeable on our end

7.4<u>5</u>  **Survival.**  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, 7.4, 7.5 and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8.  **MISCELLANEOUS**

8.1  **Non-Agency.**  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

**8.2**    **Entire Agreement, Amendments, and Waivers**. This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**8.3**    **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**8.4**    **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.  Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

**8.5**    **Notices**. Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

**8.6**    **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                                    **A184**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

**8.7    Assignment.**

**8.7.1    No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

**8.7.2    Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

**8.7.3    After Acquired Affiliates.**  Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.

**8.8    Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

**8.9    Statement Regarding Marking of Products.** ~~OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so. Further, this Agreement is a litigation settlement of disputed claims, and not an~~

> **Commented [PC26]:** As is, this is not agreeable, but I believe we can work out language to make this agreeable, provided we can reach agreement on previous sections (affiliates definition, Okidata definition, Magnacross, definition)  As it reads, if Okidata is acquired by Apple, for example, then Apple becomes a full licensee  In fact, as it reads in combination with definition of Okidata and license to Okidata, an employee of Okidata is licensed, and if he/she goes to work for Apple, Apple gets a full license too  Does not make sense

**PLAINTIFF'S APPENDIX**                                                           **A185**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

~~acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.   Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.~~

Commented [PC27]: This should be agreeable on our end concerning this patent

8.~~10~~8.9    **Specific Performance.**   The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to ~~seek~~ specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

Commented [PC28]: Agreeable

8.~~11~~10 **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.~~12~~11 **Counterparts.**   This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission. Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                                          **Oki Data Corporation**

By: _____            By: _____

Print Name: _____            Print Name: _____

Title: _____            Title: _____

Date: _____            Date: _____

**PLAINTIFF'S APPENDIX**                                        **A186**

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                                        **A187**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 ████████ | 73 W Monroe St |
| | Chicago, IL 60603 |
| | ████████ |

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

 Gmail

Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

---

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                                    Tue, Jun 22, 2021 at 11:57 AM
To: Papool Chaudhari <papool@pralawllc.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

Dear Papool,

Thank you for your email.  I will look over the comments in advance of a having a call.  I will confirm available times asap.

Marc


On TuesdayJun 22, 2021, at 12:53 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

SUBJECT TO FRE 408

Marc,

Thanks for sending this over. Because nearly the entirety of my edits would be changing or reverting your edits, what I have done here is simply added in my comments for discussion, as I mentioned previously that I would be doing that.  I think it makes most sense to discuss these before sending you back a full redline, because simply striking/reverting your edits without explanation is not productive.

These comments (and there may be one or two actual edits I made in there) are subject to FRE 408, and Magnacross reserves the right to further edit it and is not bound by any comment herein.

Please take a look and I think the best way to proceed, as I've proposed before, is to get on zoom call (block out 1 hour for this purpose) with this document on share screen and discuss your edits and my comments. Maybe end of this week or early next week?

Please let me know.

Thanks,

Papool


On Fri, Jun 4, 2021 at 3:07 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
  Papool,

  Thank you for your email.  Attached is the last draft we provided.  I am preparing for a hearing in Tokyo next Weds so will be unavailable until after that is concluded.  That will allow you some time to make any edits that you propose and we can go from there.

  With best regards,

  Marc


      On ThursdayJun 3, 2021, at 3:25 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

      Marc,

**PLAINTIFF'S APPENDIX**                                    **A189**



Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

**Papool Chaudhari** <papool@pralawllc.com>                           Tue, Jun 29, 2021 at 5:27 PM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

Marc,

Following up on this.  What's your availability for a zoom call tomorrow or Thursday? (Preferably Thursday)  Can do next
week too if that works better, i.e. Tues July 6.  But I'd like to get something scheduled sooner rather than later.

Thanks,

Papool

On Tue, Jun 22, 2021 at 11:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Dear Papool,
>
> Thank you for your email.  I will look over the comments in advance of a having a call.  I will confirm available times
> asap.
>
> Marc
>
>
>> On TuesdayJun 22, 2021, at 12:53 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> SUBJECT TO FRE 408
>>
>> Marc,
>>
>> Thanks for sending this over. Because nearly the entirety of my edits would be changing or reverting your
>> edits, what I have done here is simply added in my comments for discussion, as I mentioned previously
>> that I would be doing that.  I think it makes most sense to discuss these before sending you back a full
>> redline, because simply striking/reverting your edits without explanation is not productive.
>>
>> These comments (and there may be one or two actual edits I made in there) are subject to FRE 408, and
>> Magnacross reserves the right to further edit it and is not bound by any comment herein.
>>
>> Please take a look and I think the best way to proceed, as I've proposed before, is to get on zoom call
>> (block out 1 hour for this purpose) with this document on share screen and discuss your edits and my
>> comments. Maybe end of this week or early next week?
>>
>> Please let me know.
>>
>> Thanks,
>>
>> Papool
>>
>> On Fri, Jun 4, 2021 at 3:07 PM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Papool,
>>>
>>> Thank you for your email.  Attached is the last draft we provided.  I am preparing for a hearing in Tokyo
>>> next Weds so will be unavailable until after that is concluded.  That will allow you some time to make



Papool Chaudhari <papool@pralawllc.com>

---

### Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

---

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                    Wed, Jun 30, 2021 at 11:13 AM
To: Papool Chaudhari <papool@pralawllc.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

Papool,

The edits to § 4.2 are a non-starter.  As previously explained, the tax forms requirement is non-negotiable term.

As such, its not worth either of us wasting our time.

With best regards,

Marc

> On TuesdayJun 29, 2021, at 6:27 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>
> Marc,
>
> Following up on this.  What's your availability for a zoom call tomorrow or Thursday? (Preferably Thursday)  Can do next week too if that works better, i.e. Tues July 6.  But I'd like to get something scheduled sooner rather than later.
>
> Thanks,
>
> Papool
>
> On Tue, Jun 22, 2021 at 11:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>> Dear Papool,
>>
>> Thank you for your email.  I will look over the comments in advance of a having a call.  I will confirm available times asap.
>>
>> Marc
>>
>>> On TuesdayJun 22, 2021, at 12:53 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>>
>>> SUBJECT TO FRE 408
>>>
>>> Marc,
>>>
>>> Thanks for sending this over. Because nearly the entirety of my edits would be changing or reverting your edits, what I have done here is simply added in my comments for discussion, as I mentioned previously that I would be doing that.  I think it makes most sense to discuss these before sending you back a full redline, because simply striking/reverting your edits without explanation is not productive.
>>>
>>> These comments (and there may be one or two actual edits I made in there) are subject to FRE 408, and Magnacross reserves the right to further edit it and is not bound by any comment herein.
>>>
>>> Please take a look and I think the best way to proceed, as I've proposed before, is to get on zoom call (block out 1 hour for this purpose) with this document on share screen and discuss your edits and my comments. Maybe end of this week or early next week?



---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                                    Wed, Jun 30, 2021 at 11:23 AM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

SUBJECT TO FRE 408

Marc,

Thanks for getting back to me.  I'm trying to resolve this in good faith. Did you read my comment on this section? There is an issue with IRS residency certificates due to COVID taking 6-9 months to get issued.

We're not against a requirement on tax forms *per se*, just trying to resolve this logistic pandemic-related issue.  Do you, in good faith, have no sort of proposal to resolve this concern?

Thanks,

Papool

On Wed, Jun 30, 2021 at 11:13 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

> Papool,
>
> The edits to § 4.2 are a non-starter.  As previously explained, the tax forms requirement is non-negotiable term.
>
> As such, its not worth either of us wasting our time.
>
> With best regards,
>
> Marc
>
>> On TuesdayJun 29, 2021, at 6:27 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> Marc,
>>
>> Following up on this.  What's your availability for a zoom call tomorrow or Thursday? (Preferably Thursday)  Can do next week too if that works better, i.e. Tues July 6.  But I'd like to get something scheduled sooner rather than later.
>>
>> Thanks,
>>
>> Papool
>>
>> On Tue, Jun 22, 2021 at 11:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Dear Papool,
>>>
>>> Thank you for your email.  I will look over the comments in advance of a having a call.  I will confirm available times asap.
>>>
>>> Marc
>>>
>>>> On TuesdayJun 22, 2021, at 12:53 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>>>
>>>> SUBJECT TO FRE 408
>>>>
>>>> Marc,

**PLAINTIFF'S APPENDIX**                                                            **A192**



Papool Chaudhari <papool@pralawllc.com>

---

### Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                    Fri, Jul 2, 2021 at 12:30 PM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: Isaac Rabicoff <isaac@rabilaw.com>

> SUBJECT TO FRE 408
>
> Marc,
>
> Checked with my client on this, they are agreeable to tax-forms requirements.  I added it back in and deleted that particular comment from me.  See attached.
>
> How about a zoom call on Tuesday July 6 to go over the remainder of this?  I could do 11am ET, if that works for you.  Please let me know.
>
> Thanks,
>
> Papool
>
> On Wed, Jun 30, 2021 at 11:23 AM Papool Chaudhari <papool@pralawllc.com> wrote:
>> SUBJECT TO FRE 408
>>
>> Marc,
>>
>> Thanks for getting back to me.  I'm trying to resolve this in good faith. Did you read my comment on this section? There is an issue with IRS residency certificates due to COVID taking 6-9 months to get issued.
>>
>> We're not against a requirement on tax forms *per se*, just trying to resolve this logistic pandemic-related issue.  Do you, in good faith, have no sort of proposal to resolve this concern?
>>
>> Thanks,
>>
>> Papool
>>
>> On Wed, Jun 30, 2021 at 11:13 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Papool,
>>>
>>> The edits to § 4.2 are a non-starter.  As previously explained, the tax forms requirement is non-negotiable term.
>>>
>>> As such, its not worth either of us wasting our time.
>>>
>>> With best regards,
>>>
>>> Marc
>>>
>>>> On TuesdayJun 29, 2021, at 6:27 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>>>
>>>> Marc,
>>>>
>>>> Following up on this.  What's your availability for a zoom call tomorrow or Thursday? (Preferably Thursday)  Can do next week too if that works better, i.e. Tues July 6.  But I'd like to get something scheduled sooner rather than later.
>>>>
>>>> Thanks,
>>>>
>>>> Papool
>>>>
>>>> On Tue, Jun 22, 2021 at 11:57 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

# NON-EXCLUSIVE PATENT LICENSE
# AND SETTLEMENT AGREEMENT

This Non-Exclusive Patent License and Settlement Agreement ("Agreement") is entered into as of the date of the last signature set forth on the signature page below (the "Effective Date"), between Magnacross LLC, a Texas limited liability company with a principal office at 15922 Eldorado Pkwy Suite 500 #1572, Frisco, TX 75035, USA (hereinafter "Magnacross"), and Oki Data Corporation, a corporation organized and existing under the laws of Japan, with a principal office at 4-11-22, Shibaura, Minato-ku, Tokyo, 108-8551, Japan (hereinafter "ODJ").  Magnacross and ODJ are referred to in this Agreement collectively as the "Parties" and individually as a "Party."

