IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAGNACROSS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-01959-M |
| | § | |
| OKI DATA AMERICAS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant OKI Data Americas, Inc.'s Motion to Dismiss, Alternative Motion for Partial Summary Judgment, and Motion for Sanctions (ECF No. 45), and Plaintiff Magnacross LLC's Cross-Motion for Summary Judgment (ECF No. 54). For the following reasons, Defendant's Motions are **GRANTED**, and Plaintiff's Motion is **DENIED**. The Court sanctions Plaintiff Magnacross LLC as follows: Plaintiff and its counsel, jointly and severally, shall pay Defendant OKI Data Americas, Inc. $5,000.00 within thirty (30) days of this order.

### I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Magnacross LLC ("Magnacross") is the assignee of United States Patent No. 6,917,304 (the "'304 Patent"), entitled "Wireless multiplex data transmission system." Compl. (ECF No. 1) ¶¶ 7–10. The invention disclosed in the '304 Patent "relates to a method and apparatus for wireless transmission of data, through a communications channel comprising at least two local data sensors and a data processing function to receive data from the local sensors." '304 Patent, at 1:4–7. The '304 Patent describes how, in the field of automotive diagnostics and servicing, data is conventionally transferred from data sensors to a data

1

processing function via conventional conductors or cables, which impose limitations. *Id.* at 1:30–40. The '304 Patent describes how attempts to improve effective wireless transmission of data has been relatively unsuccessful due to the sheer volume and composite nature of the data, *i.e.*, a mixture of digital and analogue. *Id.* at 1:51–60. In addition, in the context of an automotive application, some—but not all—of the data sensors produce high data rates necessitating larger corresponding bandwidths to accommodate them, which creates a problem of excessive bandwidth requirements with conventional wireless transmission systems. *Id.* at 1:62–2:1.

The '304 Patent purports to address these problems in the prior art and describes a method and apparatus "for wireless transmission of data through a communications channel between at least two local data sensors with optional primary data processing and a data processing function." *Id.* at 2:60–64. The specification describes an embodiment in which data "is fed via a 'multiplexing' control system which allocates data to sub-channels in accordance with the actual data rate requirement of the individual data flow, each such data flow is thereby far more closely matched to the available capacity of its sub-channel and the twin evils of sub-channel under-utilisation and under-capacity (for a given data flow) are thereby avoided." *Id.* at 3:27–35. Claim 1 of the '304 Patent recites:

> A method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels accordingly; characterized by
>
> a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
>
> b) the data rate required for data transmission from said local sensors differing substantially between said at least two sensors, and

> c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said subchannels.

'304 Patent, at 7:29–45.

On July 24, 2020, Magnacross filed its Complaint, alleging that Defendant OKI Americas, Inc. ("OKI") infringes claim 1 of the '304 Patent by "making, using, offering to sell, selling and/or importing, without limitation" the B412dn/B432dn Mono Printer. On February 1, 2021, Magnacross filed a Joint Motion to Stay and Notice of Settlement; pursuant to the Court's March 7, 2021, Order, the deadline to file dismissal papers was on April 2, 2021. ECF Nos. 20, 23. Dismissal papers were not submitted.

On April 2, 2021, OKI moved to dismiss the Complaint under Rule 12(b)(6), asserting that claim 1 of the '304 Patent is patent ineligible under 35 U.S.C. § 101. ECF No. 26. On May 7, 2021, Magnacross responded. ECF No. 33. In its reply, OKI asserted that Magnacross had copied and pasted the contents of its response from a brief opposing a different Rule 12(b)(6) motion to dismiss filed in another case involving the '304 Patent, and addressed claims of the '304 Patent that OKI did not address in its motion. ECF No. 36, at 1; ECF No. 33, at 13–15, 18; *Magnacross LLC v. A.B.P. Int'l, Inc.*, No. 3:18-cv-02368-M, 2019 U.S. Dist. LEXIS 173290 (N.D. Tex. Feb. 25, 2019). OKI's motion was set for hearing on July 14, 2021; the night before, Magnacross filed an Amended Complaint, thereby mooting the pending motion. First Am. Compl. ("FAC"), ECF No. 41. The FAC amended the claim for patent infringement to allege that OKI infringes "one or more claims" (as opposed to claim 1) of the '304 Patent, and added a claim for breach of contract against OKI for allegedly breaching a settlement agreement Magnacross claimed the parties reached on January 18, 2021. *Id.* ¶¶ 8–11, 21–30. Although Magnacross attached to the FAC a redline document purporting to reflect the changes between

3

the Original Complaint and the FAC, the redline showed only the addition of the breach of contract claim, and did not reflect changes to the patent infringement claim.  *See* ECF No. 41-3.