## BACKGROUND

A.      WHEREAS, Magnacross owns the Licensed Patents (as defined in Section 1.3) with all rights to enforce the Licensed Patents;

B.      WHEREAS, Magnacross alleges that the manufacture, use, sale, offer for sale, or import by ODJ's US subsidiary, Oki Data Americas Inc. ("ODA"), of certain instrumentalities, in the absence of a license from Magnacross, infringes one or more claims of U.S. Patent No. 6,917,304 (the "Patent-in-Suit"), under one or more of the provisions of 35 U.S.C. § 271, and has filed suit against ODA in the United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:20-cv-1959 (the "Litigation");

C.      WHEREAS, ODA denies that it has infringed any valid claims of the Patent-in-Suit;

D.      WHEREAS, Magnacross and ODJ desire to settle their respective claims, without necessity of further litigation and the cost, uncertainty and delays in inherent in the Litigation by Magnacross (as defined in Section 1.6) granting to Okidata (as defined in Section 1.7) and Okidata accepting a license, covenant not to sue and release under the Licensed Patents (as defined in Section 1.3) which includes the Patent-in-Suit; and

E.      WHEREAS, Magnacross is willing to provide a license, covenant not to sue and release to Okidata, in exchange for payment of good and valuable consideration;

**NOW, THEREFORE,** in consideration of the above promises and the mutual covenants of the Parties to be faithfully performed, Magnacross and ODJ, intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

      1.1      **"Affiliate"** or **"Affiliates"** means, with respect to either Party, any other person, corporation or entity that directly or indirectly controls, is controlled by, or is under

**PLAINTIFF'S APPENDIX**                                    **A194**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

common control with such Party upon, prior to, or after, the Effective Date. For purposes of this Section 1.1, "controlling", "controlled", and "control" means the possession, direct or indirect, of the power to direct or cause the direction of management or policies of a person, corporation or other entity whether through the ownership of voting securities, by contract or otherwise. Any person or entity that ceases to be controlling, controlled by, or under common control of a Party during the Term of this Agreement shall cease to be considered an Affiliate as of the date that such control ceases. For the purposes of determining Affiliates under this Section, control shall only be exercised by non-individuals. If an entity was at any time an Affiliate ceases to be an Affiliate after the Effective Date (a "Divested Affiliate"), the Divested Affiliate shall continue to have the license and rights granted under this Agreement; however, the license rights and other rights granted under this Agreement shall extend only to the business of the Divested Affiliate at the time of the divestiture and natural evolutions thereof, and shall not extend to any other operations of any entity that acquired the Divested Affiliate. In the event that an entity is not an Affiliate as of the Effective Date of this Agreement, but later becomes an Affiliate through an acquisition by OKI (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be an Affiliate for the purposes of this Agreement upon completion of such transaction or transactions, but nothing herein shall limit or impair Magnacross's rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such entity became an Acquired Affiliate.

Commented [PC1]: If the license is going to extend to OKI's affiliates—which it contemplates—then we need to be able to have some reasonable way to know who is an affiliate and who is not an affiliate   How would we be able to know that, if control can be exercised by individuals? OKI could have certain individuals be affiliates and we'd never know   We want to avoid any inadvertent assertions against licensed entities   That's one of the purposes for this language   Is there an affiliate of OKI who is not controlled, or controlled by, an entity as opposed to simply an individual person?

As to divested affiliate language, not sure why OKI issue is there

1.2   **"Claims"** means any or all of the following: claims, counterclaims, actions, causes of action (derivative or direct), defenses, judgments, liabilities, other rights to compensation, demands for damages (including actual, consequential, punitive and exemplary damages), injunctive relief, fees (attorneys' fees and legal fees), expenses, or pre- and post-judgment interest, of any nature whatsoever, whether in law or in equity, past or future, known or unknown, realized or unrealized, suspected or unsuspected, patent or latent, fixed or contingent, or direct or indirect.

1.3   "**Licensed Patents**" means (a) the Patent-in-Suit and all other patents and patent applications in any country or jurisdiction issuing from any applications owned, filed, licensable, or controlled by Magnacross or in which Magnacross has any beneficial interest as of the Effective Date; (b) any patents or patent applications to which the patents and/or applications in (a) above claim priority or share priority, and any continuations, continuations-in-part, divisionals of, continuation prosecution applications, provisional applications, substitutions, *inter partes* reviewed patents, reissues, reexamination certificates and extensions thereof, and foreign counterpart patents and utility models issuing from foreign applications relating to each of the foregoing patents and patent applications; and (c) any patents and/or patent applications having the same disclosure as, any patent or patent application in (a) or (b) above owned, filed, licensable, or controlled by Magnacross.

Commented [PC2]: Magnacross can only license patents it owns   Not sure why you struck this   It is not possible for Magnacross to license patents it does not own or control

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

1.4 "**Licensed Product(s)**" means any product, system, component, subassembly, good, hardware, software, website or service, or a combination thereof that has been, is or will be designed, made, had made, used, practiced, offered to sell, sold, imported, exported, leased, purchased, licensed or otherwise disposed of, by, or for Okidata in the past, present, or future that are covered or could be alleged to be covered by one or more claims of any Licensed Patent, including, without limitation, the products accused in the Litigation.

> **Commented [PC3]:** Do you believe that an OKI product that has absolutely nothing to do with the technology set forth in the patents is a "licensed product"? I don't think this makes sense

1.5 "**Litigation**" has the meaning set forth in the second WHEREAS clause.

1.6 "~~Okidata~~**Magnacross**" means ~~ODJ~~**Magnacross LLC**, and any of its past, present and future parent and subsidiary companies and past or present Affiliates, and each of their respective officers, directors, employees, agents, representatives and shareholders.

> **Commented [PC4]:** Just as you have ODJ defined above, Magnacross is already defined  By expanding the definition here, expanding licensed product above, looking at the license/release/CNS language below, if, for example, Magnacross had an employee who themselves was an inventor and owned unrelated patents, those would end up licensed under this agreement  Whether or not this is intentional on your part, we cannot agree to this  The agreement in principle that was reached on this settlement is to license the Magnacross patent to OKI  The combination of edits here, 1 3, 1 4,, 1 7 and license/release/CNS language go beyond that

~~1.6~~**1.7** "**Okidata**" means ODJ, and any of its past, present and future parent and subsidiary companies and past or present Affiliates including ODA, and, ~~solely in their role as such,~~ each of their respective officers, directors, employees, agents and representatives.

~~1.7~~**1.8** "**Patent-in-Suit**" has the meaning set forth in the second WHEREAS clause.

~~1.8~~**1.9** "**Settlement Payment**" has the meaning set forth in Section 4.1 herein.

~~1.9~~ ~~"Term" means the time period commencing as of the Effective Date and ending upon the expiration of the last of the Licensed Patents to expire.~~

> **Commented [PC5]:** Similarly here, the license/release/CNS would extend far beyond ODJ, well beyond the scope of this agreement

2. LICENSE AND COVENANT NOT TO SUE

2.1 **Grant of License.** Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby grants to Okidata a nonexclusive, nontransferable (except as provided in Section 8.7), perpetual, irrevocable, worldwide, fully paid-up license under the Licensed Patents to make, have made, use, sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

> **Commented [PC6]:** See comments above

2.2 **Covenant Not to Sue.** Subject to payment by ODJ to Magnacross of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross hereby unconditionally covenants not to sue or otherwise asserts any claim or demand against Okidata or its respective suppliers, distributors, dealers, resellers, retailers, customers (direct or indirect), end users for infringement (past, present or future, whether direct or indirect) of the Licensed Patents with respect to or based upon the Licensed Products. For the avoidance of doubt, the covenants not to sue set forth above shall expressly exclude and shall not in any way apply to any other causes of action Magnacross may in the future have for breach of this Agreement.

> **Commented [PC7]:** See comments above

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

2.3 **No Sublicense Rights.** The license granted to Okidata in Section 2.1 does not confer upon Okidata the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose, except as specifically set forth in Section 8.7.

2.4 **Exhaustion of Rights.** Magnacross expressly recognizes that the license and covenants granted by this Agreement shall fully exhaust all rights under, and provide complete immunity from infringement of, the Licensed Patents, not only as to Okidata, but as to all distributors, dealers, customers (direct or indirect), and end users and any other person or entities who make, acquire or use any Licensed Products or (solely to the extent of the Licensed Products) any downstream products thereof prior to the Effective Date and at any time thereafter. Such exhaustion shall apply regardless of where the Licensed Products or any downstream products thereof are made, used, or first sold (e.g., regardless of whether first sold in the United States or in a foreign country). This Agreement in no way limits or restricts the distributors, dealers, customers, end users or other entities to which Okidata is entitled to sell, offer for sale, import, export or otherwise dispose of the Licensed Products.

> **Commented [PC8]:** Not sure of OKI issue on this language

2.5 **Full Force and Effect.** The license and covenants not to sue granted by this Agreement shall remain in full force and effect regardless of any subsequent transfer of rights in or to the Licensed Patents by Magnacross including, without limitation, assignment, license, sale, gift, or bequest.

2.6 **Reserved Rights.** Any and all rights not explicitly granted to Okidata hereunder are expressly reserved by Magnacross. No license or immunity as to the Licensed Patents is granted by Magnacross to any person, either by implication, estoppel, or otherwise, other than the license and covenant expressly set forth herein.

3. **MUTUAL RELEASES AND DISMISSAL OF LITIGATION**

3.1 **Release by Magnacross.** Subject to the Settlement Payment by ODJ to Magnacross pursuant to Section 4.1, Magnacross hereby fully and forever releases, acquits and discharges Okidata and their respective successors and permitted assigns, as well as (solely in their role as such and solely with respect to the Licensed Products) any current or former suppliers, assemblers, replicators, integrators, distributors, dealers, customers (direct or indirect) and end-users of Okidata, and each of them ("Okidata Parties"), from and against any and all Claims with respect to any matter or thing done or omitted, or suffered to be done or omitted, prior to the Effective Date in any way directly or indirectly arising out of, relating or pertaining to: (i) any of the transactions, claims, defenses or occurrences asserted in the Litigation; (ii) the Licensed Products; and (iii) the Licensed Patents. For the avoidance of doubt, the releases granted in this Section 3.1 do not apply to any claims arising out of the performance or breach of this Agreement.

> **Commented [PC9]:** Same comment as above

> **Commented [PC10]:** Not sure why this is struck   Do you intend the parties to be released from breach of this very agreement?

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

3.2   **Release by Okidata.**   Okidata hereby fully and forever releases, acquits and discharges Magnacross and their respective successors and permitted assigns ("Magnacross Parties") from and against any and all Claims that were or could have been averred by ODA in the Litigation.   Notwithstanding the above, no license, either express or implied, is granted by Okidata to any of Magnacross Parties with respect to any Okidata patent, trade secret, or other intellectual property right.   Thus, nothing in this release is to be construed as precluding Okidata from asserting that one or more of the Magnacross Parties infringes a patent, trade secret, or other intellectual property right of Okidata. ~~For the avoidance of doubt, the releases granted in this Section 3.2 do not apply to any claims arising out of the performance or breach of this Agreement.~~

> **Commented [PC11]:** Not sure why this is struck   Do you intend the parties to be released from breach of this very agreement?

3.3   **Contesting Validity.**   Okidata agrees that it shall not challenge the validity and enforceability of any Licensed Patent ~~in any forum,~~ except as may be required by applicable law or to comply with a subpoena, discovery request, or order issued by a court or panel, and except that Okidata shall have the right to challenge the validity and enforceability of any of the Licensed Patents solely to the extent a claim of infringement under the Licensed Patents is brought against Okidata or Okidata Parties with respect to the Licensed Products.

> **Commented [PC12]:** Is this an issue with the language or a substantive concern?

3.4   **Unknown Claims.**   The Parties expressly acknowledge and agree that this Agreement fully and finally releases and forever resolves the Litigation, including those claims by and between Parties arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts.   The Parties acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents.   Upon advice of counsel, the Parties expressly waive and relinquish the protection of any governmental statute, regulation or common law principle that is   similar or comparable or equivalent of Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

3.5   **Denial of Liability.**   The Parties acknowledge that they are entering into this Agreement to resolve disputed claims, that nothing herein shall be construed to be an admission of liability, and that Magnacross and Okidata expressly deny any liability to the other Party.   Each Party shall bear its own costs~~, expenses~~, and attorney's fees incurred in the Litigation.

> **Commented [PC13]:** Not following the striking of this language here

**PLAINTIFF'S APPENDIX**                                          **A198**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

**3.6   Dismissal of Litigation.**  Subject to payment by ODJ of the Settlement Payment pursuant to Sections 4.1 and 4.2, Magnacross, by and through its counsel, shall dismiss, with prejudice, all claims made against ODA in the Litigation, with each Party to bear its own costs, attorney's fees and expenses.  No Party shall take any action to oppose the Court's entry of dismissal as set forth above, or to either vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation.  The Parties shall take all reasonable steps to facilitate the execution and entry of the dismissal, within 5 business days of the date on which the Settlement Payment is received by Magnacross.

~~3.7   Safe Harbor.  In the case of breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach.  Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.~~

**Commented [PC14]:** I heard you on the last zoom call we had state that this is duplicative of other sections in the agreement  I don't see the duplicity you see  Can you point me to where you see that?  If it is duplicative, I agree, don't need it, but I don't think it is duplicative, and, thus, it should stay in

**4.   PAYMENT**

**4.1   Settlement Payment.**  Within ~~ten (10) business~~forty-five (45) days of the later of the Effective Date or the date on which Magnacross provides to ODJ a tax related ~~form~~forms identified in Section 4.2, ODJ shall pay to Magnacross a lump-sum and one-time payment in the amount of Fifty Seven Thousand Five Hundred United States Dollars ($57,500.00 USD) ("Settlement Payment").   Other than the Settlement Payment, Magnacross acknowledges and agrees that Okidata shall not be required to make any other payments to Magnacross for rights granted in this Agreement under the Licensed Patents.