During the July 14, 2021, hearing, the Court heard argument on the eligibility of claim 1 of the '304 Patent under § 101, and addressed OKI's allegations that Magnacross had recycled its responsive brief from a different case.  Local counsel for Magnacross, Papool S. Chaudhari, indicated that he was not familiar with the contents of the brief he submitted to the Court; when asked to explain why he did not amend the brief when OKI pointed out that much of it had been copied and pasted from a different, unrelated case, Chaudhari stated he had not read OKI's reply and said "I'm only local counsel on this matter."  ECF No. 44, at 3–4, 11.  At the conclusion of the hearing, the Court stated it would take under advisement the issue of patent ineligibility under § 101, as well as consider, *sua sponte*, whether any sanctions should be imposed based on the contents of Magnacross's brief.  ECF No. 44, at 45.

The day after the hearing, without seeking the Court's leave, Magnacross filed a corrected First Amended Complaint, again asserting infringement only of claim 1 of the '304 Patent (as opposed to "one or more claims") and the claim for breach of settlement agreement.  ECF No. 43 ("Corrected FAC").  On July 29, 2021, OKI filed the Motion to Dismiss, Alternative Motion for Summary Judgment, and Motion for Sanctions.[1]  ECF No. 45.  In response, Magnacross filed a Cross-Motion for Summary Judgment on the breach of contract claims.  ECF No. 54.

---

[1] Because the Corrected FAC does not reflect that Magnacross made any changes to the claim for infringement of Claim 1 of the '304 Patent from the Original Complaint, OKI incorporated into its Motion to Dismiss the Corrected FAC the arguments from its first Motion to Dismiss, filed on April 2, 2021.  In its Response, Magnacross agreed that the April 2, 2021, Motion to Dismiss has been fully briefed and heard, and did not offer additional arguments. Resp. at 19.  The Court interprets Magnacross's acknowledgement as an incorporation of its briefing on the first Motion to Dismiss into its Response to the Motion to Dismiss currently pending.  To the extent OKI addresses the Corrected FAC, the Court will also consider the Corrected FAC, even though Magnacross exhausted its one amendment to a pleading as a matter of course under Federal Rule of Evidence 15 by filing the FAC, and did not seek leave from the Court or confer with OKI to file a second amended complaint, as it was required to do.

4

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). However, a court need not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In adjudicating a motion to dismiss, a court may consider a complaint and its attachments, as well as documents attached to a defendant's motion to dismiss, as long as those documents are referenced in the complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Whether a claim recites patent-eligible subject matter under 35 U.S.C. § 101 is a question of law. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). However, the Federal Circuit has identified certain factual questions underlying a § 101 analysis. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018). Accordingly, a district court may resolve the issue of patent eligibility under § 101 by way of a motion to dismiss. *See, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017). "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable

5

y
z
w

prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

### B. Summary Judgment

If, on a 12(b)(6) motion, a court considers matters not a part of the pleadings, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden to prove that no genuine issue of material fact exists, but this does not require negating elements of the nonmoving party's case. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Instead, the moving party can meet its burden by identifying those portions of the pleadings, depositions, and other summary judgment evidence which demonstrate the nonmoving party lacks evidence to support its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

## III. ANALYSIS

OKI moves to dismiss Magnacross's patent infringement and breach of contract claims, or in the alternative, moves for summary judgment on the breach of contract claim, and for sanctions. Magnacross moves for summary judgment on its breach of contract claim.