**Commented [PC15]:** My understanding from Issac is that an agreement in principle was reached at $57,500 00, and then later OKI unliterally has attempted to change the payment amount  We don't agree or accept the change after reaching AIP  For purposes of discussing this agreement, I suggest we keep the original agreed upon amount or leave it blank

**4.2   Terms Related to Payment.**  The Settlement Payment shall be paid in United States Dollars by wire transfer to the trust account of Magnacross' outside counsel, Rabicoff Law LLC, pursuant to the Wire Transfer Instructions contained in Exhibit A to this Agreement.  ~~Each Party shall be responsible for any duties, taxes and/or levies to which it is subject as a result of any payment hereunder.~~  The Parties agree that the Settlement Payment constitutes "royalties" as that term is defined in Article 12, paragraph 2 of the Income Tax Treaty between Japan and the United States (the "Treaty") and, as such, is exempt from Japanese withholding tax under Article 12, paragraph 1 of the Treaty.  Pursuant to such exemption, ODJ shall not withhold any tax from any payments due to Magnacross under Section 4.1 hereof, and Magnacross shall not be liable for any withholding taxes involved in this transaction  provided that prior to ODJ making the Settlement Payment, Magnacross provides ODJ with (a) a certificate of U.S. residency, (b) complete Form 3 (Application Form For Income Tax Convention), Form 16 (List of the Members of Foreign Company or List of the Partners of Entity) and Form 17 (Attachment Form For Limitation On Benefits Article) and (c) any other documents required for plural pass-through partners of Magnacross, if any.

**Commented [PC16]:** I've never seen someone strike this sort of language  Do you disagree that this is standard?  Of course each party is responsible for their own taxes?

**Formatted:** Not Strikethrough

**Formatted:** Not Strikethrough

**PLAINTIFF'S APPENDIX**                                      **A199**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

4.3 **Distribution of Settlement Payment.** The Settlement Payment shall not be disbursed from the trust account of Magnacross' outside counsel, Rabicoff Law LLC, until after the Litigation has been dismissed in accordance with Section 3.6.

5. **REPRESENTATIONS, WARRANTIES AND COVENANTS**

5.1 **Representations, Warranties, and Covenants of ODJ.** ODJ represents, warrants, and covenants to Magnacross that (a) the execution of this Agreement by ODJ and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which ODJ is a party; (b) ODJ has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined in this Agreement and (c) the person executing this Agreement on behalf of ODJ has the full legal power and authority to enter into this Agreement.

5.2 **Representations, Warranties, and Covenants of Magnacross.** Magnacross represents and warrants that (a) it has full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (b) it has full, complete and exclusive rights to grant all license, covenant, release and other rights of Okidata and fulfill all obligations of Magnacross under this Agreement; (c) it is the sole owner of all right, title and interest to the Licensed Patents, including any and all rights to claim for past damages; (d) it has the exclusive right to enforce the Licensed Patents, and no third party has any right to enforce the Licensed Patents or recover for infringement of the Licensed Patents; (e) it has not assigned, pledged or otherwise in any manner whatsoever sold or transferred the Licensed Patents or any claims that were made or could have been made in the Litigation regarding the Licensed Patents~~, or the proceeds thereof~~; (f) as of the Effective Date, Magnacross does not own, control, or have the right to license any patents or patent applications other than the Licensed Patents; (g) the person executing this Agreement on behalf of Magnacross has the full legal power and authority to enter into this Agreement and to grant the licenses, covenants, release and other rights granted in this Agreement; (h) the execution of this Agreement by Magnacross and its performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Magnacross is a party; and (i) in the event that Magnacross transfers any Licensed Patents in the future, all rights and releases granted by Magnacross under this Agreement will run with such Licensed Patents and Magnacross shall bind the acquirer of such Licensed Patent(s) in writing to all of the license, release and covenant in this Agreement.

> **Commented [PC17]:** What's the purpose of this edit? I'm not following why you have proposed this

5.3 **WARRANTY DISCLAIMERS.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN SECTION 5.2 ABOVE, MAGNACROSS MAKES NO REPRESENTATIONS OR WARRANTIES TO OKIDATA OF ANY KIND, INCLUDING WITHOUT LIMITATION, EXPRESS, IMPLIED, STATUTORY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PATENT ENFORCEABILITY, OR PATENT VALIDITY REPRESENTATIONS AND/OR WARRANTIES; AND MAGNACROSS MAKES NO REPRESENTATION

**PLAINTIFF'S APPENDIX**                    A200

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

THAT THE USE OF THE LICENSED PATENTS IN CONNECTION WITH THE MANUFACTURE, USE, SALE, OFFER FOR SALE, IMPORT, EXPORT OR OTHER DISPOSAL OF LICENSED PRODUCTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

5.4    Limitation of Liability.

(a)    Neither Party shall be liable to the other Party, and Magnacross shall not be liable to any Okidata, for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance.  These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss.

(b)    In no event shall either Party or its successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount actually paid to Magnacross under the terms of this Agreement, for any claim arising under or related to the Licensed Patents or this Agreement.  Each Party expressly consents to this limitation of liability for all actions and inactions by the respective Party or its successors or assigns. In the event of a breach by either Party, the non-breaching Party agrees not to seek damages or any other payment from the breaching Party, provided that, upon being notified of the breach and provided with any available, reasonable supporting documentation, the breaching Party cures the breach within thirty (30) days from receipt of notice.

**Commented [PC18]:** We need this in, and frankly, this is protection for both parties

6.    **CONFIDENTIALITY**

6.1    **Confidentiality**.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement and the negotiations leading to this Agreement (but not the existence of the Agreement) shall be regarded as confidential information ("Confidential Information").    The Parties agree that, other than as required by law or expressly permitted by this Agreement, they shall not disclose any Confidential Information to any third party and shall use the Confidential Information only for the purposes set forth herein.

Either Party may disclose the terms and existence of this Agreement only: (a) with the prior written consent of the other Party; (b) to any governmental body having jurisdiction and specifically requiring such disclosure; (c) in response to a valid subpoena or as otherwise required by law; (d) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, or the Japanese Securities Exchange Act and any other

**PLAINTIFF'S APPENDIX**                                    **A201**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

reports filed with the US Securities and Exchange Commission or the Japanese counterpart, or any other filings, reports or disclosures that may be required under applicable laws or regulations or by any applicable stock exchange rule; (e) to its accountants, financial advisors, tax advisors, attorneys, legal advisors, ~~consultants,~~ bankers, investors, and prospective investors; (f) any person or entity covered by the license hereunder, *provided that* any such person or entity is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provisions in this Agreement; (g) to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction, *provided that* any such person or entity which received the Confidential Information is bound to confidentiality and/or privilege obligations that are at least as restrictive as the terms in this Agreement; and (h) in connection with any litigation involving the Licensed Patents so long as such disclosure is covered by a Protective Order or mediation agreement that limits access to those persons typically granted access under "Highly Confidential – Outside Attorneys' Eyes Only" provisions. ~~Magnacross may disclose the terms~~ and ~~existence of this Agreement (including the Parties and the consideration exchanged under the terms of this Agreement) to any third party with a financial interest in the Licensed Patents, potential financing sources, potential assignees, successors, or purchasers of the Licensed Patents so long as such party is bound to~~ contains confidentiality ~~obligations~~ that are at least as restrictive as the terms ~~of this confidentiality provision~~ in this ~~Agreement~~, or as otherwise required by law.

Notwithstanding the foregoing, prior to any disclosure under circumstances that qualify as any of (b), (c) or (h) in the previous paragraph, the Party contemplating making such disclosure shall promptly notify the other Party five (5) business days (or if such period is not possible, such lesser advance time as is possible) prior to such disclosure and, prior to any such disclosure, the Party contemplating making such disclosure shall take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

Confidential Information shall not include information that: (i) was already known to the receiving Party, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (ii) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; (iii) was subsequently disclosed, other than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality; or (iv) was or will be independently developed by the receiving Party without use of any Confidential Information disclosed by the disclosing Party.

6.2   **No Publicity.** Neither Party shall issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing.

---

**Commented [PC19]:** We need this

**Commented [PC20]:** We need this too, and our original language contemplates the necessary protection, i e , if such party is bound by confidentiality obligations that are at least as restrictive as terms in this agreement   If you want something a little stronger, that might work, but striking this out entirely does not

**Commented [PC21]:** This is agreeable

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

7.     ~~TERM AND~~ TERMINATION

7.1     ~~Effective Date and Term.  This Agreement becomes effective as of the Effective Date and continues until the end of the Term.~~

7.2     **Termination for Breach.**  Either Party may terminate this Agreement upon thirty (30) business days written notice to the other Party of the breach by the other Party of any of the material terms of this Agreement, provided that the breaching Party has not cured the breach within such thirty (30) business days period. ~~In the event of such termination, the breaching Party shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies for breach of this Agreement, including attorneys' fees and expenses (as determined by court), incurred by the enforcing Party.~~

> **Commented [PC22]:** For mutual protection, we're not going to agree to this language
>
> **Formatted:** Font: Bold

7.3     ~~No Refund.~~7.3     No Other Termination.  The Parties expressly agree that nothing in this Agreement shall be deemed to limit either Party's remedies for breach of this Agreement, provided that, except as set forth in Section 7.2, neither Party shall have the right to seek rescission of this Agreement or any other remedy that seeks to invalidate, terminate, void, or undo this Agreement, and this Agreement shall not be terminable under any circumstance.  In the event of any proceeding to enforce the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees as determined by the court.

> **Commented [PC23]:** Goes back to the proposed deletion of LoL section  I can propose edits here, but it would strike out so much of this, better to discuss first

7.4     No Refund.  In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, shall ODJ be entitled to a refund or reimbursement of the Settlement Payment from Magnacross; however, this provision shall not prevent Okidata from recovering damages against Magnacross, ~~subject to the limitation of liability in Section 5.4 above, in the event of a breach of this Agreement by Magnacross~~ in the event of a breach of this Agreement by Magnacross.  However, except for the Settlement Payment, Magnacross agrees that in the event that a Licensed Patent is found to be invalid or unenforceable by final judgment of a court of law, or other bodies of the Government that issued such Licensed Patent, then any other restrictions contained herein upon Okidata shall no longer be binding or of legal effect as to that Licensed Patent.

> **Commented [PC24]:** I think this will be agreeable on our end

7.4~~5~~     **Survival**.  Articles 1, 2, 3, 4, 5 and 6 and Sections 7.3, 7.4, 7.5 and 8.4, 8.5, 8.8, 8.9, 8.10 of this Agreement shall survive the termination of this Agreement pursuant to Section 7.2.  All provisions of this Agreement shall survive its expiration, to the extent they have not been fully performed at the end of the Term.

8.     MISCELLANEOUS

8.1     **Non-Agency**.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship

**PLAINTIFF'S APPENDIX**                                        **A203**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

between Magnacross and Okidata.  Neither Magnacross nor Okidata shall incur any debts or make any commitments for the other.

8.2 **Entire Agreement, Amendments, and Waivers**.  This Agreement constitutes and contains the entire agreement between Magnacross and Okidata, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof.  This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties.  No delay or omission by either Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by the other Party.  No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

8.3 **Severability and Captions**.  If one or more provisions of this Agreement are held to be invalid or unenforceable under applicable law, such provision shall be excluded from this Agreement, and the balance of the Agreement shall be interpreted as if such provision were so excluded to the extent possible consistent with the original intent of the Parties for the Agreement.  In the event a part or provision of this Agreement is held to be invalid or unenforceable or in conflict with law for any reason, the Parties shall replace any invalid part or provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision.  The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

8.4 **Governing Law and Consent to Jurisdiction**.  This Agreement shall be governed by and construed under the laws of the State of Texas excluding any conflict of law provisions.  Magnacross and ODJ each irrevocably consent to the exclusive jurisdiction of any Texas state or federal court sitting in the Eastern District of Texas over any suit, action or proceeding arising out of or relating to this Agreement.