### A. Sanctions

By filing a pleading, motion, or other paper with the court, an attorney certifies, to the best of his knowledge, formed after an "inquiry reasonable under the circumstances," that it is properly filed, based on law and evidence, and is nonfrivolous and not intended to cause delay or

needlessly increase the cost of litigation.  Fed. R. Civ. P. 11(b).  Under Rule 11, the Court has the authority to issue sanctions *sua sponte*, after ordering the offending party to show cause why the offending conduct has not violated that person's duties under Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  Rule 11 sanctions may also be sought by motion by a party, asserted separately from any other motion.  Fed. R. Civ. P. 11(c)(2).  Although Magnacross admitted to filing a brief that contained sections copied and pasted from a brief in another case, which referenced different and irrelevant claims of the '304 Patent, and although local counsel admitted he had not read the brief that he signed, in clear violation of the requirements of Rule 11, OKI did not move for sanctions in a separate motion as required by Rule 11(c)(2).  However, the Court gave Magnacross's counsel opportunity to show cause as to why he filed the pasted and inapplicable portions of the briefs, but he did not give a satisfactory explanation.  Thus, the Court *sua sponte* sanctions Magnacross under Rule 11.  It is hereby **ORDERED** that Magnacross and its counsel, jointly and severally, shall pay OKI $5,000.00 within thirty (30) days of this order.

Under 28 U.S.C. § 1927, the Court may impose sanctions in the form of attorney's fees and costs against an attorney who "multiples the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  A finding that an attorney behaved unreasonably and vexatiously requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."  *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).  The court applies an objective standard to identify conduct that is "harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known by the lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation."  *In re W. Fid. Mktg., Inc.*, No. 4:01-MC-0020-A, 2001 WL 34664165, at *22 (N.D. Tex. June 26, 2001).

OKI argues that by including a claim for breach of a January 18, 2021, settlement agreement in the FAC and Corrected FAC, when Magnacross knew that there was no valid settlement agreement reached on January 18, 2021, Magnacross acted in bad fait and has vexatiously multiplied the proceedings, and is thus subject to sanctions under § 1927. OKI points out that the allegations in support of Magnacross's claim for breach selectively quotes and omits language from the parties' correspondence to create the appearance that OKI agreed to a settlement, when, in reality, OKI's counsel was thanking Magnacross for sending an early draft of a proposed agreement. OKI contends that Magnacross waited to file the FAC until after business hours on the evening before the hearing on the Motion to Dismiss, to derail the July 14, 2021, motion hearing. In response, Magnacross accuses OKI's counsel of helping OKI willfully breach the settlement agreement, filing a § 101 motion after a settlement agreement was reached, and delaying settlement negotiations in bad faith.

The Court determines whether conduct is vexatious under an objective standard. *W. Fid. Mktg.*, 2001 WL 34664165, at *22. However, where there is no evidence that an attorney "personally directed the filing of improper papers or that he orchestrated proceedings designed to hinder justice," the Court should not sanction an attorney under § 1927. *Id.* at *2. Although, as discussed below, the Court does not find much merit in Magnacross's claim for breach of contract, the Court can only speculate as to what was going through counsel's mind when Magnacross filed it, and speculation cannot alone prove sanctionable conduct. Whatever their motivation, counsel for Magnacross certainly comported themselves in an unprofessional manner, but OKI did not prove that they purposefully hindered justice. Thus, the Court declines to impose § 1927 sanctions on Magnacross for pleading a breach of the settlement agreement.

### B. Claim 1 of the '304 Patent is directed to patent ineligible subject matter under 35 U.S.C. § 101.

OKI moves to dismiss the patent infringement claim in the Corrected FAC under Rule 12(b)(6), arguing that the claim is directed to patent ineligible subject matter under 35 U.S.C. § 101. The Court agrees.

Section 101 provides that a patent may be obtained by any person who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted).

In *Alice*, the U.S. Supreme Court described the two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *Id.* at 217–18. At Step One, the Court must determine whether the claims at issue are directed to a patent-ineligible concept. *Id.* at 217. If so, the Court proceeds to Step Two and, considering the elements of each claim both individually and "as an ordered combination," determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.* (citations and quotations omitted). Step Two of the *Alice* test is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48. Step Two is referred to as a search for an "inventive concept"—*i.e.* "an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (alteration in original).