8.5 **Notices**.  Any notice required or permitted under this Agreement shall be given in writing and shall be sent via overnight carrier to the addresses indicated in the opening paragraph of this Agreement above, with a copy to the other Party's lead outside counsel in the Litigation.

8.6 **No Third Party Beneficiaries**.  Except as expressly set forth herein, nothing in this Agreement shall be construed to give rise to any obligation on either Party for the benefit of a third party, or to confer any rights on any party other than Magnacross or Okidata.  Notwithstanding any other provision in this Agreement that may be read to the contrary, this Agreement does not confer on any person other than

**PLAINTIFF'S APPENDIX**                    **A204**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

Magnacross or Okidata any right to bring an action based upon an alleged breach of this Agreement; however, this Section 8.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

8.7   **Assignment.**

8.7.1   **No Assignments.** Except as expressly permitted in this Section 8.7, ODJ may not assign, delegate, sell, transfer, sublicense or otherwise dispose of any or all of its rights or obligations under this Agreement to any third party.

8.7.2   **Permitted Assignments by ODJ.** Notwithstanding the provisions of Section 8.7.1, ODJ may assign its rights under this Agreement, in whole or in part, without Magnacross' prior written consent, to any third party other than ODJ's Affiliates in connection with the sale, transfer or other disposition by ODJ of any of its or their assets, properties or businesses that may be covered by such rights to such third party.  In the event of such a transaction, the rights of ODJ hereunder so assigned only extend to Okidata's products existing as of the date of the transaction, and will not otherwise extend to any other products, services or activities conducted by the acquiring party prior to, on or after the date of the transaction.

8.7.3   **After Acquired Affiliates.**  Notwithstanding the provisions of Section 8.7.1, in the event that Okidata acquires or otherwise becomes an affiliate of a third party or acquires any assets or product lines of a third party, any such affiliate, product and services will be and hereby are licensed under, and will be a beneficiary of, the license, covenant and other rights set out in this Agreement for any and all activities occurring prior and subsequent thereto.

8.8   **Bankruptcy.** The Parties acknowledge and agree that under this Agreement, the Licensed Patents, "intellectual property" as defined in Section 101 (35A) of the United States Bankruptcy Code (the "Code"), as the same may be amended from time to time, which have been licensed in hereunder contemporaneous exchange for value.  Magnacross acknowledges that if Magnacross, as a debtor in possession, or a trustee in bankruptcy in a case under the Code rejects this Agreement, Okidata may elect to retain its rights under this Agreement as provided in Section 365(n) of the Code.  Upon the written request of ODJ to Magnacross or the bankruptcy trustee, Magnacross or such bankruptcy trustee shall comply in all respects with Section 365(n) of the Code, including, without limitation, by not interfering with the rights of Okidata as provided in this Agreement.

8.9   **Statement Regarding Marking of Products.**  OKI asserts that the OKI has not infringed any valid claim of any Licensed Patent, that OKI is not currently infringing any claim of any Licensed Patent, and that the OKI has no intent to do so. Further, this Agreement is a litigation settlement of disputed claims, and not an

**Commented [PC25]:** As is, this is not agreeable, but I believe we can work out language to make this agreeable, provided we can reach agreement on previous sections (affiliates definition, Okidata definition, Magnacross, definition)  As it reads, if Okidata is acquired by Apple, for example, then Apple becomes a full licensee  In fact, as it reads in combination with definition of Okidata and license to Okidata, an employee of Okidata is licensed, and if he/she goes to work for Apple, Apple gets a full license too  Does not make sense

**PLAINTIFF'S APPENDIX**                                   **A205**

NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT

~~acknowledgement that OKI needs a license in order to make, have made, sell, offer for sale, import or export any product, software, website or service.  Therefore, from the Effective Date forward, OKI contends that they will have no products that must be marked under 35 U.S.C. § 287.~~

> **Commented [PC26]:** This should be agreeable on our end concerning this patent

8.~~10~~8.9    **Specific Performance.**   The Parties agree that a breach of any of the provisions of this Agreement would cause irreparable harm to the other Party which could not be compensated by damages alone, and thereby agree that the non-breaching Party has the right to ~~seek~~ specific performance of this Agreement (without the necessity of posting bond) without prejudice to any other rights or remedies that the non-breaching Party may have.  The remedies provided for in this Agreement, together with all remedies available under applicable law, shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies.

> **Commented [PC27]:** Agreeable

8.~~11~~10  **Diligence.** The Parties acknowledge, accept, warrant and represent that (i) they are sophisticated parties represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel, and that (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

8.~~12~~11  **Counterparts.**   This Agreement may be executed in counterparts, and such counterparts may be exchanged via electronic transmission. Each such counterpart shall be deemed an original, and all of which taken together shall be deemed a single document.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the dates set forth below.

**Magnacross LLC**                              **Oki Data Corporation**

By: _____            By: _____

Print Name: _____            Print Name: _____

Title: _____            Title: _____

Date: _____            Date: _____

PLAINTIFF'S APPENDIX                              A206

**NON-EXCLUSIVE PATENT LICENSE AND SETTLEMENT AGREEMENT**


[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**PLAINTIFF'S APPENDIX**                                   **A207**

**EXHIBIT A**

**WIRE TRANSFER INSTRUCTIONS**

Funds should be wired, via the Federal Reserve System, to the trust account of Magnacross's outside counsel, Rabicoff Law LLC, as follows:

| Chase Bank | For the Benefit of: |
|---|---|
| 55 E Monroe St | Rabicoff Law LLC |
| Chicago, IL 60603 | 73 W Monroe St |
| ███████████████ | Chicago, IL 60603 |
| | ████████████ |

RESTRICTED – ATTORNEYS' EYES ONLY – SUBJECT TO FRE 408

**PLAINTIFF'S APPENDIX**                    **A208**

M Gmail

**Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order**
1 message

**TARYN M WAITER** <twaiter@labgoldlaw.com>                                          Mon, Jul 5, 2021 at 8:53 PM
To: Papool Chaudhari <papool@pralawllc.com>
Cc: Marc Labgold <mlabgold@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Dear Mr. Chaudhari,

Dr. Labgold is currently traveling and unavailable for a call on July 6th.  He currently has available time on July 16th, 19th and 20th.  Please let me know your preference and I will get you available times.

With best regards,

*Taryn Waiter*

Practice Coordinator
**Marc R. Labgold, P.C.**
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
U.S. Telephone:       +1 (703) 517-4646
U.S. Fax:                 +1 (877) 401-8855
Email:                          twaiter@labgoldlaw.com

This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message.

On Jul 2, 2021, at 1:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

SUBJECT TO FRE 408

Marc,

Checked with my client on this, they are agreeable to tax-forms requirements.  I added it back in and deleted that particular comment from me.  See attached.

How about a zoom call on Tuesday July 6 to go over the remainder of this?  I could do 11am ET, if that works for you.  Please let me know.

Thanks,

Papool

On Wed, Jun 30, 2021 at 11:23 AM Papool Chaudhari <papool@pralawllc.com> wrote:
SUBJECT TO FRE 408

Marc,

Thanks for getting back to me.  I'm trying to resolve this in good faith. Did you read my comment on this section? There is an issue with IRS residency certificates due to COVID taking 6-9 months to get issued.

We're not against a requirement on tax forms *per se*, just trying to resolve this logistic pandemic-related issue.  Do you, in good faith, have no sort of proposal to resolve this concern?

Thanks,

Papool

**PLAINTIFF'S APPENDIX**                                                **A209**



Papool Chaudhari <papool@pralawllc.com>

---

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                           Wed, Jul 7, 2021 at 11:30 AM
To: TARYN M WAITER <twaiter@labgoldlaw.com>
Cc: Marc Labgold <mlabgold@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Taryn,

Thank you for your email.  Please let me know what times would work for July 20.

Thanks,

Papool

On Mon, Jul 5, 2021 at 8:53 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:

Dear Mr. Chaudhari,

Dr. Labgold is currently traveling and unavailable for a call on July 6th.  He currently has available time on July 16th, 19th and 20th.  Please let me know your preference and I will get you available times.

With best regards,

*Taryn Waiter*

Practice Coordinator
**Marc R. Labgold, P.C.**
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
U.S. Telephone:        +1 (703) 517-4646
U.S. Fax:               +1 (877) 401-8855
Email:                    twaiter@labgoldlaw.com

This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message.

On Jul 2, 2021, at 1:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

SUBJECT TO FRE 408

Marc,

Checked with my client on this, they are agreeable to tax-forms requirements.  I added it back in and deleted that particular comment from me.  See attached.

How about a zoom call on Tuesday July 6 to go over the remainder of this?  I could do 11am ET, if that works for you.  Please let me know.

Thanks,

Papool

On Wed, Jun 30, 2021 at 11:23 AM Papool Chaudhari <papool@pralawllc.com> wrote:
SUBJECT TO FRE 408

Marc,

Thanks for getting back to me.  I'm trying to resolve this in good faith. Did you read my comment on this section? There is an issue with IRS residency certificates due to COVID taking 6-9 months to get issued.

M Gmail

Papool Chaudhari <papool@pralawllc.com>

## Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order

1 message

**TARYN M WAITER** <twaiter@labgoldlaw.com>
To: Papool Chaudhari <papool@pralawllc.com>
Cc: Marc Labgold <mlabgold@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Mon, Jul 12, 2021 at 2:19 PM

Mr. Chaudhari,

Dr. Labgold has availability between 1pm (ET) and 3pm (ET) on July 20.  Please let me know your preferred time.


Best,

*Taryn Waiter*

Practice Coordinator
**Marc R. Labgold, P.C.**
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
U.S. Telephone:     +1 (703) 517-4646
U.S. Fax:               +1 (877) 401-8855
Email:                       twaiter@labgoldlaw.com


This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message.


On Jul 7, 2021, at 12:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:

Taryn,

Thank you for your email.  Please let me know what times would work for July 20.

Thanks,

Papool

On Mon, Jul 5, 2021 at 8:53 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:

Dear Mr. Chaudhari,

Dr. Labgold is currently traveling and unavailable for a call on July 6th.  He currently has available time on July 16th, 19th and 20th.  Please let me know your preference and I will get you available times.


With best regards,

*Taryn Waiter*

Practice Coordinator
**Marc R. Labgold, P.C.**
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
U.S. Telephone:     +1 (703) 517-4646
U.S. Fax:               +1 (877) 401-8855
Email:                       twaiter@labgoldlaw.com


This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message.


On Jul 2, 2021, at 1:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:



Papool Chaudhari <papool@pralawllc.com>

---

### Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order
1 message

---

**Papool Chaudhari** <papool@pralawllc.com>                                      Tue, Jul 13, 2021 at 10:32 AM
To: TARYN M WAITER <twaiter@labgoldlaw.com>
Cc: Marc Labgold <mlabgold@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>

Taryn,

I can do 2pm ET on July 20 for a one hour zoom call.  Can you send a zoom invite for this?

Thank you!

Papool

> On Mon, Jul 12, 2021 at 2:19 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>> Mr. Chaudhari,
>>
>> Dr. Labgold has availability between 1pm (ET) and 3pm (ET) on July 20.  Please let me know your preferred time.
>>
>>
>> Best,
>>
>> *Taryn Waiter*
>>
>> Practice Coordinator
>> **Marc R. Labgold, P.C.**
>> 12005 Sunrise Valley Drive, Suite 203
>> Reston, VA 20191
>> U.S. Telephone:        +1 (703) 517-4646
>> U.S. Fax:               +1 (877) 401-8855
>> Email:                       twaiter@labgoldlaw.com
>>
>>
>> This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message.
>>
>>
>>
>>          On Jul 7, 2021, at 12:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>>          Taryn,
>>
>>          Thank you for your email.  Please let me know what times would work for July 20.
>>
>>          Thanks,
>>
>>          Papool
>>
>>          On Mon, Jul 5, 2021 at 8:53 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>>>          Dear Mr. Chaudhari,
>>>
>>>          Dr. Labgold is currently traveling and unavailable for a call on July 6th.  He currently has available time on July 16th, 19th and 20th.  Please let me know your preference and I will get you available times.
>>>
>>>
>>>          With best regards,
>>>
>>>          *Taryn Waiter*
>>>
>>>          Practice Coordinator
>>>          **Marc R. Labgold, P.C.**
>>>          12005 Sunrise Valley Drive, Suite 203
>>>          Reston, VA 20191
>>>          U.S. Telephone:        +1 (703) 517-4646
>>>          U.S. Fax:               +1 (877) 401-8855
>>>          Email:                       twaiter@labgoldlaw.com
>>>
>>>
>>>          This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any



Papool Chaudhari <papool@pralawllc.com>

---

**Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order**
1 message

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                                                     Fri, Jul 16, 2021 at 10:11 AM
To: Papool Chaudhari <papool@pralawllc.com>
Cc: "twaiter@labgoldlaw.com" <twaiter@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Patrick Hoeffner
<phoeffner@labgoldlaw.com>, Megan C Labgold <megan@labgoldlaw.com>

Dear Papool,

During the hearing on July 14th, the Court instructed us to reach a consensus (if possible) as to what, if any, additional information the parties believe is needed for the Court to
address Count II of the First Amended Complaint either pursuant to Rule 12 or Rule 56.  As such, I think the best use of the currently scheduled time on July 20th would be to try
to reach a consensus on what, if any, additional information should be submitted to the Court in this regard.