9

The Court proceeds to Step One of the *Alice* inquiry, and determines that claim 1 of the '304 Patent is directed to the abstract idea of processing and transmitting data. Specifically, claim 1 recites a method of wirelessly transmitting data, in which a communications channel is divided asymmetrically into sub-channels, each with unequal data carrying capacities, and then allocating data from sensors into the sub-channels in accordance with the data rate for the sensors and the data carrying capacities of the sub-channels, *i.e.*, data-heavy sensors allocated to a sub-channel with more carrying capacity, and sensors producing less data to a sub-channel with less capacity. The method of claim 1 thus consists of two steps: first, dividing a data channel into sub-channels, and second, transmitting sensor data through those sub-channels asymmetrically according to data rate. Claim 1 describes nothing beyond the division of the channel and allocating the sensor data to subchannels, and thus the character of claim 1 is directed to the processing and transmitting of data. *See Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) ("[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.").

The Federal Circuit has previously recognized that claims directed to gathering, processing, and transmitting data are directed to an abstract idea. *See, e.g.*, *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (claims drawn to "capturing and transmitting data from one device to another" are abstract); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (claims "collecting information, analyzing it, and displaying certain results of the collection and analysis" directed to an abstract idea). The Court determines that claim 1 is similar to the claims held ineligible by the Federal Circuit in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017). There, the claims recited a method of transmitting packets of information over a communications network

comprising: converting information into streams of digital packets; routing the streams to users; controlling the routing; and monitoring the reception of packets by the users. *Id.* at 1334. Those claims were held ineligible because they merely recited a series of abstract steps ("converting," "routing," "controlling," "monitoring," and "accumulating records") using "result-based functional language" without the means for achieving any purported technological improvement. *Id.* at 1337. Here, like in *Two-Way*, there is functional claiming—"division," "transmitting," "allocating"—without means for achieving the purported technological improvement, *i.e.*, the asymmetrical division of communication channels and allocation of data to sub-channels. And as in *Two-Way*, the claim does not sufficiently describe how to achieve these results in a non-abstract way; the claim gives no guidance on any kind of structure or how the division is to be achieved, asymmetrically or otherwise.

The Court is further convinced that the claims are not directed to an improvement to computer functionality, as opposed to the abstract idea itself. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[W]e find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis."). Claim 1, at its core, describes assessing the data coming from a sensor and transmitting it via a sub-channel appropriately sized to carry the load. This is akin to any system in which some item is transported in a vessel that is the appropriate size for the item. Accordingly, the claims do not focus on a specific improvement of the computer's capabilities, but rather a generalized and generic process in which computers are invoked merely as a tool. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("[G]eneric speed and efficiency improvements inherent in applying the use of a computer to any task . . . [are] not an improvement in the functioning of the computer

11

itself."); *see also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. App'x 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of abstraction."). As further support, the Court notes the specification does not identify a specific improvement conferred by the '304 Patent, but rather, it generally "offer[s] improvements in relation to prior proposals in this field, notably in relation to the bandwidth requirement and/or related functions attendant on the simultaneous transmission of data from a multiplicity of such local sensors." '304 Patent, at 2:9–13.

Moving to Step Two, claim 1 does not recite an "inventive concept" that "reflects something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). The Court concludes that none of the claim's elements, assessed individually and as an ordered combination, disclose an inventive concept capable of transforming the abstract idea into patentable subject matter.

The claim elements are generic and conventional. The claim recites generic terms, such as "data," digital and analog, a "communications channel," "data sensor," and "data processing means," as well as routine functions, such as transmitting data, to implement the underlying invention. The specification acknowledges that the claimed data sensors are known in the art. *E.g.*, '304 Patent at 4:46–55 (explaining that the "local data sensors" in Figure 1 are "representative of the entire range of automotive sensors which are currently utilized for diagnostic and servicing processes"). Moreover, the specification acknowledges that the invention is not directed to a certain type of data, nor is the invention disclosed in the '304 Patent limited to any particular application. *E.g.*, *id.* at 1:15–18 ("Further examples of the application

12

of the invention arise in relation to business operations for the wireless transmission of data, for example, across a room."), 4:1–3 ("While the described embodiments utilise radio frequency transmission, the principles of the invention may well be applicable outside radio frequencies."). Nor does the specification specify that the "communications channel" is anything other than generic or conventional, or that the division of such channels into sub-channels is inventive. Although the specification describes a step of "multiplexing division" of the communications channel, claim 1 contains no reference to multiplexing division or a multiplexer, and the specification indicates that systems for multiplexing data were already known in the art. *E.g.*, *id.* at 2:52–54. In sum, the Court finds that none of the claim's elements recite an inventive concept.