In order to facilitate the discussion, please forward PDF copies of any documents (emails, attachments, etc) that you believe need to be submitted to the Court for resolution of
the question of law presented in Count II of the First Amended Complaint (which is now Count II of the "Corrected First Amended Complaint").  Please confirm that you can
provide such information, if any, by COB on Monday, July 19, so that we will have time to review in advance of the call and speak with our client if need be.  If you do not believe
that you can provide the documents by Monday, please let me know when you will be in a position to provide such information, if any, and we can schedule a call accordingly.

Finally, It appears to us that the "corrections" reflected in Corrected First Amended Complaint are limited to changing the language of Count I of the First Amended Complaint
back to the same wording that was presented in the Original Complaint.  However, since these edits are once again not reflected in a redline of the First Amended Complaint, we
request the courtesy of your confirmation to avoid any issues going forward.

With best regards,

Marc

> On TuesdayJul 13, 2021, at 11:32 AM, Papool Chaudhari <papool@pralawllc.com> wrote:
>
> Taryn,
>
> I can do 2pm ET on July 20 for a one hour zoom call.  Can you send a zoom invite for this?
>
> Thank you!
>
> Papool
>
> On Mon, Jul 12, 2021 at 2:19 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>> Mr. Chaudhari,
>>
>> Dr. Labgold has availability between 1pm (ET) and 3pm (ET) on July 20.  Please let me know your preferred time.
>>
>> Best,
>>
>> *Taryn Waiter*
>> Practice Coordinator
>> **Marc R. Labgold, P.C.**
>> 12005 Sunrise Valley Drive, Suite 203
>> Reston, VA 20191
>> U.S. Telephone:   +1 (703) 517-4646
>> U.S. Fax:            +1 (877) 401-8855
>> Email:                    twaiter@labgoldlaw.com
>>
>>
>> This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may
>> contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this
>> confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing,
>> copying, or other distribution of this email message and any attached files  is strictly prohibited.  If you have received this confidential communication in error,
>> please notify the sender immediately by reply email message and permanently delete the original message.
>>
>>
>> On Jul 7, 2021, at 12:30 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> Taryn,
>>
>> Thank you for your email.  Please let me know what times would work for July 20.
>>
>> Thanks,
>>
>> Papool
>>
>> On Mon, Jul 5, 2021 at 8:53 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>>> Dear Mr. Chaudhari,
>>>
>>> Dr. Labgold is currently traveling and unavailable for a call on July 6th.  He currently has available time on July 16th, 19th and 20th.  Please let
>>> me know your preference and I will get you available times.

**PLAINTIFF'S APPENDIX**                                                                    **A213**

 Gmail

Papool Chaudhari <papool@pralawllc.com>

---

**Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order**
1 message

**Papool Chaudhari** <papool@pralawllc.com>                                                                  Fri, Jul 16, 2021 at 3:18 PM
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: "twaiter@labgoldlaw.com" <twaiter@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, Patrick Hoeffner
<phoeffner@labgoldlaw.com>, Megan C Labgold <megan@labgoldlaw.com>

Marc,

Thanks for your email.  As an initial matter, I am a little confused, perhaps you can clear up the confusion I have:  Since my email to you dated May 26, 2021, I've been asking you
to have a zoom call where we can "share screen" the written settlement agreement and discuss, in real-time, the outstanding issues concerning the written settlement agreement.
Despite my desire to have that call nearly two months ago, that call has *finally been* scheduled for July 20, 2021 at 2pm eastern time.  Now, I understand, for the first time, you are
saying you want to use that time for something else.

Please confirm, is it OKI's position that it no longer wishes to work out a settlement? I'll just say, I still think, in our respective clients' mutual interest, we should (attempt to) work out
settlement.

If OKI's position is that it no longer wishes to work out a settlement, then we should cancel the July 20 call.  If OKI's position is that it does want to work on settlement, then let's
have the July 20 call with the same agenda as I have been proposing since May 26, 2021: to go over the written settlement agreement via zoom call using share screen functionality
so we can discuss, in real-time, the written settlement agreement in a good faith effort to reach resolution on the matter.

 As to Count II of the Corrected First Amended Complaint--which is a separate issue--we can have materials to you by COB central time on July 23, 2021.  And then we all (Mr.
Rabicoff included, he is still the lead counsel for Plaintiff, I had only volunteered to step in concerning discussions on the written settlement agreement) can schedule a call for the
following week after you have conferred with your client.

Finally, as to the Corrected First Amended Complaint, I trust you are not being obtuse in your comment below. The Corrected First Amended Complaint is a redline against the
original complaint that was filed (Document 1, filed 7/24/2020).  The erroneous First Amended Complaint was intended to be that, but inadvertently I redlined that against a word
version of the complaint that my client had in their files, which was never filed. In any event, The Corrected First Amended Complaint is a redline against the original complaint that
was filed (Document 1, filed 7/24/2020), as it should have been in the first place.  I trust that clears up any confusion, but if not, please let me know.

Thank you and have a good weekend!

Papool

On Fri, Jul 16, 2021 at 10:11 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
> Dear Papool,
>
> During the hearing on July 14th, the Court instructed us to reach a consensus (if possible) as to what, if any, additional information the parties believe is needed for the Court to
> address Count II of the First Amended Complaint either pursuant to Rule 12 or Rule 56.  As such, I think the best use of the currently scheduled time on July 20th would be to try
> to reach a consensus on what, if any, additional information should be submitted to the Court in this regard.
>
> In order to facilitate the discussion, please forward PDF copies of any documents (emails, attachments, etc) that you believe need to be submitted to the Court for resolution of
> the question of law presented in Count II of the First Amended Complaint (which is now Count II of the "Corrected First Amended Complaint").  Please confirm that you can
> provide such information, if any, by COB on Monday, July 19, so that we will have time to review in advance of the call and speak with our client if need be.  If you do not believe
> that you can provide the documents by Monday, please let me know when you will be in a position to provide such information, if any, and we can schedule a call accordingly.
>
> Finally, It appears to us that the "corrections" reflected in Corrected First Amended Complaint are limited to changing the language of Count I of the First Amended Complaint
> back to the same wording that was presented in the Original Complaint.  However, since these edits are once again not reflected in a redline of the First Amended Complaint, we
> request the courtesy of your confirmation to avoid any issues going forward.
>
> With best regards,
>
> Marc
>
>
>
>> On TuesdayJul 13, 2021, at 11:32 AM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> Taryn,
>>
>> I can do 2pm ET on July 20 for a one hour zoom call.  Can you send a zoom invite for this?
>>
>> Thank you!
>>
>> Papool
>>
>> On Mon, Jul 12, 2021 at 2:19 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>>> Mr. Chaudhari,
>>>
>>> Dr. Labgold has availability between 1pm (ET) and 3pm (ET) on July 20.  Please let me know your preferred time.
>>>
>>>
>>> Best,
>>>
>>> *Taryn Waiter*
>>>
>>> Practice Coordinator
>>> **Marc R. Labgold, P.C.**
>>> 12005 Sunrise Valley Drive, Suite 203
>>> Reston, VA 20191
>>> U.S. Telephone:     +1 (703) 517-4646
>>> U.S. Fax:             +1 (877) 401-8855
>>> Email:                  twaiter@labgoldlaw.com

**PLAINTIFF'S APPENDIX**                                          **A214**



Papool Chaudhari <papool@pralawllc.com>

---

**Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order**
1 message

**Marc R. Labgold** <mlabgold@labgoldlaw.com>                                                                                                  Mon, Jul 19, 2021 at 11:
To: Papool Chaudhari <papool@pralawllc.com>
Cc: "twaiter@labgoldlaw.com" <twaiter@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw.com>, Megan C Labgold <megan@labgoldlaw.com>

> Papool,
>
> There is no need for your continued posturing and assertions of good faith.  The record speaks for itself.
>
> There is no need to speak on Tuesday.
>
> With best regards,
>
> Marc

>> On Friday Jul 16, 2021, at 4:18 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> Marc,
>>
>> Thanks for your email.  As an initial matter, I am a little confused, perhaps you can clear up the confusion I have:  Since my email to you dated May 26, 2021, I've been asking you to have a zoom call where we can "share screen" the written settlement agreement and discuss, in real-time, the outstanding issues concerning the written settlement agreement. Despite my desire to have that call nearly two months ago, that call has *finally been* scheduled for July 20, 2021 at 2pm eastern time.  Now, I understand, for the first time, you are saying you want to use that time for something else.
>>
>> Please confirm, is it OKI's position that it no longer wishes to work out a settlement? I'll just say, I still think, in our respective clients' mutual interest, we should (attempt to) work out settlement.
>>
>> If OKI's position is that it no longer wishes to work out a settlement, then we should cancel the July 20 call.  If OKI's position is that it does want to work on settlement, then let's have the July 20 call with the same agenda as I have been proposing since May 26, 2021: to go over the written settlement agreement via zoom call using share screen functionality so we can discuss, in real-time, the written settlement agreement in a good faith effort to reach resolution on the matter.
>>
>> As to Count II of the Corrected First Amended Complaint--which is a separate issue--we can have materials to you by COB central time on July 23, 2021.  And then we all (Mr. Rabicoff included, he is still the lead counsel for Plaintiff, I had only volunteered to step in concerning discussions on the written settlement agreement) can schedule a call for the following week after you have conferred with your client.
>>
>> Finally, as to the Corrected First Amended Complaint, I trust you are not being obtuse in your comment below. The Corrected First Amended Complaint is a redline against the original complaint that was filed (Document 1, filed 7/24/2020). The erroneous First Amended Complaint was intended to be that, but inadvertently I redlined that against a word version of the complaint that my client had in their files, which was never filed. In any event, The Corrected First Amended Complaint is a redline against the original complaint that was filed (Document 1, filed 7/24/2020), as it should have been in the first place.  I trust that clears up any confusion, but if not, please let me know.
>>
>> Thank you and have a good weekend!
>>
>> Papool
>>
>> On Fri, Jul 16, 2021 at 10:11 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Dear Papool,
>>>
>>> During the hearing on July 14th, the Court instructed us to reach a consensus (if possible) as to what, if any, additional information the parties believe is needed for the Court to address Count II of the First Amended Complaint either pursuant to Rule 12 or Rule 56.  As such, I think the best use of the currently scheduled time on July 20th would be to try to reach a consensus on what, if any, additional information should be submitted to the Court in this regard.
>>>
>>> In order to facilitate the discussion, please forward PDF copies of any documents (emails, attachments, etc) that you believe need to be submitted to the Court for resolution of the question of law presented in Count II of the First Amended Complaint (which is now Count II of the "Corrected First Amended Complaint").  Please confirm that you can provide such information, if any, by COB on Monday, July 19, so that we will have time to review in advance of the call and speak with our client if need be.  If you do not believe that you can provide the documents by Monday, please let me know when you will be in a position to provide such information, if any, and we can schedule a call accordingly.
>>>
>>> Finally, It appears to us that the "corrections" reflected in Corrected First Amended Complaint are limited to changing the language of Count I of the First Amended Complaint back to the same wording that was presented in the Original Complaint.  However, since these edits are once again not reflected in a redline of the First Amended Complaint, we request the courtesy of your confirmation to avoid any issues going forward.
>>>
>>> With best regards,
>>>
>>> Marc
>>>
>>>
>>>
>>>> On Tuesday Jul 13, 2021, at 11:32 AM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>>>
>>>> Taryn,
>>>>
>>>> I can do 2pm ET on July 20 for a one hour zoom call.  Can you send a zoom invite for this?
>>>>
>>>> Thank you!
>>>>
>>>> Papool
>>>>
>>>> On Mon, Jul 12, 2021 at 2:19 PM TARYN M WAITER <twaiter@labgoldlaw.com> wrote:
>>>>> Mr. Chaudhari,
>>>>>
>>>>> Dr. Labgold has availability between 1pm (ET) and 3pm (ET) on July 20.  Please let me know your preferred time.
>>>>>
>>>>> Best,
>>>>>
>>>>> *Taryn Waiter*
>>>>> Practice Coordinator

**PLAINTIFF'S APPENDIX**                                                                                 **A215**

M Gmail

Papool Chaudhari <papool@pralawllc.com>

---

**Re: Magnacross LLC v. OKI Data Americas, Inc. NDTX-3-20-cv-01959 - proposed scheduling order**
1 message

**Papool Chaudhari** <papool@pralawllc.com>                                                                                Mon, Jul 19, 2021 at
To: "Marc R. Labgold" <mlabgold@labgoldlaw.com>
Cc: "twaiter@labgoldlaw.com" <twaiter@labgoldlaw.com>, Isaac Rabicoff <isaac@rabilaw.com>, William Taylor <wtaylor@taylorandtaylorlaw.com>, "Patrick J. Hoeffner" <phoeffner@labgoldlaw
Megan C Labgold <megan@labgoldlaw.com>

Marc,

Thank you for email.