Moreover, the ordered combination of these elements also does not yield an inventive concept. Magnacross argues that claim 1 solves a problem particular to the wireless transmission of data from multiple sensors that have different data rate requirements, by asymmetrically dividing and allocating data to a communications channel into sub-channels with unequal data carrying capacities, and therefore "improved an existing technological process" to "solve a technological problem." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016). However, as discussed, improving the efficiency of a process, rather than the functionality, does not confer patent eligibility. *Customedia Techs.*, 951 F.3d at 1365. Here, the specification acknowledges that the allocation of data to sub-channels with asymmetric data carrying capacities does not change the function of the data processor, but rather, how data is allocated across channels, which describes a change in efficiency. Magnacross concedes that the claim relates to "how to more efficiently use bandwidth to transmit data fromdata [sic] sensors." ECF No. 33, at 22.

Magnacross further argues that it is inappropriate to decide patent eligibility under § 101 before claim construction. However, the Federal Circuit has made clear that § 101 can be decided prior to claim construction if a full understanding of the basic character of the claimed subject matter is ascertainable. *See Content Etraction*, 776 F.3d at 1349. Here, during the hearing, Magnacross only identified one term, "multiplexer," as requiring construction; because the term "multiplexer" does not appear in claim 1, the only claim asserted, claim construction is not necessary to decide patent eligibility under § 101.

In light of the foregoing, the Court concludes that claim 1 of the '304 Patent is directed to patent ineligible subject matter, and lacks an inventive concept capable of transforming an otherwise unpatentable abstract idea into eligible subject matter. OKI's Motion to Dismiss is **GRANTED**.

### C. Breach of Contract

Magnacross now alleges, months after negotiations deteriorated, that Magnacross and OKI reached a valid settlement agreement, and that OKI breached it by changing the payment term after exchanging several drafts of the settlement, and eventually pulling out of settlement discussions. As a matter of law, OKI did not breach the settlement agreement because there was no valid settlement agreement. Accordingly, OKI's Motion for Summary Judgment is granted, and Magnacross's Motion for Summary Judgment is denied.

Under Texas law, the elements of a breach of contract claim are "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, no pet.). A settlement agreement is "enforceable in the same manner as any other written contract.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*,

441 F.3d 318, 323 (5th Cir. 2006) (quoting *Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1995, writ denied)). A contract is legally binding if it is "sufficiently definite in its terms so that a court can understand what the promisor undertook*.*" *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "Where an essential term is open for future negotiation, there is no binding contract." *Id.*

Magnacross has not plausibly stated a claim that it is entitled to relief. Magnacross alleges that it reached an "agreement in principle" with OKI on January 18, 2021, to settle its claims. Corrected FAC ¶ 21. According to the Corrected FAC, the parties came to this agreement after negotiating over the price of the settlement over email, and that, in response to an email confirming the "agreement in principle," OKI responded, "Thank you." *Id.* ¶ 22. The email about the "agreement in principle," and OKI's response saying, "Thank you," are the only facts alleged to support Magnacross's allegation of a valid settlement agreement. *Id.* ¶ 22–23.

These allegations do not establish a fully integrated agreement. "[W]here an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.'" *Liberto*, 441 F.3d at 323. Here, the use of the phrase "in principle" by Magnacross's counsel implied an agreement contingent on other terms, or one that had not been agreed to by a person with the authority to enter it. In addition, by Magnacross's own allegations, the parties had only agreed to one term of the settlement: the price. Further, by alleging that the parties "negotiated for several months" after Magnacross "sent over a draft written settlement agreement," Magnacross confirms that the "agreement in principle" was not binding. Corrected FAC ¶ 24. In sum, Magnacross's allegation that "Plaintiff and Defendant, thus, had a valid settlement agreement" is a conclusory statement of law that does not meet the pleading standard. *Id.* ¶ 23.