While I disagree with your mischaracterization of my communications as "posturing" and "assertions of good faith," I want to be abundantly clear: Magnacross LLC is ready, willing, able and
interested in resolving this matter out of court via settlement. We interpret your emails below as OKI Data Americas, Inc. not sharing that same position.  If OKI Data Americas, Inc. reconsider
position in regards to resolution of this matter out of court, please feel free to contact Magnacross' lead counsel, Mr. Rabicoff, to further discuss resolution.

With that, I agree the record speaks for itself.

Regards,

Papool

On Mon, Jul 19, 2021 at 11:08 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:

> Papool,
>
> There is no need for your continued posturing and assertions of good faith.  The record speaks for itself.
>
> There is no need to speak on Tuesday.
>
> With best regards,
>
> Marc
>
>> On Friday Jul 16, 2021, at 4:18 PM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>
>> Marc,
>>
>> Thanks for your email.  As an initial matter, I am a little confused, perhaps you can clear up the confusion I have:  Since my email to you dated May 26, 2021, I've been asking you
>> to have a zoom call where we can "share screen" the written settlement agreement and discuss, in real-time, the outstanding issues concerning the written settlement agreement.
>> Despite my desire to have that call nearly two months ago, that call has *finally been* scheduled for July 20, 2021 at 2pm eastern time.  Now, I understand, for the first time, you are
>> saying you want to use that time for something else.
>>
>> Please confirm, is it OKI's position that it no longer wishes to work out a settlement? I'll just say, I still think, in our respective clients' mutual interest, we should (attempt to) work out
>> settlement.
>>
>> If OKI's position is that it no longer wishes to work out a settlement, then we should cancel the July 20 call.  If OKI's position is that it does want to work on settlement, then let's
>> have the July 20 call with the same agenda as I have been proposing since May 26, 2021: to go over the written settlement agreement via zoom call using share screen
>> functionality so we can discuss, in real-time, the written settlement agreement in a good faith effort to reach resolution on the matter.
>>
>> As to Count II of the Corrected First Amended Complaint--which is a separate issue--we can have materials to you by COB central time on July 23, 2021.  And then we all (Mr.
>> Rabicoff included, he is still the lead counsel for Plaintiff, I had only volunteered to step in concerning discussions on the written settlement agreement) can schedule a call for the
>> following week after you have conferred with your client.
>>
>> Finally, as to the Corrected First Amended Complaint, I trust you are not being obtuse in your comment below. The Corrected First Amended Complaint is a redline against the
>> original complaint that was filed (Document 1, filed 7/24/2020).  The erroneous First Amended Complaint was intended to be that, but inadvertently I redlined that against a word
>> version of the complaint that my client had in their files, which was never filed. In any event, The Corrected First Amended Complaint is a redline against the original complaint that
>> was filed (Document 1, filed 7/24/2020), as it should have been in the first place.  I trust that clears up any confusion, but if not, please let me know.
>>
>> Thank you and have a good weekend!
>>
>> Papool
>>
>> On Fri, Jul 16, 2021 at 10:11 AM Marc R. Labgold <mlabgold@labgoldlaw.com> wrote:
>>> Dear Papool,
>>>
>>> During the hearing on July 14th, the Court instructed us to reach a consensus (if possible) as to what, if any, additional information the parties believe is needed for the Court to
>>> address Count II of the First Amended Complaint either pursuant to Rule 12 or Rule 56.  As such, I think the best use of the currently scheduled time on July 20th would be to try
>>> to reach a consensus on what, if any, additional information should be submitted to the Court in this regard.
>>>
>>> In order to facilitate the discussion, please forward PDF copies of any documents (emails, attachments, etc) that you believe need to be submitted to the Court for resolution of
>>> the question of law presented in Count II of the First Amended Complaint (which is now Count II of the "Corrected First Amended Complaint").  Please confirm that you can
>>> provide such information, if any, by COB on Monday, July 19, so that we will have time to review in advance of the call and speak with our client if need be.  If you do not believe
>>> that you can provide the documents by Monday, please let me know when you will be in a position to provide such information, if any, and we can schedule a call accordingly.
>>>
>>> Finally, It appears to us that the "corrections" reflected in Corrected First Amended Complaint are limited to changing the language of Count I of the First Amended Complaint
>>> back to the same wording that was presented in the Original Complaint.  However, since these edits are once again not reflected in a redline of the First Amended Complaint, we
>>> request the courtesy of your confirmation to avoid any issues going forward.
>>>
>>> With best regards,
>>>
>>> Marc
>>>
>>>
>>>> On Tuesday Jul 13, 2021, at 11:32 AM, Papool Chaudhari <papool@pralawllc.com> wrote:
>>>>
>>>> Taryn,

**PLAINTIFF'S APPENDIX**                                                                                **A216**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| **MAGNACROSS LLC,** | |
| Plaintiff, | Civil Action No.: 3:20-cv-1959-M |
| v. | **TRIAL BY JURY DEMANDED** |
| **OKI DATA AMERICAS INC.,** | |
| Defendant. | |

## <u>DECLARATION OF JULIE WANG</u>

I, Julie Wang, hereby declare under penalty of perjury under 18 U.S.C. §1001:

1.       I am over the age of 18 and am in all ways qualified to make this declaration.

2.       I am the Manager of Magnacross LLC.

3.       I submit this declaration in support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Alternative Motion for Partial Summary Judgment, and Motion for Sanctions and Plaintiff's Cross-Motion for Summary Judgment.

4.       In July 2020, Magnacross LLC engaged Mr. Issac Rabicoff to file the above-referenced lawsuit, after conducting a thorough pre-filing investigation.

5.       Nothing herein shall constitute a waiver of the any attorney-client privilege or waiver of the attorney work product doctrine.

6.       On January 12 2021, Magnacross LLC was informed by Mr. Rabicoff that OKI Data Americas Inc. offered to settle the case for $25,000. I understood this offer to mean that OKI

1

Data Americas Inc. would pay $25,000 in exchange for settling, meaning a dismissal of the case with prejudice.

7.     Magnacross LLC authorized a counteroffer back of $95,000, meaning OKI Data Americas, Inc. would pay $95,000 in exchange settling, meaning a dismissal of the case with prejudice.

8.     On January 13, 2021, Magnacross LLC was informed by Mr. Rabicoff that OKI Data Americas Inc. counter-offered to settle the case for $30,000.  I understood this counter-offer to mean that OKI Data Americas Inc. would pay $30,000 in exchange for settling, meaning a dismissal of the case with prejudice.

9.     Magnacross LLC authorized a counteroffer back of $85,000, meaning OKI Data Americas, Inc. would pay $85,000 in exchange settling, meaning a dismissal of the case with prejudice.

10.     On January 18, 2021, Mr. Rabicoff informed me that OKI Data Americas Inc. had counter-offered paying $57,500 in exchange settling, meaning a dismissal of the case with prejudice.  Magnacross LLC instructed Mr. Rabicoff to accept this offer.

11.     Mr. Rabicoff communicated to Magnacross LLC on the same day that an agreement had been reached at $57,500.  I understood this to mean OKI Data Americas, Inc. would pay $57,500 in exchange for settling the case, meaning a dismissal of the case with prejudice.

12.     Magnacross LLC instructed Mr. Rabicoff to send OKI Data Americas, Inc. a separate draft written settlement agreement to attempt to work out a number of other terms. Regardless of whether or not agreement was reached on this document, I understood and understand that on January 18, 2021, Magnacross LLC and OKI Data Americas, Inc. entered into a settlement agreement whereby OKI Data Americas, Inc. would pay $57,500 to Magnacross LLC

2

**PLAINTIFF'S APPENDIX**                                    **A218**

and in exchange, the case would be settled (using the term from opposing counsel's original email on January 12, 2021), meaning Magnacross LLC would agree to dismiss the case with prejudice.

13.     Since settlement was reached on January 18, 2021, Magnacross LLC was and still is ready, willing and able to jointly dismiss its claims with prejudice upon receipt of the agreed settlement amount—$57,500—or $57,500 minus any Japanese Tax Withholding amount.  I understand one of the discussion points between counsel was regarding Japanese Tax Withholding, but Magnacross LLC did agree in April 2021, and had Mr. Rabicoff communicate the same to opposing counsel, that we would agree to take the $57,500 minus the Japanese Tax Withholding.

14.     I understand in April 2021, even though the case was settled, OKI Data Americas, Inc. filed a motion to dismiss, which is still currently pending before the Court.

15.     I also understand in the same month, OKI Data Americas, Inc. changed the settlement amount in the separate draft written settlement agreement from $57,500 to $25,000 and then refused to engage in further discussions on the separate draft written settlement agreement and also refused to pay $57,500 as per the January 18, 2021 settlement agreement.

16.     I understand in May 2021 counsel for both parties were required to engage in a scheduling conference and prepare for litigation, although the case had settled.

17.     Growing concerned about a settled case being continued to be litigated, in May 2021 Magnacross LLC engaged local counsel, Mr. Chaudhari, to assist with the litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2021

Julie Wang

PLAINTIFF'S APPENDIX                                        A220

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| **MAGNACROSS LLC,** | |
| Plaintiff, | Civil Action No.: 3:20-cv-1959-M |
| v. | **TRIAL BY JURY DEMANDED** |
| **OKI DATA AMERICAS INC.,** | |
| Defendant. | |

## <u>DECLARATION OF ISAAC RABICOFF</u>

I, Isaac Rabicoff, hereby declare under penalty of perjury under 18 U.S.C. §1001:

1.      I am over the age of 18 and am in all ways qualified to make this declaration.

2.      I am an attorney and I represent Magnacross LLC in the above-referenced action. I submit this declaration in support of Plaintiff's Brief in Response in Opposition to Defendant's Motion to Dismiss, Alternative Motion for Partial Summary Judgment, and Motion for Sanctions and Plaintiff's Cross-Motion for Summary Judgment and Brief in Support Thereof.

3.      I was engaged by my client Magnacross LLC to represent them in a patent infringement case against OKI Data Americas, Inc.  After performing the necessary pre-filing diligence, I filed the complaint in this action on July 24, 2020.

4.      Between the date of filing and January 12, 2021, I communicated and corresponded with counsel for OKI Data Americas Inc., Marc Labgold, regarding the merits of the case.

5.      On January 12, 2021, Mr. Labgold sent me an email stating that we had diametric views on the scope and validity of the patent-in-suit and infringement, and stated it did not make

1

**PLAINTIFF'S APPENDIX**                    **A221**

economic sense to continue discussing the merits. He then stated, "[a]s much, my client is willing to settle the case on a nuisance basis for $25,000." Attached at A001 is a true and correct copy of this email.

6.      I understood this offer to mean that OKI Data Americas, Inc. would be willing to pay $25,000 in exchange for settling the case, i.e., dismissal with prejudice. Mr. Labgold did not condition his offer on anything else, only $25,000 in exchange to "settle" the case.