15

Even assuming that OKI's "Thank you" response constituted acceptance of a binding settlement agreement, the contract fails as a matter of law. The parties' continued email exchanges of drafts of the settlement, and negotiations over terms such as who would bear a foreign tax burden, make clear that no valid agreement occurred on January 18, 2021, when counsel for OKI responded, "Thank you" to Magnacross's proposed "agreement in principle." *See* Exs. E–G, Mot. at A054, A057, A070–71. In fact, Magnacross omitted from its pleading the rest of its email, which read, "will send over a draft agreement very shortly." Ex. A, Mot. at A002. OKI proffered evidence, and Magnacross does not dispute, that OKI's "Thank you" was in response to Magnacross's statement that it would send OKI a draft agreement, not in assent to the "agreement in principle." Decl. of Marc R. Labgold, Ex. O, Mot. at A142. Thus, Magnacross has not shown a material dispute of fact that there was ever a valid agreement.

Magnacross's argument about the dictionary definition of the word "settlement" is of no import. "If there is any doubt about the meaning of the various terms of the contracts" at issue, the Court should "consider the interpretation placed upon them by the parties themselves." *Henshaw v. Tex. Nat'l Res. Found.*, 216 S.W.2d 566, 570 (Tex. 1949). Here, regardless of what the word "settlement" objectively meant, the parties clearly intended to continue negotiating after agreeing on the price term. Magnacross alone made the following statements regarding various drafts of the settlement, after January 18, 2021, that show Magnacross understood the terms of the agreement were not finalized on January 18, 2021:

- "We can dismiss before the EOT deadline *if* we have a fully executed deal." Ex. C, Mot. at A022 (emphasis added).

- "My client's opening position is that Oki [sic] should gross up this withholding, and bear that cost, since this should have been avoidable. I can probably get them to compromise by having the parties split the cost 50/50." Ex. G, Mot. at A070.

- "We're ready to finalize the deal." Ex. H, Mot. at A076.

- "We weren't aware that your client was going to potentially pull out of negotiations." Pl.'s App. A113.

- "I repeatedly requested your counter-redlines or comments so that we could attempt to negotiate terms that concerned your client." Pl.'s App. A135.

- "[A]ny modification to the agreed payment amount *sabotages* the negotiation and scuttles any conceivable deal." *Id.* (emphasis in original).

The parties also sent multiple redlines of the draft agreement back and forth. *See* Ex. E, Mot. at A046, A049–A063. Although Magnacross is correct that an agreement may exist when parties agree upon some terms and leave other terms to be negotiated later, *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.), there must be agreement on all essential details, such as the duration of the agreement, the grounds for renewal or termination, and time of performance, *Liberto*, 441 F.3d at 323. Essential details were traded back and forth in drafts of the final agreement, including the scope and duration of the patent license, a covenant not to sue, mutual releases, dismissal of litigation, licensed products, confidentiality, whether the parent company would enter the agreement, and more, that were not even alleged to be part of the "settlement agreement in principle." *See* Exs. E–G, Mot. at A054, A057, A070–71. Magnacross does not dispute these terms, instead maintaining that price is the sole essential term necessary to establish a valid agreement. The

17

Court disagrees.  Thus, there is no factual dispute that there was no agreement on the terms of the contract, and the Court grants summary judgment for OKI.

## IV.      CONCLUSION

For the foregoing reasons, OKI's Motion to Dismiss is **GRANTED** with respect to Magnacross's claim for infringement of the '304 Patent, and OKI's Alternative Motion for Summary Judgment is **GRANTED** as to Plaintiff's breach of contract claim.  OKI's Motion for Sanctions is **GRANTED**.  Magnacross's Cross-Motion for Summary Judgment is **DENIED**.

**SO ORDERED**.

March 31, 2022.

_____
BARBARA M. G. LYNN
CHIEF JUDGE