7.      On January 13, 2021, I wrote back to Mr. Labgold stating that I was authorized by my client to counteroffer at $95,000, to his $25,000. Attached at A002 is a true and correct copy of this email. By countering at $95,000, I was conveying a counteroffer to "settle" the case (per Mr. Labgold's term from his January 12, 2021 email) for $95,000.

8.      The same day, Mr. Labgold responded via email that he was authorized to counter at $30K. Attached at A003 is a true and correct copy of this email. Again, I understood Mr. Labgold's counter to be that OKI Data Americas, Inc. would pay $30,000 in exchange to "settle" case, per the term expressed by Mr. Labgold in his January 12, 2021 email.

9.      On January 15, 2021, I wrote back to Mr. Labgold stating that I was authorized to counter at $85,000, to his $30,000. Attached at A004 is a true and correct copy of this email. Again, I was counteroffering that OKI Data Americas, Inc. would pay $85,000 in exchange to "settle" the case, per the term expressed by Mr. Labgold in his January 12, 2021 email.

10.      On January 18, 2021, Mr. Labgold wrote back to me apologizing for his delay in getting back to me and he said that he was confirming that "arriving at the center would do the trick. Please confirm." Attached at A005 is a true and correct copy of this email.

11.      The same day, I replied via email asking him to confirm the number. Attached at A005 is a true and correct copy of this email.

2

**PLAINTIFF'S APPENDIX**                                        **A222**

12.     Again on the same day, Mr. Labgold responded, "57.5." Attached at A006 is a true and correct copy of this email.

13.     Again on the same day, I replied, "Thanks Marc.  We have an agreement in principle at 57.5.  Will send over a draft agreement very shortly." Attached at A007 is a true and correct copy of this email.  I understood that we had reach an agreement to "settle" the case (per Mr. Labgold's original term from his January 12, 2021 email) in exchange for OKI Data Americas, Inc. paying the sum of $57,500 to Magnacross LLC.  I stated that I would send over a draft agreement in reference to a separate draft written settlement agreement that would have a number of other terms in addition to the terms that we reached agreement on January 18, 2021.

14.     The same day, Mr. Labgold replied, "Thank you. Marc."  Attached at A008 is a true and correct of this email.  I understood this to be Mr. Labgold's confirmation that we had settled the case at $57,500, i.e., OKI Data Americas, Inc. would pay $57,500 in exchange to "settle" the case, per Mr. Labgold's original term set out in his January 12, 2021. He did not give or state any conditions regarding this in this email, nor any email leading up to this January 18, 2021 confirmation email.

15.     On January 20, 2021, I sent Mr. Labgold an email attaching the separate draft written settlement agreement.  Attached at A009-22 is a true and correct copy of that email and attachment.

16.     On February 8, 2021, Mr. Labgold sent me an email containing "Oki's revised draft for [my] review." Attached at A023-41 is a true and correct copy of that email and attachment. While there were a number of redlines in this "revision," the settlement amount per the January 18, 2021 settlement agreement--$57,500—was not changed in this revision.

3

**PLAINTIFF'S APPENDIX**                                                    **A223**

17.     On February 12, 2021, I sent am email to Mr. Labgold sending edits back from Magnacross LLC. Attached at A042-57 is a true and correct copy of this email and attachment.

18.     After ten days had passed with no feedback on this edit, I sent Mr. Labgold an email on February 22, 2021 asking if he had any updates.  Attached at A058 is a true and correct copy of this email.

19.     Mr. Labgold replied the same day, stating that he was working on narrowing some of the issues and expect to have a revised version by Wednesday (Feb. 24) at the latest. Attached at A059 is a true and correct copy of this email.

20.     On Thursday February 25, 2021, Mr. Labgold had still not sent edits back, but did send an email asking if I would have a call with him to hopefully resolve the differences between the parties' drafts. Attached at A060 is a true and correct copy of this email.

21.     The next day I replied to Mr. Labgold giving him a link to my calendar and asking him to reserve time on Monday or early next week. Attached at A061 is a true and correct copy of this email.

22.     On or about March 2, 2021, I had a call with Mr. Labgold to discuss the separate draft written settlement agreement.  On the call, Mr. Labgold raised, among other things, concerning the separate draft written settlement agreement, the concern regarding tax withholding.  The discussion was concerning Magnacross LLC should be required to provide a tax residency form.  Mr. Rabicoff noted that obtaining a tax residency form would take six months or longer, due to the COVID pandemic.

23.     On March 9, 2021, a week later, I sent an email to Mr. Labgold asking him if he expected to have edits to our 2/12/2021 draft soon, because I had received a "hard nudge" from Magnacross LLC. Attached at A062 is a true and correct copy of this email.

4

**PLAINTIFF'S APPENDIX**                                        **A224**

24.     Mr. Labgold responded on March 10, 2021, stating that OKI could not agree to waive the submission of the residency form and other tax related forms, and asked Mr. Rabicoff to provide Magnacross' position.  Attached at A063 is a true and correct copy of this email.

25.     I replied the same day, stating that I have done deals with Japanese companies before, and learned that a certificate of residency is not required if you are not seeking any special tax treatement or not seeking a foreign tax credit.  I stated my understanding that you do not need it if you are not seeking benefits under the foreign tax treaty.  I asked Mr. Labgold to confirm if this was OKI's position of not, and also I reiterated that it would take over a year to get a residency certificate, which is a non-starter if needed before payment.  Attached at A064 is a true and correct copy of this email.

26.     Mr. Labgold replied on the same day asking me to confirm that Magnacross accepts that without the documents, OKI will be required to withhold 20%.  Attached at A065 is a true and correct copy of this email.

27.     I responded on the same day stating that I was seeing if this was an option, but that I do not have authorization for it currently. Attached at A066 is a true and correct copy of this email.

28.     I wrote to Mr. Labgold again on March 15, 2021, stating that if it is really not possible to pay through the US entity (Defendant OKI Data Americas, Inc.), then our only viable option is to have a payment subject to 20% withholding, because getting a tax certificate isn't viable.  I stated that Magnacross' opening position was that OKI should gross up the withholding, and bear this cost, since this should have been avoidable. I also stated that I could probably get Magnacross to split this cost 50/50. I asked Mr. Labgold to confirm again avoiding withholding is not an option.  Attached at A067 is a true and correct copy of this email.

5

29.     The same day Mr. Labgold replied that he would discuss with his client and get back to me "asap." Attached at A068 is a true and correct copy of this email.

30.     On March 23, 2021, I had received no communication from Mr. Labgold since March 15, and sent an email asking for a follow up. Attached as A069 is a true and correct copy of this email.

31.     On March 25, 2021, I still had received no communication from Mr. Labgold since March 15, and sent another email asking for a follow up noting I had received a "hard nudge" from Magnacross LLC.  Attached at A070 is a true and correct copy of this email.

32.     On March 31, 2021, I finally received a response from Mr. Labgold stating that the tax issue was a "deal breaker" even before we get to the "numerous other problems we only briefly discussed.  As such, there is no need to extend the current stay.  We will be responding to the complaint."  Attached at A071 is a true and correct copy of this email.

33.     I responded on the same day asking for a quick call to discuss before he answers, noting "the gap here would be only a few thousand dollars.  I'm also discussing with my client now." Attached at A071 is a true and correct of this email.

34.     The next day, April 1, 2021, I wrote Mr. Labgold and stated that Magnacross LLC accepts his original proposal that we bear the 20% withholding tax and that "I had asked for some time form you so I could discuss this.  Please confirm that you've receipted our acceptance of your offer.  We're ready to finalize the deal."  Attached at A072 is a true and correct copy of the email.

35.     The same day, Mr. Labgold replied:

As I told you previously, the withholding was only one of the outstanding issues. My previous point was not an offer, it was a question: i.e, whether your client in refusing to provide the requisite tax forms was willing to accept that the tax would be withheld? Regardless, there are

6

numerous other issues that I tried to discuss, only some of which were possible during the 15 minutes you allowed for our discussion. Is your client now willing to accept our mark-up? I do not have authority to accept any offer at this point, I am just asking how you propose moving forward. I in turn will use my best efforts to speak with my client tonight with whatever it is your client is now proposing. I will be available later this afternoon if you want to speak further. If so, please let me know a number and I can call you when I am available.

Attached at A073 is a true and correct copy of this email.

36.     The same day, I replied to this email:

Marc: Attached are my client's edits, 2/12 draft, that responds to your 2/8 draft. In response, we had a call where you mentioned the tax withholding issue. As discussed, my client initially wanted Oki to share in withholding costs, but is now willing to bear the full 20% withholding costs if we can get this done promptly. That said, we never got feedback from you re our other edits on 2/12. We weren't aware that your client was going to potentially pull out of negotiations, even though I was actively discussing the tax issue with my client, and have ultimately agreed to your client's request on this. I'm available for a call, but ultimately we need some quick feedback on our 2/12 draft. I think we can close this fairly quickly, because I recall the tax issue was the main outstanding issue.

Attached at A074-89 is a true and correct copy of this email and attachment.

37.     The same day, I wrote to Mr. Labgold, concerning the above email, asking for his feedback on this and to discuss soon, because Magnacross LLC was unclear where we are with the edits that we had proposed on 02/12/2021, since we had received no feedback.  Attached at A090 is a true and correct copy of this email.

38.     I was also copied the same day on an email from Mr. Labgold to my paralegal, Ms. Frye, stating that he did not want an extension, has not asked for one, opposes a further extension, objects to the filing of a request for an extension, and does not consent to one. Attached at A091 is a true and correct copy of this email.

39.     The same day I wrote Mr. Labgold to ask him for his contact information so we could see if we had agreement on the other terms, as per his earlier request that same day. Attached at A092 is a true and correct copy of this email.

40.     Mr. Labgold replied on the same day stating that he had asked for my contact information and gave me his phone number so I could call him.  Attached A093 is a true and correct copy of this email.

41.     On April 5, 2021, I emailed Mr. Labgold following up on my April 1, 2021 email where I had re-sent our 02/12/2021 edits to the separate draft written settlement agreement. Attached at A094 is a true and correct copy of this email.

42.     On April 7, 2021, I sent a lengthy email to Mr. Labgold regarding several topics. In pertinent part, I stated: "**2) Settlement. My client agrees to providing all of the required forms under Section 4.2.** See attached -- we reverted our edits to 4.2. We still have other edits -- we're open to negotiating these other terms, but need actual counter-redlines back from you."  I attached to this email the 02/12/2021 draft, but this time with our acceptance of OKI's original redlines concerning Section 4.2, the tax withholding section. Attached at A095-109 is a true and correct copy of this email and attachment.

43.     On April 8, 2021 Mr. Labgold replied with a lengthy email that specifically addressed my point #2 from my April 7 email: "2. I am pleasantly surprised to hear that your client is now willing to provide the required documentation. I am confused however as you repeatedly claimed that the IRS document could not be obtained for at least 12 months. You told me multiple times as recent as last Friday that you had personally confirmed that fact. Has something changed or will we be waiting 12 months for the documents? Please let me know so that I can advise my client accordingly. With respect to edits, I am traveling but will revert with a redlined version upon my return." Attached at A110-111 is a true and correct copy of this email.

44.     On the same day, I wrote back to Mr. Labgold and stated, in pertinent part: "I'm going to focus on point 2 -- my client is simply willing to take the time necessary to get the

8

**PLAINTIFF'S APPENDIX**                    **A228**

required docs. I was told this would take ~ 8-9 months. We can still close the deal and dismiss the case before then. To be clear, we cannot get it within a month -- that was never possible." Attached at A112 is a true and correct copy of this email.

45.     The next day, on April 9, 2021, I wrote Mr. Labgold asking if he had any updates. Attached at A113 is a true and correct copy of this email.

46.     On April 14, 2021, I sent another email asking for feedback on the edits I had sent that accepted Defendant's original edits to Section 4.2 concerning tax withholding: "Marc: It's been 1 week since we provided settlement edits that conceded on the necessary documents issue. Do you have any feedback yet? I'm going to get the most flexibility from my client on terms if we close this before we need to answer the MTD (on 4/23). Happy to discuss, thanks." Attached at A114 is a true and correct copy of this email.

47.     Finally, on the same day, Mr. Labgold sent an email with a redline.  Attached at A115-130 is a true and correct copy of this email and attachment.  In this attachment, OKI Data Americas, Inc. changed the settlement amount to $25,000 unilaterally, as shown on A121.

48.     The next day, April 15, 2021, I sent an email to Mr. Labgold asking for his reasons for changing the settlement amount: ""Can you explain the change of settlement amount to 25,000, after we agreed in principle at 47,500? We presume this is a mistake, since we've continued to negotiate in good faith and event conceded on the main issue your clients concern, re the necessary documents." I made a typo and said "47,500" when I meant to say "$57,500." Attached at A131 is a true and correct copy of this email.

49.     On the same day, Mr. Labgold replied: "We reached an impasse, after which my client incurred expense in conjunction with, inter alia, preparing its response to the Complaint. The current settlement amount reflects such expense. Thus, it is definitely in your clients interest

9

**PLAINTIFF'S APPENDIX**                                      **A229**

to reach a final resolution before I need to incur further expense." Attached at A132 is a true and correct copy of this email.

50.     On the next day, April 16, 2021, I wrote a lengthy response to Mr. Labgold:

Marc: We're at a crossroads. 1) The costs of the 101 motion were entirely self-inflicted. We repeatedly offered answer extensions. You well know that you can't win this motion -- this same judge already rejected a 101 motion against the same patent less than 2 years ago based on necessary claim construction. The claims haven't changed since that time, so she'll presumably reach the same conclusion here. 2) I repeatedly requested your counter-redlines or comments so that we could attempt to negotiate terms that concerned your client. When I raised our concerns about the tax documents as an issue, you said multiple times that you were "checking in" with your client. After you said your client wasn't willing to bear any of the taxes, we conceded and said we'd bear the full 20%. 3) Prior to our latest call, at no time did you indicate you were drafting a 101 motion, or that we were somehow at an impasse on terms. You made non sequitur insulations about our edits being much the same as those in a completely unrelated matter -- nothing about how we could make progress on disputed terms. 4) Now, after we made a number of concessions on redlines including the tax forms, you finally provide counter redlines-- which amounted to rejecting *all* of our redlines without explanation or comment, and reducing the settlement about by $20,000. Has your client really *prohibited* you from sharing any such feedback, even when it would save the parties significant costs and effort? There's only one path forward for settlement here -- good faith negotiation on terms. Actual *communication* over terms your client finds important -- we're not mind readers. If affiliate coverage is a concern -- perhaps we can discuss a combination of reps and covenants that would get us there. But to be completely clear, any modification to the agreed payment amount *sabotages* the negotiation and scuttles any conceivable deal. I'm available to discuss early next week.

Attached at A133-34 is a true and correct copy of this email.

51.     On the same day, Mr. Labgold replied asking if Mr. Rabicoff intended to include a redline. Attached at A135 is a true and correct copy of this email.

52.     I responded the same day and attached a redline. Attached at A136-150 is a true and correct copy of this email and attachment.

53.     I sent another email to Mr. Labgold on the same day as well:

**PLAINTIFF'S APPENDIX**                                        **A230**

Marc: I was referencing our 4/7 edits (presumably you redlined against that version), which made the concessions I referred to, including the necessary tax documents. As I stated before, if this is a matter of your client being concerned about the scope of CNS/release coverage, we can at least try to work through those details -- I might have wiggle room there if you can give us any feedback on these issues/propose a constructive redline. But we can't countenance a change in the agreed payment amount.

Attached at A151 is a true and correct copy of this email.

54.    I sent another email that day asking if Mr. Labgold had any updates.  Attached at A152 is a true and correct copy of this email.

55.    Mr. Labgold never responded to these last emails dated April 16, 2021, nor did he provide to myself any further edits on the separate draft written settlement agreement. Mr. Labgold did not engage in any further discussions with me concerning the separate draft written settlement agreement.

56.    In May 2021, Magnacross LLC engaged Mr. Chaudhari to serve as local counsel. Mr. Chaudhari attempted to set up a "zoom call with screen share" to go over the separate draft settlement agreement with Mr. Labgold beginning with an email from him dated May 26, 2021, but Mr. Labgold intentionally stalled having that zoom call until after the § 101 motion to dismiss hearing, at which time the zoom call was cancelled because OKI Data Americas, Inc. refused to engage in further discussions on the separate draft written settlement agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2021

_____

Isaac Rabicoff

11

**PLAINTIFF'S APPENDIX**                                        A231

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MAGNACROSS LLC,** | |
| Plaintiff, | Civil Action No.: 3:20-cv-1959-M |
| v. | |
| **OKI DATA AMERICAS INC.,** | **TRIAL BY JURY DEMANDED** |
| Defendant. | |

## DECLARATION OF PAPOOL CHAUDHARI

I, Papool Chaudhari, hereby declare under penalty of perjury under 18 U.S.C. §1001:

1.      I am over the age of 18 and am in all ways qualified to make this declaration.

2.      I am an attorney and I represent Magnacross LLC in the above-referenced action. I submit this declaration in support of Plaintiff's Brief in Response in Opposition to Defendant's Motion to Dismiss, Alternative Motion for Partial Summary Judgment, and Motion for Sanctions and Plaintiff's Cross-Motion for Summary Judgment and Brief in Support Thereof.

3.      In May 2021, I was engaged by Magnacross LLC to serve as local counsel in the above-referenced action. I was originally informed the case was still pending, had a motion to dismiss pending, and the litigation was going to commence.  I also understood there was a separate draft written settlement agreement to which those terms had not been finalized.  I had not been initially informed that settlement was actually reached on January 18, 2021.

1

**PLAINTIFF'S APPENDIX**                                    **A232**

4.      Given my previous experienced as lead counsel in many patent infringement cases, I offered to Magnacross LLC and lead counsel, Mr. Rabicoff, to step in to try to assist reaching agreement on the separate draft written settlement agreement.

5.      On May 26, 2021, I sent Mr. Labgold, Defendant's counsel, the following email:

> Additionally, I note that on the call, you mentioned you are happy to have further discussion regarding the settlement agreement.  Although I'm "local" counsel on this case, I am mainly a "lead" counsel and have negotiated many of these types of settlement agreements.  I was thinking it would be productive and beneficial for you and I have a zoom call to look at the settlement agreement together and go over edits.  If you are open to that, can you give me some dates and times that would work for you?  **Maybe next week, following the long weekend?**  I'd suggest we pencil in one hour for zoom call, and we can share screen the settlement agreement and talk through any issues on the terms.

Attached at A153 is a true and correct copy of this email. (emphasis added)

6.      On May 27, 2021, Mr. Labgold responded to this request, but completely disregarded my for a zoom call: "Thank you for offering to jump in to assist with the negotiations. We are amenable to that approach.  Please forward the proposed revisions to OKI's revised draft and we can proceed from there,[.]" Attached at A154 is a true and correct of this email.

7.      On the same day, I responded:

> As to the settlement agreement, I appreciate you amenable to my suggested approach. I'm not sure if what I have seen are your last edits (because I was not on the chain when they were circulated), but if what I have are the edits, I think the best approach is to get on a zoom call with your edits on a share screen, because I think many of our revisions would be simply rejecting things struck out from OKI. I don't think that is a productive exercise, but if that is the exercise you want me to engage in, in the spirit of good faith cooperation, then please send me your last round of edits so I am sure I have your last round of edits, and we'll make edits back (keeping in mind some/many of those edits could simply be rejection of OKI edits) and I'll even add in some high level comments in the document to give some discussion points for a zoom call.

Attached at A155 is a true and correct copy of this email.

2

**PLAINTIFF'S APPENDIX**                                        **A233**

8.      Having received no response, on June 3, 2021, I wrote Mr. Labgold again to follow up, reiterate the request to have a zoom call with OKI's edits on share screen and discuss, and also reiterating my good faith offer to review OKI's edits and mark them up and then have a zoom call. Attached at A156 is a true and correct copy of this email.

9.      On June 4, 2021, Mr. Labgold finally responded providing the last draft of OKI edits and inviting me to make any edits and "go from there." A157. Mr. Labgold was again silent as to the repeated request for a zoom call with screen share. *Id.* Attached at A157-172 is a true and correct copy of this email and attachment.

10.     On June 22, 2021, I sent Mr. Labgold his comments to the OKI draft and again asked for a zoom call with share screen. Attached at A173-188 is a true and correct copy of this email and attachment.  It was in preparation of these comments that I was informed that the parties had reached a settlement agreement in which OKI Data Americas, Inc. would pay Magnacross LLC $57,500 in exchange to settle, meaning a dismissal with prejudice.  Accordingly, I changed the settlement amount in this draft back to $57,500. A179.

11.     Mr. Labgold replied the same day stating he would review the comments in advance of having a call and would confirm times for a call asap. Attached at A189 is a true and correct copy of this email.  Mr. Labgold did not confirm times for a call as soon as possible, as he stated he would.

12.     By June 29, 2021, I had not received any communication from Mr. Labgold, and I followed up regarding the scheduling of a zoom call via email. Attached at A190 is a true and correct copy of this email.

3

**PLAINTIFF'S APPENDIX**                                    **A234**

13.     On June 30, 2021, Mr. Labgold responded that the edits to section 4.2 were a "non-starter" and that "its not worth either of us wasting our time." Attached at A191 is a true and correct copy of this email.

14.     The same day, I responded explaining the issue and asking for a good faith proposal to resolve the issue. A192.  Attached at A192 is a true and correct copy of this email. Mr. Labgold did not reply to this communication.

15.     Concerning this section, I was not previously made aware by Magnacross LLC or Mr. Rabicoff that agreement had been reached on this term.  I was informed of this following my June 30, 2021 email to Mr. Labgold.

16.     On July 2, 2021, I sent an email to Mr. Labgold stating that the Plaintiff was agreeable to the tax form requirements and sent back comments with that section added back in and the earlier comment deleted. Attached at A193-208 is a true and correct copy of this email and attachment.  I again asked for a zoom call, specifically on July 6. A193.

17.     On July 5, 2021, Mr. Labgold's assistant, Ms. Waiter, responded stating that he was unavailable on July 6, but only available on July 16, 19 and 20. Attached at A209 is a true and correct copy of this email.

18.     After trying to schedule a simple zoom call with share screen with Mr. Labgold since May 26, 2021, I reluctantly agreed to hold the call on July 20 via email on July 13, 2021. Attached at A212 is a true and correct copy of this email.

19.     On July 16, 2021, following the hearing on Defendant's April 2, 2021 Motion to Dismiss, Mr. Labgold sent me an email stating, in pertinent part, "I think the best use of the currently scheduled time on July 20th would be to try to reach consensus on what, if any, additional

4

**PLAINTIFF'S APPENDIX**                                                      **A235**

information should be submitted to the Court in this regard." Attached at A213 is a true and correct copy of this email.

20.     On the same day, I wrote back to Mr. Labgold to confirm that Mr. Labgold no longer wished to discuss settlement, and if that was the case, then the July 20 call should be cancelled. Attached at A214 is a true and correct copy of this email.

21.     On July 19, 2021, Mr. Labgold responded saying that "[t]here is no need to speak on Tuesday." Attached at A215 is a true and correct copy of this email.

22.     I asked Mr. Labgold on May 26, 2021 to have a simple zoom call with screen share the following week (the week of May 31, 2021, following Memorial Day) to talk through whatever issues OKI Data Americas, Inc. had with the separate draft written settlement agreement. Instead of that happening, as shown in the email, Mr. Labgold intentionally stalled this such that the zoom call would finally happen after the hearing on the § 101 motion to dismiss, and then stated he did not want to discuss the separate draft written settlement agreement on the finally scheduled July 20, 2021 call, so it was cancelled.

23.     Thus, not only did the parties reach settlement on January 18, 2021, but any outstanding issues concerning the separate draft written settlement agreement could have been resolved if Mr. Labgold simply agreed and in fact held the repeated request for a zoom call with screen share the week of May 31, 2021, as I had asked for.  I believe there was no good reason for Mr. Labgold to not simply hold a zoom call with screen share the week of May 31, 2021, and the only reason Mr. Labgold did not do so and "slow-played" this (as shown above and in the attached emails), and insisted on getting edits back, was in a bad faith attempt to drag this out past the hearing on the § 101 motion to dismiss.

I declare under penalty of perjury that the foregoing is true and correct.

5

**PLAINTIFF'S APPENDIX**                                                    **A236**

Executed on August 19, 2021

_____

Papool Chaudhari

6

**PLAINTIFF'S APPENDIX**                                   **A237**